No. 24-10748

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

◆

BLAKE WARNER,
*Plaintiff-Appellant,*

v.

HILLSBOROUGH COUNTY CLERK OF COURTS
*Defendant-Appellee.*

◆

On Appeal from the United States District Court
for the Middle District of Florida
(8:22-cv-01977-MSS-SPF)

# APPENDIX

Aaron M. Streett
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

Megan E. Tankel
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, DC 20001-5692
Tel: 202.639.7700
Fax: 202.639.7890
megan.tankel@bakerbotts.com

Matthew P. Erickson
Matthew M. Hilderbrand
**BAKER BOTTS L.L.P.**
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
Tel: 512.322.2500
Fax: 512.322.2501
matthew.erickson@bakerbotts.com
matthew.hilderbrand@bakerbotts.com

*Attorneys for Plaintiff-Appellant Blake Warner*

# INDEX

| Item | Page number |
|---|---|
| Docket Sheet | App.1 |
| Doc. 1 - Plaintiff's Complaint (Aug. 29, 2022) | App.6 |
| Doc. 33 - Plaintiff's Motion for Partial Summary Judgment (Jun. 10 2023) | App.19 |
| Doc. 36 - Joint Statement of Facts (Jun. 29, 2023) | App.59 |
| Doc. 37 - Defendant's Motion for Summary Judgment (Jun. 30, 2023) | App.67 |
| Doc. 38 - Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Jul. 1, 2023) | App.94 |
| Doc. 41 - Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment (Jul. 10, 2023) | App.105 |
| Doc. 42 - Defendant's Reply in Support of Motion for Summary Judgment (Jul. 17, 2023) | App.126 |
| Doc. 43 - Plaintiff's Reply in Support of Motion for Partial Summary Judgment (Jul. 20, 2023) | App.137 |
| Doc. 50 - Order on Motions for Summary Judgment (Feb. 12, 2024) | App.142 |

Dated: May 29, 2024

Respectfully submitted,

/s/ *Matthew Erickson*

BAKER BOTTS L.L.P.

Aaron M. Streett
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

Megan E. Tankel
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, DC 20001-5692
Tel: 202.639.7700
Fax: 202.639.7890
megan.tankel@bakerbotts.com

Matthew P. Erickson
Matthew M. Hilderbrand
**BAKER BOTTS L.L.P.**
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
Tel: 512.322.2500
Fax: 512.322.2501
matthew.erickson@bakerbotts.com
matthew.hilderbrand@bakerbotts.com

*Attorneys for Plaintiff-Appellant Blake Warner*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2024, I electronically filed this appendix and thereby served all counsel of record through the Court's CM/ECF system.

_/s/ Matthew Erickson_

Matthew P. Erickson

APPEAL,TRLSET

## U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:22–cv–01977–MSS–SPF

Warner v. Hillsborough County Clerk of Courts
Assigned to: Judge Mary S. Scriven
Referred to: Magistrate Judge Sean P. Flynn
Case in other court:  Eleventh Circuit, 24–10748–B
Cause: 42:1983 Civil Rights Act

Date Filed: 08/29/2022
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Blake Andrew Warner**                    represented by  **Blake Andrew Warner**
                                                            2211 S Village Ave
                                                            33612
                                                            Tampa, FL 33612
                                                            212–542–0055
                                                            Email: blake@null3d.com
                                                            PRO SE

V.

**Defendant**

**Hillsborough County Clerk of Courts**    represented by  **Jason L. Margolin**
                                                            Akerman LLP – Tampa
                                                            401 E Jackson St Ste 1700
                                                            Tampa, FL 33602–5250
                                                            813.209.5009
                                                            Fax: 813.223.2837
                                                            Email: jason.margolin@akerman.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Patrick Sherman Brathwaite**
                                                            Brathwaite Law, PLLC
                                                            401 E Jackson St.
                                                            Suite 2340
                                                            Tampa, FL 33602
                                                            813–710–2722
                                                            Email: patrick@brathlaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Gregg Moran**
                                                            401 E. Jackson St.
                                                            Suite 1700
                                                            Tampa, FL 33602
                                                            813–223–7333
                                                            Fax: 813–223–2837
                                                            Email: gregg.moran@akerman.com
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/29/2022 | 1 | COMPLAINT against Hillsborough County Clerk of Courts with Jury Demand Filing fee $402.00, receipt number TPA–67151 filed by Blake A. Warner. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Letter, # 3 Exhibit La Gazeta)(LSS) (Entered: 08/29/2022) |
| 08/29/2022 | 2 | SUMMONS issued as to Hillsborough County Clerk of Courts. (LSS) (Entered: 08/29/2022) |

| 08/29/2022 | 3 | MOTION for Miscellaneous Relief, specifically for permission to file electronically via cm/ecf by Blake A. Warner. (LSS) (Entered: 08/30/2022) |
| 08/30/2022 | 4 | RETURN of service executed on 08/29/2022 by Blake A. Warner as to Hillsborough County Clerk of Courts. (AG) (Entered: 08/30/2022) |
| 08/31/2022 | 5 | NOTICE of a related action per Local Rule 1.07(c) by Blake A. Warner. Related case(s): Yes. (AG) (Entered: 08/31/2022) |
| 08/31/2022 | 6 | CERTIFICATE of interested persons and corporate disclosure statement by Blake A. Warner. (AG) (Entered: 08/31/2022) |
| 09/03/2022 | 7 | NOTICE of Constitutional Challenge by Blake A. Warner. (Attachments: # 1 Exhibit)(AG) (Entered: 09/06/2022) |
| 09/19/2022 | 8 | **ORDER GRANTING 3 Plaintiff's Motion for Permission for Electronic Case Filing. Signed by Judge Mary S. Scriven on 9/19/2022. (APF)** (Entered: 09/19/2022) |
| 09/19/2022 | 9 | NOTICE of Appearance by Jason L. Margolin on behalf of Hillsborough County Clerk of Courts (Margolin, Jason) (Entered: 09/19/2022) |
| 09/19/2022 | 10 | CERTIFICATE of interested persons and corporate disclosure statement by Hillsborough County Clerk of Courts. (Margolin, Jason) (Entered: 09/19/2022) |
| 09/19/2022 | 11 | *Defendant's* ANSWER and affirmative defenses to 1 Complaint, by Hillsborough County Clerk of Courts. (Attachments: # 1 Exhibit 1−Demand Letter, # 2 Exhibit 2−Notice of Change of Address, # 3 Exhibit 3−Administrative Order S−2019−005)(Margolin, Jason) (Entered: 09/19/2022) |
| 09/30/2022 | 12 | Unopposed MOTION for Extension of Time to File Motion to Strike by Blake A. Warner. (Warner, Blake) (Entered: 09/30/2022) |
| 09/30/2022 | 13 | **ENDORSED ORDER GRANTING 12 Plaintiff's Unopposed Motion for Extension of Time. Plaintiff shall have up to and including October 24, 2022 to file a motion to strike affirmative defenses. Signed by Judge Mary S. Scriven on 9/30/2022. (APF)** (Entered: 09/30/2022) |
| 10/15/2022 | 14 | MOTION to Strike 11 Answer to Complaint, by Blake A. Warner. (Warner, Blake) (Entered: 10/15/2022) |
| 10/31/2022 | 15 | **\*\*\*TERMINATED−COUNSEL CANNOT FILE ON BEHALF OF ANOTHER COUNSEL. COUNSEL TO REFILE WITH MATHCHNG SIGNATURE BLOCK AND CM/ECF LOGIN CREDENTIALS\*\*\***RESPONSE to Motion re 14 MOTION to Strike 11 Answer to Complaint, filed by Hillsborough County Clerk of Courts. (Margolin, Jason) Modified on 11/1/2022 (LSS). (Entered: 10/31/2022) |
| 11/01/2022 | 16 | RESPONSE to Motion re 14 MOTION to Strike 11 Answer to Complaint, filed by Hillsborough County Clerk of Courts. (Brathwaite, Patrick) (Entered: 11/01/2022) |
| 11/14/2022 | 17 | **ENDORSED ORDER DENYING 14 Motion to Strike Affirmative Defenses. The Affirmative Defenses are sufficiently pled to permit Plaintiff to defend against the defenses. They are not shotgun or vague in nature, and they are adequately addressed to the relevant claims. Accordingly, the Motion to Strike is DENIED.Signed by Judge Mary S. Scriven on 11/14/2022. (Scriven, Mary)** (Entered: 11/14/2022) |
| 11/29/2022 | 18 | CASE MANAGEMENT REPORT. (Brathwaite, Patrick) (Entered: 11/29/2022) |
| 12/14/2022 | 19 | \*\*\*COUNSEL NOTIFIED TO REFILE USING CORRECT EVENT; MOTION\*\*\* of *Notice of Appearance of Counsel for Defendant and Substitution of Counsel Within Firm* Appearance by Gregg Moran on behalf of Hillsborough County Clerk of Courts (Moran, Gregg) Modified on 12/15/2022 (LD). (Entered: 12/14/2022) |
| 12/14/2022 | 20 | MOTION for Judgment on the Pleadings by Hillsborough County Clerk of Courts. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Margolin, Jason) (Entered: 12/14/2022) |

| 12/15/2022 | 21 | Amended MOTION for Judgment on the Pleadings by Hillsborough County Clerk of Courts. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Margolin, Jason) (Entered: 12/15/2022) |
|---|---|---|
| 12/16/2022 | 22 | **ENDORSED ORDER DENYING AS MOOT 20 Defendant's Motion for Judgment on the Pleadings. In light of the amended Motion, (Dkt. 21), the original filing is denied as moot. Signed by Judge Mary S. Scriven on 12/16/2022. (APF)** (Entered: 12/16/2022) |
| 12/16/2022 | 23 | RESPONSE in Opposition re 21 Amended MOTION for Judgment on the Pleadings filed by Blake A. Warner. (Attachments: # 1 Exhibit BOUTIQUE APARTMENTS LLC Registration, # 2 Exhibit Traffic Ticket, # 3 Exhibit Writ of Certiori)(Warner, Blake) (Entered: 12/16/2022) |
| 12/17/2022 | 24 | Supplement to 23 Response in Opposition to Motion, by Blake A. Warner. (Attachments: # 1 Exhibit Eviction Docket, # 2 Exhibit DE_46_REQUEST FOR HEARING, # 3 Exhibit DE_47_REQUEST FOR HEARING, # 4 Exhibit DE_48_REQUEST FOR HEARING, # 5 Exhibit DE_49_REQUEST FOR HEARING, # 6 Exhibit DE_57_ORDER, # 7 Exhibit DE_58_MOTION TO COMPEL)(Warner, Blake) Modified on 12/19/2022 to edit event code and text. (LD). (Entered: 12/17/2022) |
| 12/19/2022 | 25 | NOTICE of Appearance by Gregg Moran on behalf of Hillsborough County Clerk of Courts (Moran, Gregg) (Entered: 12/19/2022) |
| 01/10/2023 | 26 | **CASE MANAGEMENT AND SCHEDULING ORDER: Pretrial statement due by 3/22/2024. Jury Trial set for the May 2024 Trial Term, which commences April 29, 2024, with a more precise trial date to follow. Conduct mediation hearing by 11/30/2023. Lead counsel to coordinate dates. Signed by Judge Mary S. Scriven on 1/10/2023. (CRB)** (Entered: 01/10/2023) |
| 01/16/2023 | 27 | MOTION for Issuance of Subpoena *for La Gaceta Deposition* by Blake A. Warner. (Warner, Blake) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 01/16/2023) |
| 01/30/2023 | 28 | NOTICE of mediation conference/hearing to be held on September 11, 2023 at 9:00 a.m. before Rochelle Friedman Walk. (Margolin, Jason) (Entered: 01/30/2023) |
| 03/28/2023 | 29 | Joint MOTION for Extension of Time to File trial brief and deposition designations *or in the alternative,* Joint MOTION for Clarification re 26 Case Management Scheduling Order, *re March 29, 2023 deadline for trial briefing and deposition designations* by Hillsborough County Clerk of Courts. (Margolin, Jason) (Entered: 03/28/2023) |
| 03/29/2023 | 30 | **ENDORSED ORDER GRANTING 29 the Parties' Joint Motion for Clarification or, in the Alternative, an Extension. The deadline for the Parties to file trial briefs and deposition transcripts with designations highlighted is MARCH 29, 2024. The prior date listed in the Case Management and Scheduling Order contained a scrivener's error. All other deadlines in the Case Management and Scheduling Order shall remain the same unless otherwise Ordered. Signed by Judge Mary S. Scriven on 3/29/2023. (APF)** (Entered: 03/29/2023) |
| 06/07/2023 | 31 | Unopposed MOTION to File Excess Pages *for Motion for Summary Judgment* by Blake Andrew Warner. (Warner, Blake) (Entered: 06/07/2023) |
| 06/08/2023 | 32 | **ENDORSED ORDER GRANTING 31 Plaintiff's Unopposed Motion for Leave to File a Motion in Excess of 25 Pages. Plaintiff shall be permitted to file a motion for summary judgment that does not exceed forty (40) pages in length, inclusive of all parts. Signed by Judge Mary S. Scriven on 6/8/2023. (APF)** (Entered: 06/08/2023) |
| 06/10/2023 | 33 | Verified MOTION for Partial Summary Judgment by Blake Andrew Warner. (Attachments: # 1 Exhibit 18–CC–022377 – Docket, # 2 Exhibit 18–CC–022377 DE 24 – Order Deposit Rent, # 3 Exhibit 18–CC–022377 DE 56 – Court Ticket, # 4 Exhibit 18–CC–022377 DE 77 – Warner Funds Letter, # 5 Exhibit 18–TR–129797 – Docket, # 6 Exhibit 18–TR–129797 – Notice Hearing, # 7 Exhibit 2020 United States Census Hillsborough, # 8 Affidavit Blake Warner, # 9 Exhibit Boutique Apartments |

| | | |
|---|---|---|
| | | LLC Registration, # 10 Exhibit Defendant Response First RFA, # 11 Exhibit Defendant Response First RFI, # 12 Exhibit E–file eviction service email, # 13 Exhibit E–file registration email, # 14 Exhibit Kelly Road Property Tax 2019, # 15 Exhibit Kelly Road Property Tax 2020, # 16 Exhibit La Gaceta July 9, 2021 Edition, # 17 Exhibit La Gaceta Dep. 1–30–23 Exhibits, # 18 Exhibit La Gaceta Dep. 1–30–23, # 19 Exhibit La Gaceta Dep. 9–8–18, # 20 Exhibit Warner 2013 Drivers License, # 21 Exhibit Warner 2021 Drivers License, # 22 Exhibit warner lease 06–21–18 to 05–20–19, # 23 Exhibit warner lease 05–17–19 to 04–30–20, # 24 Exhibit warner lease 05–01–20 to 04–30–21, # 25 Exhibit warner lease 05–01–21 to 04–30–22)(Warner, Blake) (Entered: 06/10/2023) |
| 06/10/2023 | 34 | SUPPLEMENT to 33 Verified MOTION for Partial Summary Judgment by Blake Andrew Warner. (Attachments: # 1 Exhibit Demand Letter, # 2 Exhibit Demand Letter Response)(Warner, Blake) Modified on 6/13/2023 (LD). (Entered: 06/10/2023) |
| 06/11/2023 | 35 | NOTICE by Blake Andrew Warner re 33 Verified MOTION for Partial Summary Judgment *of Constitutional Challenge* (Attachments: # 1 Exhibit Email Service Receipt)(Warner, Blake) (Entered: 06/11/2023) |
| 06/29/2023 | 36 | Joint STATEMENT of undisputed facts *for Cross Summary Judgment Motions* by Hillsborough County Clerk of Courts.. (Attachments: # 1 Exhibit A–Receipts for the two court registry deposits by Mr. Warner, # 2 Exhibit B–Mr. Warner's June 22, 2018 Notice of Change of Address, # 3 Exhibit C–Minutes from the October 9, 2018 hearing, # 4 Exhibit D–Letters from the Clerk's office regarding the court registry funds, # 5 Exhibit E–July 9.2021 La Gaceta Newspaper, # 6 Exhibit F–Transcript of the January 30, 2023 Depo of Patrick Manteiga, # 7 Exhibit G–La Gaceta mailing forms, # 8 Exhibit H–Mr. Warner's efile registration, # 9 Exhibit I–Mr. Warner's Demand Letter, # 10 Exhibit J–The Clerk's response to Mr. Warner's demand letter)(Margolin, Jason) Modified to edit docket text on 6/30/2023 (RLK). (Entered: 06/29/2023) |
| 06/30/2023 | 37 | MOTION for Summary Judgment by All Defendants. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Margolin, Jason) (Entered: 06/30/2023) |
| 07/01/2023 | 38 | RESPONSE in Opposition re 37 MOTION for Summary Judgment filed by Blake Andrew Warner. (Attachments: # 1 Exhibit A – Tiger King Amicus, # 2 Exhibit B – Clerk Pro Se Guide, # 3 Exhibit C – Declaration of Blake Warner)(Warner, Blake) (Entered: 07/01/2023) |
| 07/03/2023 | 39 | Unopposed Notice of Corrected Filing by Blake Andrew Warner re 33 Verified MOTION for Partial Summary Judgment (Attachments: # 1 Exhibit Corrected Verified Motion for Partial Summary Judgment)(Warner, Blake) Modified text on 7/5/2023 (JK). (Entered: 07/03/2023) |
| 07/10/2023 | 40 | NOTICE of supplemental authority re 33 Verified MOTION for Partial Summary Judgment by Blake Andrew Warner. (Attachments: # 1 Exhibit Cambell v Universal City Development Partners(11th Cir. 2023))(Warner, Blake) (Entered: 07/10/2023) |
| 07/10/2023 | 41 | RESPONSE to Motion re 33 Verified MOTION for Partial Summary Judgment filed by Hillsborough County Clerk of Courts. (Margolin, Jason) (Entered: 07/10/2023) |
| 07/17/2023 | 42 | REPLY to Response to Motion re 37 MOTION for Summary Judgment filed by Hillsborough County Clerk of Courts. (Margolin, Jason) (Entered: 07/17/2023) |
| 07/20/2023 | 43 | REPLY to Response to Motion re 33 Verified MOTION for Partial Summary Judgment filed by Blake Andrew Warner. (Attachments: # 1 Exhibit B – Clerk Pro Se Guide)(Warner, Blake) (Entered: 07/20/2023) |
| 08/03/2023 | 44 | **ORDER TAKING UNDER ADVISEMENT 21 Defendant's Amended Motion for Judgment on the Pleadings. The Motion will be addressed in conjunction with the fully–briefed summary judgment motions, and no action will be taken pending the Court's review of the additional case–dispositive briefing. Signed by Judge Mary S. Scriven on 8/3/2023. (APF)** (Entered: 08/03/2023) |
| 08/07/2023 | 45 | NOTICE of supplemental authority re 33 Verified MOTION for Partial Summary Judgment by Blake Andrew Warner. (Warner, Blake) Modified text on 8/7/2023 (JK). (Entered: 08/07/2023) |

| 09/12/2023 | 46 | MEDIATION report Hearing held on September 11 2023. Hearing outcome: Impasse. (Walk, Rochelle) (Entered: 09/12/2023) |
|---|---|---|
| 09/12/2023 | 47 | Entry Error (Entered: 09/12/2023) |
| 09/12/2023 | 48 | NOTICE of Lead Counsel Designation by Jason L. Margolin on behalf of Hillsborough County Clerk of Courts. Lead Counsel: Jason L. Margolin. (Margolin, Jason) (Entered: 09/12/2023) |
| 01/24/2024 | 49 | NOTICE of supplemental authority re 33 Verified MOTION for Partial Summary Judgment *Huls v. Llabona (11th Cir. 2011)* by Blake Andrew Warner. (Warner, Blake) (Entered: 01/24/2024) |
| 02/12/2024 | 50 | **ORDER on the Parties' Motions for Summary Judgment. Signed by Judge Mary S. Scriven on 2/12/2024. (AC)** (Entered: 02/12/2024) |
| 03/12/2024 | 51 | NOTICE OF APPEAL as to 50 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment by Blake Andrew Warner. Filing fee $ 605, receipt number AFLMDC–21859051. (Warner, Blake) (Entered: 03/12/2024) |
| 03/12/2024 | 52 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 51 Notice of Appeal. (HAI) (Entered: 03/12/2024) |
| 03/20/2024 | 53 | TRANSCRIPT information form filed by Blake Andrew Warner re 51 Notice of Appeal. USCA number: 24–10748–B. No transcript(s) requested. (Warner, Blake) (Entered: 03/20/2024) |

# Doc. 1

# United States District Court

## For The Middle District of Florida
## Tampa Division

| | |
|---|---|
| **Blake Warner** | Case Number |
| v. | Jury Trial Demanded |
| **Hillsborough County Clerk of Courts** | Challenge to the Constitutionality of Fla. Stat. § 116.21, § 50.031 |

## Complaint

## Introduction

Plaintiff, Blake Warner, *pro se*, hereby brings this action against *Hillsborough County Clerk of Courts* ("Clerk") under the Takings Clause, Due Process Clause, and First Amendment of the United States, 42 U.S.C. § 1983, and breach of fiduciary duty, for embezzling $3,600 from his escrow account[1] through self-dealing and other fraudulent acts, then threatening criminal prosecution of *Plaintiff* in retaliation for *Plaintiff* engaging in protected First Amendment activity when he requested that his money be returned.

---

[1] and approximately $170,000 from victims in 234 other court case registry accounts.

App.7

## Parties

1. *Plaintiff*, Blake Warner, is a natural person who, at all times relevant, was a resident of Hillsborough County, Florida.

2. *Defendant*, *Hillsborough County Clerk of Courts*, is a local government entity whose principal place of business is in Hillsborough County, Florida.

3. Clerk is not only Clerk of the Circuit Court, but also the County Treasurer, Recorder, Auditor, Finance Officer, and Ex-Officio Clerk of the County Commission.

4. The Clerk performs a wide range of record keeping, information management, and financial management (including escrow accounts) for the judicial system and county government.

## I   Jurisdiction

5. This Court has subject matter jurisdiction under:

   (a) 28 U.S.C. § 1331 (federal question).

   (b) 28 U.S.C. § 1391 (venue).

   (c) 42 U.S.C. § 1983.

   (d) Supplemental subject matter jurisdiction of the pendent state law claims under 28 U.S.C. § 1367.

## Facts

6. On April 25, 2018, *Plaintiff*'s then landlord initiated an eviction action against him, *BOUTIQUE APARTMENTS LLC v WARNER* (Fla. Hillsborough Cty. Ct.

2

App.8

2018) case number 18-CC-022377, alleging a breach of the lease.

7. On May 10, 2018, that court ordered *Plaintiff* to deposit $1699.00 per month into the court registry.

8. The court registry is an escrow account operated by *Defendant*.

9. *Plaintiff* paid a total of $3,600 into the court registry while the case was pending, until June 2018 when he surrendered the residential property in dispute at the end of his lease, mooting the case.

10. *Plaintiff* reposed trust in *Defendant* to hold his funds for him, to keep those funds secure, and to act as an agent of *Plaintiff* regarding the transfer of those funds either to either Mr. Warner or the other principal, Boutique Apartments LLC.

11. *Plaintiff* paid a fee to *Defendant* for their escrow services.

12. On July 9, 2021, *Defendant* published a legal notice in the "newspaper" La Gaceta that–inter alia–contained a list of alleged abandoned court registry funds, but did not publish any unclaimed notices under *Plaintiff*'s name.

13. On September 1, 2021, *Defendant* entered an entry on the court docket–without properly serving *Plaintiff*–that stated "UNCLAIMED FUNDS DISPOSED PER FS 116.21, FUNDS FOREVER BARRED".

## La Gaceta Newspaper

14. Fla. Stat. 116.21 requires the Clerk to publish a "list of any or all unclaimed moneys" in a "newspaper of general circulation" before those funds can be forfeited to such county.

App.9

15. La Gaceta was founded by Victoriano Manteiga in 1922, a former lector in the cigar factories of West Tampa and Ybor City, to serve the needs of the Cuban immigrant population of Tampa *in Spanish*.

16. La Gaceta's target audience is, and always has been, the Hispanic–Spanish speaking–population of Tampa.

17. The current publisher of La Gaceta, Patrick Manteiga, stated in a March 2022 Tampa Bay Times article: "So in the 1950s, we added English because we had to (to get legal advertising.)".

18. The English portion of La Gaceta is not a translation of the Spanish portion of the newspaper, but rather consists of wholly distinct content, tucked away in the back of the newspaper.

19. The English portion of the newspaper is not news at all; but rather editorials, and is best described as an English magazine.

20. La Gaceta is distributed and read by less than ten percent of the households in Hillsborough County.

21. The bulk of La Gaceta's income in derived from legal advertisement revenue.

22. A La Gaceta subscription cannot be purchased from it's website, you must call in and give a credit card or visit their office.

23. La Gaceta is only sold at two Wawa gas stations in Tampa.

App.10

24. *Plaintiff* is a non-Hispanic African-American male who cannot read or understand Spanish and lives in a neighborhood that is at least 90% non-Hispanic Caucasian.

25. *Plaintiff* has spent much of his childhood and adulthood in Tampa, and he has *never* heard of La Gaceta prior to conducting an investigation into the facts and circumstances regarding this action.

26. La Gaceta does not meet the requirements of Fla. Stat. § 50.031 for a newspaper to be eligible to publish legal notices.

27. La Gaceta does not meet the "newspaper of general circulation" requirement of Fla. Stat. § 116.21.

## FIDUCIARY DUTY

28. The court registry holds funds (monies) by the authority of the Florida State Statutes or by Order of the Court, pending further action by the court. It is an escrow account.

29. Escrow holders are recognized as agents of the parties to the escrow and as trustees in charge of the performance of an express trust.

30. *Defendant*, as the escrow agent of the court registry, owed a fiduciary duty to *Plaintiff*.

31. *Defendant*'s website states that they owe a fiduciary duty related to these funds[2].

---

[2] https://hillsclerk.com/Court-Services/Court-Registry

32. *Defendant*, as the escrow agent of the court registry, owed *Plaintiff* a duty of care to act as a reasonable person would in the circumstances and to protect the property that is entrusted to them as if the property were their own.

33. *Defendant*, as the escrow agent of the court registry, owed *Plaintiff* a duty of loyalty to only act in the *Plaintiff*'s best interests.

34. *Defendant*, as the escrow agent of the court registry, owed *Plaintiff* a duty of full disclosure to disclose all information that is material to the transaction to the principals in a timely manner.

35. *Defendant* breached their duties when they engaged in self-dealing by unilaterally seizing the funds that *Plaintiff* had deposited.

36. *Defendant* at all times had access to *Plaintiff*'s current email address, phone number, and e-file account, as it was contained in the court docket, and the e-filing system profile which was assigned to the case and in good standing.

37. When *Defendant* posted notices to the docket, they explicitly did not check the box that would serve *Plaintiff* with the notice, because *Defendant* did not want *Plaintiff* to know that they were seeking to take his money. Had *Defendant* checked the box, *Plaintiff* would have been notified at his current email address automatically.

38. *Defendant* intentionally *only* mailed the notice to an address that they knew, or should have known, that *Plaintiff* no longer resided at, because they had previously received returned mail address to *Plaintiff* from that address.

App.12

39. *Defendant* intentionally sought out the least read "newspaper" in Tampa, that they thought would barely meet the statutory requirements of Fla. Stat. § 116.21 and Fla. Stat. § 50.031, because they did *not* want people to know that they could claim their money, so that *Defendant* could take it for themselves.

40. *Defendant* breached their duties when they failed to conduct a reasonable inquiry / attempt to contact *Plaintiff* to return his funds.  They performed no due diligence in their search for *Plaintiff*.

41. Minimum due process requires required both adequate notice and a hearing, both of which *Defendant* failed to provide before seizing his property.

42. Due process requires that *Defendant* file an interpleader action, or at the very least hold a hearing, if they wanted to seize *Plaintiff*'s escrow funds.

## Count I

### *Due Process Clause: Adequate Notice and Hearing*

43. *Plaintiff* re-alleges and incorporates by reference ¶ 6 - 42

44. *Defendant* failed to provide adequate notice to *Plaintiff* before taking his money without just compensation.

45. *Defendant* did not comply with the procedural requirements of Fla. Stat. § 116.21 or their fiduciary duties, and even if they did that statute is unconstitutional on it's face because it violates the due process clause by failing to provide adequate notice.

# Count II

### *Takings Clause: Escrow Fund*

46. *Plaintiff* re-alleges and incorporates by reference ¶ 6 - 42

47. *Defendant* seized *Plaintiff*'s escrow funds for public use, by transferring the funds to the Hillsborough County fine and forfeiture fund.

48. *Defendant* did not compensate *Plaintiff* for the use of his funds.

49. *Defendant* did not comply with the procedural requirements of Fla. Stat. § 116.21 or their fiduciary duties, and even if they did that statute is unconstitutional on it's face because it violates the due process clause by failing to provide adequate notice.

# Count III

### *Breach of Fiduciary Duty: Embezzlement*

50. *Plaintiff* re-alleges and incorporates by reference ¶ 6 - 42

51. *Defendant*, as the escrow agent of the court registry, breached their duties when faced with a conflict of interest, chose to ignore that conflict, and then engage in self-dealing by unilaterally seizing–without court order–the principal/*Plaintiff*'s funds for their own use without conducting a reasonable/diligent attempt to return the funds or providing adequate notice to *Plaintiff*.

52. As a direct result of this breach, *Plaintiff* suffered damages in the loss of the funds that he had deposited and entrusted to *Defendant*.

## Count IV

### *Defamation Per Se: Extortion*

53. On July 29, 2022, *Plaintiff* sent an attorney–who had previously indicated to *Plaintiff* that they represented *Defendant* in this matter–a Fla. Stat. 772.11 demand letter which stated:

> "This is a letter demanding $10,800 (tripple $,3600) pursuant Fla. Stat. 772.11 for your client, Clerk of the Hillsborough County Circuit Court, embezzling $3,600 from Mr. Warner's escrow account held for case number 2018-CC-22377. After 30 days, absent either payment or stipulation, a lawsuit will be filed against your client for theft and breach of fiduciary duty, among other possible causes of action."

54. On August 26, 2022, the attorney responded by sending a letter to *Plaintiff* which explicitly stated that *Plaintiff* had committed felonious extortion in violation of Fla. Stat.§ 836.05 "Threats; extortion" by threatening to file a lawsuit if they did not pay him the statutorily authorized treble damages to settle the claim[3].

55. The statute states in part "Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section.".

---

[3]"We trust it was not your intent to commit extortion" -Akerman LLP

56. The demand letter does not meet the elements of Fla. Stat.§ 836.05.

57. The attorney focuses his practice on business and commercial litigation, including derivative and direct actions, breaches of fiduciary duties and contracts, intellectual property disputes, and fraudulent misrepresentation, representing entities and individuals.  In addition, he has experience with condominium and homeowner's association law, including litigation enforcing covenants, statutory compliance, landlord-tenant litigation, and serving as general counsel directly advising the board of directors.

58. The attorney is highly skilled, well educated, and employed at a very prestigious big law firm that hires the best and the brightest attorneys.

59. This attorney, with his skill and expertise, knew that *Plaintiff*'s demand letter did not constitute criminal extortion, yet made the statement anyway in an attempt to chill Mr. Warner's constitutional right to petition his government for redress.

60. The attorney published these statements to an Akerman LLC partner and a paralegal.

61. As a direct and proximate cause of the attorney's false statements, *Plaintiff* did not file a treble damages claim under Fla. Stat. 772.11. *Plaintiff* has suffered an prospective economic loss of those treble damages.

## COUNT V

App.16

*First Amendment Retaliation: Extortion*

62. *Plaintiff* re-alleges and incorporates by reference ¶ 53 - 61

63. *Plaintiff* engaged in protected first amendment activity by sending *Defendant*, his government, a Fla. Stat. 772.11 legal demand for the return of funds they embezzled from him.

64. In response, the government told him that demanding his escrow funds through a statutorily authorized legal demand letter was criminal extortion and cited the statute.

65. A person of ordinary firmness, would interpret this as a threat for criminal prosecution if *Plaintiff* followed through with his legal demand and initiated civil legal proceedings against *Defendant*.

66. *Defendant* intended to chill *Plaintiff*'s first amendment right (to file a lawsuit against them) through the threat of felony criminal prosecution.

## Prayer For Relief

Wherefore, *Plaintiff* respectfully requests that this Court:

(a) Enter an order that *Defendant* has violated *Plaintiff*'s constitutional rights by taking his property for public use without just compensation;

(b) Enter an order for damages and/or compensation for the value of the property taken by *Defendant* and disgorgement of interest;

(c) Enter an order for any and all damages available under federal law as applicable, including, but not limited to, an award for nominal and punitive damages;

(d) Enter an order declaring Fla. Stat. § 116.21 unconstitutional as applied and/or on it's face, and § 50.031 as applied;

(e) Award *Plaintiff* his reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and other applicable law; and

(f) Grant such other and further relief as is just and appropriate.

## DEMAND FOR JURY TRIAL

*Plaintiff* hereby demands a trial by jury on all issues so triable.

_____
8-29-2022

Date

_____
Signature

Blake Warner, *pro-se*

3002 W Cleveland Street, #C8

Tampa, FL 33609

E-Service: BLAKE@NULL3D.COM

App.18

# Doc. 33

# United States District Court

## For The Middle District of Florida
## Tampa Division

Blake Warner

v.

Hillsborough County
Clerk of Courts

Case Number 8:22-CV-1977

## Plaintiff's Verified Motion for Partial Summary Judgment

(i)

# TABLE OF CONTENTS

I   Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   v

II   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

III   Escheatment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

IV   Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

V   Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

VI   Undisputed Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

VII   Count I: Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

1.   Facial Challenge to Fla. Stat. § 116.21 . . . . . . . . . . . . . . . . . . . . .   10

2.   Undelivered Letter Was Not Sufficient Notice . . . . . . . . . . . . . . . . .   11

3.   Contact Methods Available to Defendant: . . . . . . . . . . . . . . . . . . . .   13

   A.   Drivers License Address . . . . . . . . . . . . . . . . . . . . . . . . . .   13

   B.   E-File Electronic Service . . . . . . . . . . . . . . . . . . . . . . . . . .   13

   C.   E-File Profile Mailing Address, Phone Number, and Email  . . . . . . . .   13

   D.   Mailing Address and Email Associated with Subsequent Court Filings   13

4.   Last Known Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

VIII Count II: Takings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.   Facial Challenge to Fla. Stat. § 116.21(4) . . . . . . . . . . . . . . . . 14

2.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IX   Count V: First Amendment Retaliation . . . . . . . . . . . . . . . . . 15

     A.   Probable Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     B.   Government Lacks A Reputation to Harm . . . . . . . . . . . . . 17

     C.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

X    Affirmative Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1.   The Clerk did not comply with Florida Statute § 116.21 . . . . . . . . 19

     A.   Federal Common Law Preemption . . . . . . . . . . . . . . . . . . 19

     B.   Federal Constitutional Preemption . . . . . . . . . . . . . . . . . . 19

     C.   Newspaper Requirements . . . . . . . . . . . . . . . . . . . . . . . 20

     D.   Fla. Stat. § 50.011 Retroactive . . . . . . . . . . . . . . . . . . . . 20

2.   Laches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

3.   Clerk Did Not Comply With All Florida Laws . . . . . . . . . . . . . . 24

4.   Failure to State a Claim for Extortion . . . . . . . . . . . . . . . . . . . 25

5.   Litigation Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

6.   Contracting Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

7.   Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

8.   Assumption of Risk - Abandonment . . . . . . . . . . . . . . . . . . . . . . . . 26

9.   Waiver - Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

10.   Speculative Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

11.   Publication or Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

12.   Good Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

13.   116.21 Condition Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

14.   Failure to Update Address . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

XI   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XII  Unsworn Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# I  TABLE OF AUTHORITIES

CASES                                                                        Page

*Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352*,
   1358 (Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ange v. State, 98 Fla. 538*, 123 So. 916 (1929) . . . . . . . . . . . . . . . . . . . 25

*Arrow Air, Inc. v. Walsh, 645 So.2d 422*, 424 (Fla.1994) . . . . . . . . . 21

*Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016) . . . . . . . . . . . . . . . . 15

*Basel v. McFarland Sons, Inc.*,
   815 So. 2d 687 (Fla. Dist. Ct. App. 2002). . . . . . . . . . . . . . . . . . . . 21

*CHOICE PLUS v. FINANCIAL SERVICES*,
   244 So. 3d 343 (Fla. Dist. Ct. App. 2018). . . . . . . . . . . . . . . . . . . . . 2

*City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789*,
   798 n. 15 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Lakeland v. Catinella, 129 So.2d 133*, 136 (Fla.1961) . . . . . . . . . 21, 22

*City of Orlando v. Desjardins*, 493 So.2d 1027 (Fla.1986) . . . . . . . . . . . . . 21

*City of Trenton v. State of New Jersey*, 262 U.S. 182 (1923) . . . . . . . . . . . 22

*Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005). . . . . . . . . . . . . . 20, 29, 31

*Delaware v. Pennsylvania*, 143 S. Ct. 696 (U.S. 2023). . . . . . . . . . . . . . . . 1

*Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727*,
   73 L. Ed. 2d 396 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Hughes v. Talen Energy Mktg., LLC, 578 U.S. 150, 162, 136 S. Ct. 1288,
1297*, 194 L. Ed. 2d 414 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . 19, 31

*Jones v. Flowers*, 547 U.S. 220 (2006) . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Knick v. Tp. of Scott, Pennsylvania, 139 S. Ct. 2162, 204 L. Ed. 2d 558*,
   588 U.S. (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 30

*LanChile Airlines v. Connecticut General Life Ins.*,
   731 F. Supp. 477 (S.D. Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Love v. State*, 286 So. 3d 177 (Fla. 2019) . . . . . . . . . . . . . . . . . . . . . . 22

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

Cases — Continued                                                    Page

*New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710*,
    11 L. Ed. 2d 686 (1964).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Owen v. Independence, 445 U.S. 622, 100 S. Ct. 1398*,
    63 L. Ed. 2d 673 (1980).  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

*Pledger v. Burnup & Sims, Inc.*,
    432 So. 2d 1323 (Fla. Dist. Ct. App. 1983)  . . . . . . . . . . . . . . . . .  25

*Smiley v. State, 966 So. 2d 330*, 334 (Fla. 2007)  . . . . . . . . . . . . .  21

*Stenehjem v. Sareen, 226 Cal. App. 4th 1405*,
    173 Cal. Rptr. 3d 173 (Ct. App. 2014).  . . . . . . . . . . . . . . . . . . .  18

*Texas v. New Jersey, 379 U.S. 674, 85 S. Ct. 626*,
    13 L. Ed. 2d 596 (1965)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 19

*United States v. Salerno, 481 U.S. 739*, 745 (1987)  . . . . . . . . . . . . . .  10

Constitutional Provisions, Statutes and Rules

18 United States Code

    § 1951 "Hobbs Act"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

    § 242 "deprivation of civil rights under color of law"  . . . . . . . . . . . . .  26

§ 116.21, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

§ 50.011, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

§ 717.113, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

§ 772.11, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Other Authorities

## II  Introduction

*Plaintiff* moves for summary judgment pursuant Rule 56(a) on Counts I, II, and V of the *complaint* for *only liability, equitable relief, and liquidated $3,600* just compensation *damages*. *Plaintiff* maintains the right to a jury trial for all issues not raised in this motion and all other damages.

This action is brought because *Defendant* escheated *Plaintiff*'s court registry funds with neither just compensation nor adequate notice/opportunity to be heard, and then threatened him with criminal prosecution when he asked for his money to be returned.

## III  Escheatment Defined

As an initial matter, it is important to recognize that the law is inconsistent in the definition of "escheatment". The U.S. Supreme Court defined it in *Texas v. New Jersey, 379 U.S. 674, 85 S. Ct. 626*, 13 L. Ed. 2d 596, a (1965) s the state acquiring *title/ownership* to abandoned property, then changed course in *Delaware v. Pennsylvania*, 143 S. Ct. 696, d (U.S. 2023). efining it as the state taking *custody* of abandoned property. Florida seems more consistent, in referring to the state acquiring ownership. *see* Fla. Stat. 732.107. The distinction is not insignificant: a custodian *merely* has the duty of care or supervision over the property in contrast to the owner having complete dominion it.

For the purposes of this brief, *escheatment* is the process by which the state claims and becomes the owner of the unclaimed property, and *custodial taking* is the process by which the state takes custody of unclaimed property with the duty to reunite it with it's owner. Most all state's unclaimed property laws deal with *custodial taking* not

App.26

*escheatment*, because they all generally recognize that escheatment is unconstitutional without just compensation.

One Florida Appellate Court dove into the distinction (recognizing that it is inappropriate for the state to escheat property where the owner cannot be located):

> "The Department's final order rejected Choice Plus's attempt to draw a 'semantic distinction' between escheated funds and unclaimed funds, finding it was a distinction without a difference in the context of this case. We disagree as the distinction is the difference under the facts of this case ... While section 732.107 funds may be unclaimed in a colloquial sense, the fact that they escheat to the State upon a determination of intestacy means that the funds are never without an identifiable or locatable owner like other forms of 'unclaimed' property in chapter 717." *see CHOICE PLUS v. FINANCIAL SERVICES*, 244 So. 3d 343 (Fla. Dist. Ct. App. 2018).

# IV   STANDARD

An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

# V   AFFIDAVIT

My name is Blake Warner. I am over the age of 18 years and not laboring under any disabilities. I have personal knowledge of many of the facts and matters below.

# VI   UNDISPUTED MATERIAL FACTS

## EVICTION ACTION

1. On May 10, 2018, *Plaintiff* was ordered by the court in *BOUTIQUE APART-MENTS LLC v Warner* (Fla. Hillsborough Cty. Ct. Apr. 25, 2018 Case No

18-cc-22377) to pay $1,699 per month into the court registry on the first day of every month. *see Defendant Response First RFA* #1, *Eviction Docket*D.E. 24.

2. BOUTIQUE APARTMENTS LLC's last known mailing address is 320 N. MAIN STREET, SUITE 200, ANN ARBOR, MI 48104. *see Boutique Apartments LLC Registration*

3. The court registry is an escrow account operated by *Defendant*. *see Defendant's Answer D.E. 11* ¶ 8.

4. On April 30, 2018, *Plaintiff* deposited $1,800–$101 more than ordered–into the court registry to cover May 2018 rent. *see Eviction Docket*D.E. 8, *Warner Affidavit* #3.

5. On May 24, 2018, *Plaintiff* deposited $1,800–$101 more than ordered–into the court registry to cover June 2018 rent. *see Eviction Docket*D.E. 32, *Warner Affidavit* #4.

6. On June 22, 2018, *Plaintiff* moved to 502 S Fremont Ave #1322, Tampa FL, 33606 (the "Freemont address"). *see Warner Affidavit* #3, *Warner Leases*.

7. On June 22, 2018, *Plaintiff* filed on the docket a notice of change of address, updating his current address to the *Fremont address*. *see Eviction Docket*D.E. 45.

8. On June 23, 2018, *Plaintiff* surrendered possession of the property at issue. *see Eviction Docket*D.E. 44, *Warner Affidavit* #6.

9. On August 24, 2018, the *Landlord* moved to have the court registry funds released to them. *see Eviction Docket*D.E. 51.

10. On October 9, 2018, a hearing was held on the *Landlord*'s motion to disburse the court registry funds, Mr. Warner's opposition to the motion to disburse the court registry funds, the *Landlord*'s motion to dismiss Mr. Warner's counterclaims, and the *Landlord*'s motion to dismiss Mr. Warner's third party complaint. *see Eviction Docket* D.E. 56.

11. The court denied in part and granted in part *Landlord*'s motion to dismiss Mr. Warner's counterclaims, denied *Landlord*'s motion to dismiss third party complaint, and directed the *Landlord* to submit a *proposed* order disbursing $3,398 to the *Landlord*. *see Eviction Docket* D.E. 56.

12. After the hearing, *Landlord* and *Plaintiff* entered into an agreement to abandon Mr Warner's remaining counter-claims and third party claims in exchange for the court registry funds. *see Warner Affidavit* #8.

13. The court never ordered the court registry funds to be dispersed. *see Eviction Docket* D.E. 56, *Eviction Docket* generally.

14. On May 17, 2019, *Plaintiff* moved to 3002 W Cleveland St #C8, Tampa FL 33609 (the "Cleveland address"). *see Warner Affidavit* #9.

15. Between February 24, 2020 and June 15, 2020, the Court received thirteen RETURNED MAIL notices addressed to *Plaintiff*'s prior address, the *Fremont address*. *see Eviction Docket* D.E. 61 - 66, 69 - 74, 75.

16. On June 12, 2020, the entire action was dismissed for lack of prosecution. *see Eviction Docket* D.E. 76.

17. On February 18, 2021, *Defendant* mailed a letter to *Plaintiff* using a prior address indicated on his last filed notice of change of address (the *Fremont address*), indicating that the unclaimed court registry funds would be sent to the State of Florida pursuant Fla. Stat. § 717.113 if a response and court order to disperse the funds was not received by April 21, 2021. *see Eviction Docket* D.E. 77.

18. *Defendant* published "BOUTIQUE APARTMENTS LLC, BROOKLYN FLATS VS WARNER, BLAKE 18-CC-022377 05/24/2018 *717.113 $3,600.00" in the July 9, 2021 edition of La Gaceta. *see La Gaceta, July 9, 2021* pp. 22 .

19. *Defendant* escheated the court registry funds at issue on 9-1-2021, and posted the following message on the docket: "UNCLAIMED FUNDS DISPOSED PER FS 116.21, FUNDS FOREVER BARRED". *see Eviction Docket* D.E. 79.

20. The only attempts *Defendant* made to try to contact *Plaintiff* regarding the court registry funds was the before mentioned February 18, 2021 Fla. Stat. § 717.113 letter and the publication in the July 9, 2021 edition of La Gaceta. *see Defendant Response First RFI* #6.

21. The escheated funds were deposited in the county fine and forfeiture fund for public use. *see Defendant Response First RFI* #7.

22. *Defendant* had the ability to serve *Plaintiff* electronically via his e-file account. *see Defendant Response First RFI* #1, *Defendant Response First RFI* #2.

23. *Defendant* did not electronically serve *Plaintiff* with any of the entries it placed on the 18-CC-022377 docket, despite having the ability to do so. *see Defendant*

5

*Response First RFA* #1, *Defendant Response First RFI* #1, *Defendant Response First RFI* #2.

## La Gaceta

24. La Gaceta is a weekly newspaper. *see La Gaceta Dep.* 5:5-6,Jan. 30 2023, *La Gaceta Dep. Exhibits* generally,Jan. 30 2023.

25. La Gaceta targets the Latino community. *see La Gaceta Dep.* 5:19,Jan. 30 2023, *La Gaceta Dep.* 15:4-10,16:4-9,Sep. 8 2018, *La Gaceta Dep. Exhibits* generally,Jan. 30 2023.

26. Around 1955, La Gaceta successfully lobbied congress to pass a state law that allowed Spanish newspapers to carry legal advertisements for general circulation. It was called "The La Gaceta Act". *see La Gaceta Dep.* 92:9-20,Sep. 8 2018.

27. Approximately 60% to 80% of the newspaper contents is advertising. *see La Gaceta Dep.* 10:20-20:2,Jan. 30 2023.

28. The population of Hillsborough County Florida in 2021 was approximately 1,478,000. *see 2020 United States Census Hillsborough.*

29. The number of La Gaceta newspapers distributed to readers in Hillsborough County, Florida in July 2021 was between 2,127 and 3,000. *see La Gaceta Dep.* 10:4-11:6,Jan. 30 2023, *La Gaceta Dep. Exhibits* generally,Jan. 30 2023.

30. La Gaceta reached between approximately 0.14% and 0.20% of the residents of Hillsborough County, Florida in July 2021. *see* previous two facts (number

of distributed La Gaceta Editions divided by the population of Hillsborough County).

## E-File Account

31. *Plaintiff* first registered for an e-file account on myflcourtaccess.com on April 28, 2018, setting his email address to blake@null3d.com , his phone number to 212-542-0055, and his mailing address to 6220 S. Kelly Rd Tampa FL 33611. *see Warner Affidavit* #11, *efile registration email*.

32. *Plaintiff* immediately associated this e-file account with *BOUTIQUE APART-MENTS LLC v Warner* (Fla. Hillsborough Cty. Ct. Apr. 25, 2018 Case No 18-cc-22377), and began filing documents on the docket as well as receiving electronic service via his e-file account. *see Warner Affidavit* #12, *efile eviction service*.

33. *Plaintiff* has never changed the email address or phone number on his e-file profile, and those remain his current email address and phone number to date, as valid means to contact him. *see Warner Affidavit* #13.

34. Searching *Plaintiff* 's name on *Defendant*'s website, https://hover.hillsclerk.com/html/cas returns multiple cases, including *State v Warner* (Fla. Hillsborough Cty. Ct. Dec. 24, 2018 Case No 18-TR-129797) and *Warner v City of Tampa* (Fla. Hillsborough Cir. Ct. Mar. 20, 2019 Case No 19-CA-002966). Both cases list *Plaintiff* 's address as 6220 S. Kelly Rd, Tampa FL, 33611, and his phone number as 212-542-0055. *see Warner Affidavit* #, https://hover.hillsclerk.com/html/case/c generally.

App.32

35. *Plaintiff*'s last known email address was blake@null3d.com. *see Warner Affidavit #generally*, *18-TR-129797 Docket* generally, *Eviction Docket* generally.

36. *Plaintiff*'s last known phone number was 212-542-0055. *see Warner Affidavit #generally*, *18-TR-129797 Docket* generally, *Eviction Docket* generally.

37. *Plaintiff*'s last known mailing address was 6220 S. Kelly Rd, Tampa FL 33611. *see Warner Affidavit #generally*, *18-TR-129797 Docket* generally.

## Mother's Address

38. From 2006 to present, the address associated with *Plaintiff*'s Florida drivers license has always been 6220 S. Kelly Rd, Tampa FL, 33611. *see Warner Affidavit #*, *Warner 2013 Drivers License*, *Warner 2021 Drivers License*, *18-TR-129797 Docket* D.E. 7, *Warner Affidavit #15*.

39. *Plaintiff*'s mother, Mary Warner, has continuously resided at 6220 S. Kelly Rd, Tampa FL 33611 from 2010 to present. She pays no property tax because she is homesteaded at that address and is a disabled military veteran. *see Warner Affidavit #16*, *Kelly Road Property Tax 2019*, *Kelly Road Property Tax 2019*.

40. *Plaintiff* promptly receives mail from Mary Warner that is delivered to her address in his name. *see Warner Affidavit #15-19*.

41. From 2017 to October 2022, *Plaintiff* almost exclusively used his mother's address as his mailing address to ensure that he received important mail despite moving frequently. *see Warner Affidavit #18*.

## Red Light Camera

42. On 9-23-2018, a vehicle registered to *Plaintiff* was caught on video committing a traffic infraction by a traffic camera. Approximately three months later, The City of Tampa mailed *Plaintiff* a uniform traffic citation to the *Kelly address* for a violation that occurred on 9-23-2018. *Plaintiff* received this mailed ticket. And the docket reflects this *Kelly address*. *see 18-TR-129797 Docket* generally.

43. *Defendant* Suspended, and then subsequently un-suspended *Plaintiff*'s drivers license after payment of the fine was made. *see 18-TR-129797 Docket* generally in D.E. 12 (A D6 is a drivers license suspension).

## Demand Letter

44. *Defendant* made statements to *Plaintiff* indicating the possibility that he could be criminally prosecuted to protect the clerk from the protect the *Defendant* from the possibility of *Plaintiff* filing a lawsuit against them. *see Defendant Response First RFI* #8-10.

45. The purpose *Defendant*'s statements to *Plaintiff* regarding criminal prosecution was intended to discourage *Plaintiff* from filing a lawsuit. *see Defendant Response First RFI* #8-10.

# VII   Count I: Due Process

## 1.   Facial Challenge to Fla. Stat. § 116.21

Generally, a statute is facially unconstitutional if there are "no set of circumstances exists under which the Act would be valid," *United States v. Salerno, 481 U.S. 739,* 745 (1987); *see also City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789*, 798 n. 15 (1984) (explaining that a statute is facially invalid when "every application of the statute created an impermissible risk of suppression of ideas").

§ 116.21, Fla. Stat. is unconstitutional because it facilitates the deprivation of private property solely through mere publication by notice in newspapers rather than notice to the last known address of the property owner.

Such notice by publication is not sufficient under the Fourteenth Amendment as a basis for adjudication depriving of substantial property rights known persons whose whereabouts are also known, since it is not impracticable to make serious efforts to notify them at least by ordinary mail to their addresses on record. *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). After all, notice by publication will almost never result in actual notice to the owner, except by pure luck.

The statutory notice by publication is only sufficient whose addresses are unknown since there are no other means of giving them notice which are both practicable and more effective. *see id.* As this law only applies to court registry cases, there is *always* a last known address associated with the court case so notice by publication is never sufficient.

App.35

When a State is required to give notice, it must do so through processes "reasonably calculated" to reach the property owner. *see id.* Because the seizure of private property is no small thing, notification procedures may not be empty rituals: "[P]rocess which is a mere gesture is not due process." *see id.*

The practical and intended effect of § 116.21, Fla. Stat. is an unconstitional taking through the combination of an extremely short escheatment period–as low as eighteen months–with minimal notification procedures.

As advances in technology make it easier and easier to identify and locate property owners, the state appears to be doing less and less to meet their constitutional obligation to provide adequate notice before escheating private property. The state has an obligation to return property when it's owner can be located. To do that, States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires.

*Id* (3) and (4) are unconstitutional on it's face because "upon such payment to the fine and forfeiture fund, the ... clerk shall be released and discharged from any and all further responsibility or liability in connection therewith" conflicts with a property owner's federal "right to compensation immediately upon an uncompensated taking because the taking itself violates the Fifth Amendment." *see Knick v. Tp. of Scott, Pennsylvania, 139 S. Ct. 2162, 204 L. Ed. 2d 558*, 588 U.S. (2019)..

## 2.   Undelivered Letter Was Not Sufficient Notice

Notice is deemed constitutionally sufficient if it was reasonably calculated to reach the intended recipient. *see Jones v. Flowers*, 547 U.S. 220 (2006). The means

App.36

a State employs to provide notice "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.". *Mullane v. Central Hanover Bank*, 339 U.S. 306.  When a mailed notice is returned unclaimed, the state must take additional reasonable steps to attempt to provide notice to the property owner before escheating their property, if it is practicable to do so. *see Jones v. Flowers*, 547 U.S. 220.

In the instant case, *Defendant*–undeterred by thirteen prior RETURNED MAIL notices addressed to *Plaintiff* at the *Fremont address*–sent a notice of intent to escheat the registry funds to... the *Fremont address*.  The only other attempt *Defendant* made to give notice to *Plaintiff* was publishing a notice, in the name of the eviction case style, in an obscure Spanish newspaper that less than 0.2% of the county population read.  Neither of these attempts were reasonably calculated to give notice to *Plaintiff*.

Additionally, the letter notice itself was deficient because it only gave notice of intent to remit the registry funds to the state's unclaimed property division pursuant § 717.113, Fla. Stat. , *not* § 116.21, Fla. Stat. .  The difference between the two statutes is immense in both the duration of the dormancy period and practical effect:  § 717.113, Fla. Stat. is a *custodial taking* statute with a five year dormancy period where the state safeguards the property until the rightful owner can claim it in the future.  Had *Defendant* remitted the funds to the state as their letter indicated, *Plaintiff* could have just filed a claim with the state and received his funds, avoiding litigation all together.  But *Defendant* did not do what their letter indicated, they ultimately escheated the funds under § 116.21, Fla. Stat  with an

App.37

aggressive dormancy period–as little as eighteen months–with no notice which escheats the funds to the county fine and forfeiture fund and forever bars the owner from reclaiming it if they fail to act within a brief publication window.

### 3.   Contact Methods Available to Defendant:

    **A.   Drivers License Address**

    **B.   E-File Electronic Service**

    **C.   E-File Profile Mailing Address, Phone Number, and Email**

    **D.   Mailing Address and Email Associated with Subsequent Court Filings**

### 4.   Last Known Address

*Defendant* knew exactly how to locate and give notice to *Plaintiff* when he owed the government money[1], but they suddenly became retarded when it came to giving notice to *Plaintiff* when they owe him money. *see Defendant Response First RFI #1-7.*

*Defendant* not had a duty to take reasonable steps to contact *Plaintiff*, under the due process clause, but they also owed *Plaintiff* a duty of care as the agent of the escrow account to perform an even more exacting search for *Plaintiff* than minimum due process requires. *Defendant* fell woefully short of these obligations due to their desire to engage in self-dealing by escheating the money that they had been entrusted to safeguard.  They had the ability to serve him via his e-file

---

[1] *see 18-TR-129797 Docket* generally.

App.38

account, the *Kelly address*, his phone number, his email address, and the refused to try to contact him using *any* of those methods, and instead chose to use the address associated with an old eviction action that they knew *Plaintiff* did not reside at.

# VIII    Count II: Takings Clause

"[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." Tahoe–Sierra Preservation Council, Inc.  v.  Tahoe Regional Planning Agency, 535 U.S. 302, 324 (2002).

"a reasonable, certain and adequate provision for obtaining compensation [must] exist at the time of the taking." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985).

"[t]he owner is to be put in as good [a] position pecuniarily as he would have occupied if his property had not been taken." United States v. Miller, 317 U.S. 369, 373 (1943)

## 1.    Facial Challenge to Fla. Stat. § 116.21(4)

The statute explicitly forbids *just compensation* after the taking has occurred "Upon such payment to the fine and forfeiture fund, the sheriff or clerk shall be released and discharged from any and all further responsibility or liability in connection therewith."

Immediately after the taking ("Upon such payment to the fine and forfeiture fund"), *just compensation* is explicitly denied (the "clerk shall be released and discharged from any and all further responsibility or liability in connection there-

14

with."). The statute expressly authorizes a taking (which is fine), but then immediately denies *just compensation* (not fine) in violation of the takings clause. Every application of the statute is a violation of the takings clause.

Unless an owner is dead or presumed dead, it is *never* constitutional to deny him *just compensation* after a taking has occurred no matter how long the dormancy period.

## 2.   ARGUMENT

*Defendant* escheated *Plaintiff*'s court registry funds into the county fine and forfeiture fund for public use, without due process (as addressed in Count I), and then refused to provide just compensation to *Plaintiff* for use of his property.

# IX   COUNT V: FIRST AMENDMENT RETALIATION

"Defendant adversely affects protected speech, as required to state a claim for retaliation under the First Amendment, if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights...". Quoting *Bailey v. Wheeler*, 843 F.3d 473, . (11th Cir. 2016)

*Plaintiff* engaged in protected first amendment activity by sending Defendant, his government, a § 772.11, Fla. Stat. legal demand for the return of funds they embezzled from his court escrow account. In response, *Defendant* told him that demanding his escrow funds through a statutorily authorized legal demand letter was criminal extortion and cited the criminal statute. A person of ordinary firmness, would interpret this as a veiled threat for criminal prosecution if *Plaintiff* followed through with his legal demand and initiated civil legal proceedings against *Defendant*.

## A.   Probable Cause

In Hartman v.  Moore, the Supreme Court held that a plaintiff pursuing a First Amendment retaliatory prosecution claim must prove that the defendant lacked probable cause to bring the criminal charges.  While *Plaintiff* asserts that proving lack of probable cause is not required in the instant case because there was no actual prosecution.  The reason it is required in retaliation for *actual* criminal prosecution is because the prosecutors are not sued in those cases due to absolute immunity, plaintiff's instead must sue someone like an investigator and then allege and prove complex causation chain based on the theory that the investigator induced the prosecutor to bring charges.

In the instant case, we do not have a prosecutor or criminal case.  Nonetheless, "Demonstrating that there was no probable cause for the [alleged] criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for ... the prosecution ... This alone does not mean, of course, that a ... § 1983 plaintiff should be required to plead and prove no probable cause, but it does mean that litigating probable cause will be highly likely in any retaliatory-prosecution case, owing to its powerful evidentiary significance".

The record is clear that *Plaintiff* only threatened to litigate in his demand letter, and threatening to litigate alone is not extortion.  *see* United States v. Pendergraft, 297 F.3d 1198, 1207 (11th Cir.  2002) (holding that threating to litigate, even if made in bad faith, was not a violation of the Hobbs Act).

Additionally, *Defendant*'s cannot plead or prove the required element of

malice, because as they concede in their response, the demand letter was a statutorily *mandated* condition precedent to bringing a claim under that statute, and the statute itself requires an allegation of the criminal activity *Defendant* complains of as an element of that cause of action.

## B.   GOVERNMENT LACKS A REPUTATION TO HARM

*Defendant* predicates their extortion allegation on "Mr. Warner outright accus[ing] the Clerk of being a criminal". This is simply an allegation that *Plaintiff* was threatening to inflict reputation harm upon the *Defendant*. However government entities lack a reputation, therefore they cannot be libeled or extorted. *see* City of Philadelphia v. Washington Post Co., 482 F. Supp. 897, 898-99 (E.D. Pa. 1979) ("The City cannot maintain an action for libel on its own behalf. A governmental entity is incapable of being libeled."). Accord Edgartown Police Patrolmen's Ass'n v. Johnson, 522 F. Supp. 1149 (D. Mass. 1981) ("It is well-established that a governmental body may not sue for libel.").

"no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence.". *New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710*, 11 L. Ed. 2d 686, q (1964). uoting City of Chicago v. Tribune Co., 307 Ill. 595, 601, 139 N.E.

And even if the government does have a reputation that can be harmed, the first amendment precludes any sort of criminal prosecution based on "bad things" Mr. Warner might say about them.

## C.  ARGUMENT

If threatening to file litigation in a demand letter was criminal extortion, we would have to arrest the entire Florida Bar.  Mr. Warner did not threaten to report *Defendant* to any third parties.  The letter was sent to skilled attorneys, who absolutely know through their skill and training, that that isn't even close to criminal extortion.  A layman may get that wrong, but there is no question a member of the Florida bar knows better.  As far as demand letters go, that letter was so vanilla it was missionary.

A California Appellate Court faced a similar situation in *Stenehjem v. Sareen, 226 Cal. App. 4th 1405*, 173 Cal. Rptr. 3d 173, a (Ct. App. 2014). nd held that veiled threats to report criminal activity to third parties in a demand letter can still can constitute extortion as a matter of law.  "Stenehjem's threats may have been 'veiled' . . . does not disguise their essential character as extortion". *Id.* .

In the instant case, *Defendant*'s veiled threats of criminal prosecution for filing a lawsuit would chill an person of ordinary firmness from filing that lawsuit.  It is important to stress that the threat of prosecution–veiled or otherwise–carries significantly more weight when it comes from the clerk of the court who would oversee that prosecution.

# X   Affirmative Defenses

## 1.   The Clerk did not comply with Florida Statute § 116.21

### A.   Federal Common Law Preemption

Federal common law holds that states can only escheat property when the creditor's last known address is within that state. *see Texas v. New Jersey*, 13 L. Ed. 2d at .

The creditors in this case are the principals to the escrow account: *Plaintiff* and BOUTQIUE APARTMENTS LLC. BOUTIQUE APARTMENTS LLC is a Michigan company, registered with the State of Florida with a Michigan address. There was no court order dispursing the funds. Therefore Florida is preempted from escheating the funds in the escrow account, because the *Landlord* had an interest in the funds and their last known address was a Michighan address.

### B.   Federal Constitutional Preemption

To whatever extent that *Defendant* did comply with § 116.21, Fla. Stat. , that affirmative defense is preempted in counts I and II by the supremacy clause. The state cannot create affirmative defenses to federal constitutional rights because they inherently conflict: the state cannot simply declare a "complete release and discharge from any liability in connection with" a federal constitutional right.  "Put simply, federal law preempts contrary state law". *Hughes v. Talen Energy Mktg., LLC, 578 U.S. 150, 162, 136 S. Ct. 1288, 1297*, 194 L. Ed. 2d 414, . (2016)

A municipality could be liable under § 1983 for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional. *see Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005)..

*Defendant* published the court case's name: "BOUTIQUE APARTMENTS LLC,BROOKLYN FLATS VS WARNER, BLAKE 18-CC-022377 05/24/2018 *717.113"[2]. Not only was it not published in *Plaintiff*'s name, but the list was sorted alphabetically by last name, and appears in the B's section, not the W's for *Plaintiff*'s surname. Therefore a diligent search of *Plaintiff*'s name would not find the case name entry.

## C.   NEWSPAPER REQUIREMENTS

*Defendant* did not meet the requirements of § 50.011, Fla. Stat. because it published the notice in a newspaper that has an audience of less than one percent of the households in Hillsborough County, and is not a 'newspaper of general circulation'.

## D.   FLA. STAT. § 50.011 RETROACTIVE

On January 1, 2022–*before* the complaint was filed but *after* the clerk effected the publication of the notices–a new version of *Id* went into effect that–inter alia–added a sentence "Has an audience consisting of at least 10 percent of the households in the county or municipality ...". The previous version of the law(s) already imposed a duty that the newspaper must be in general circulation, the new law just clarified the definition and is thus a procedural change

---

[2] *see* MJOP D.E. 20 Exhibit I

and remedial in nature.

"Substantive law prescribes duties and rights while procedural law concerns means and methods to apply and enforce those duties and rights". *see Basel v. McFarland Sons, Inc.*, 815 So. 2d 687, . (Fla. Dist. Ct. App. 2002).

"Remedial statutes or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.". *City of Lakeland v. Catinella, 129 So.2d 133*, 136, . (Fla.1961) Here, the legislatures intent in clarifying requirements of the "general circulation" to cure deficiencies in the previous law are clearly remedial.

"Moreover, the 'presumption in favor of prospective application generally does not apply to 'remedial' legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose.' *Arrow Air, Inc. v. Walsh, 645 So.2d 422*, 424, ( (Fla.1994) citing *City of Orlando v. Desjardins*, 493 So.2d 1027, ) (Fla.1986)". *see Smiley v. State, 966 So. 2d 330*, 334, . (Fla. 2007)

"Broadly speaking, substantive law is that which 'prescribes duties and rights,' while 'procedural law concerns the means and methods to apply and enforce those duties and rights.' *Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352*, 1358, . (Fla. 1994) Amendments are procedural in nature if they 'do not create new or take away vested rights, but only operate in furtherance of

App.46

the remedy or confirmation of rights already existing.' Smiley v. State, 966 So. 2d 330, 334 (Fla. 2007) (quoting *City of Lakeland v. Catinella*, at ).". Quoting *Love v. State*, 286 So. 3d 177, . (Fla. 2019) Here, no new duties were imposed– only clarification of existing duties.

"The mere application of a new procedural statute in a pending case is not a retroactive application". *see id*

Additionally, the local government does not have constitutional rights, therefore due process cannot be violated by applying statutes retroactively. "The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations. . . . But such distinction furnishes no ground for the application of constitutional restraints...". Quoting *City of Trenton v. State of New Jersey*, 262 U.S. 182, . (1923)

## 2.  LACHES

Generally, for laches to apply, "the defendant must prove: (1) conduct by the defendant that gives rise to the complaint; (2) that the plaintiff had knowledge of the defendant's conduct and did not assert the opportunity to institute suit; (3) lack of knowledge by the defendant that the plaintiff will assert the right upon which suit is based; and (4) extraordinary injury or prejudice." Ticktin, 807 So. 2d at 664. "Laches is a defense requiring proof of lack of diligence by the party against whom the defense is asserted, and prejudice to the party asserting the defense."

Francis v. State, 31 So. 3d 285, 287 (Fla. 4th DCA 2010).

"Delay alone in asserting a right does not constitute laches, and the burden is on the party who asserts the doctrine of laches to prove prejudice." Ticktin, 807 So. 2d at 663 (emphasis added). "In determining whether delay constitutes a bar to a claim, the court must look to whether the delay has resulted in injury, embarrassment or disadvantage to any person, and particularly to the person against whom relief is sought, whether the delay has been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and whether, during the delay, there has occurred a change in conditions that would render it inequitable to enforce the right asserted." Brumby v. Brumby, 647 So. 2d 330, 331 (Fla. 4th DCA 1994).

*Defendant* did not, and can not plead or prove prejudice in the "delay" because no material witnesses have become unavailable, no evidence has been lost, and the claims were brought within the statute of limitations. *Defendant* actually *benefits* from a delay in the form of an interest free loan on the court regstry funds at issue.

Furthermore, there was no unreasonable delay: the causes of action accrued when *Defendant* escheated the court registry funds on 9-1-2021, *Plaintiff* engaged in informal ways to resolve the dispute on 4-1-2022, and then brought this suit just shy of one year after the escheatment on 08-29-2022, within all applicable statute of limitations.

Finally, The United States Supreme Court has held "that insofar as a copyright claim seeks damages, a court cannot ever apply laches, irrespective of the length of the plaintiff's delay, the amount of the harm that it caused, or the inequity of

permitting the action to go forward.". Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014). The court then extended this preclusion to Patent cases in SCA HYGIENE v. First Quality Baby Products, 137 S. Ct. 954, 580 U.S. 328, 197 L. Ed. 2d 292 (2017). The defense of laches make a lot more sense in the context of copyright and patents as those are often in effect for decades and the infringement with the statute of limitations constantly resetting with ongoing violations. Yet the supreme court still precluded it's application. The instant case is much simpler: there is no equitable tolling, there is only one discrete violation instead of a series of compounding violations, and the claims were brought well within the statute of limitations.

"This Court has cautioned against invoking laches to bar legal relief. See, e.g., Holmberg v. Armbrecht, 327 U.S. 392, 395, 396, 66 S.Ct. 582, 90 L.Ed. 743. Pp. 1972-1974. Quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014).

### 3.   CLERK DID NOT COMPLY WITH ALL FLORIDA LAWS

No response is due for this defense because the clerk generally generally alleges that they "fully complied with any and all applicable Florida laws", however they failed to identify any specific laws (other than Fla. Stat. § 116.21) or allege any facts. To the extent they raise compliance with Fla. Stat. § 116.21 as an affirmative defense, this is duplicative of their first defense and *Plaintiff* restates his responses to the first affirmative defense here.

## 4.  Failure to State a Claim for Extortion

Addressed in Count V above.


## 5.  Litigation Privilege

"Some Florida cases examine whether alleged defamation which occurs before institution of judicial proceedings falls under the above-mentioned privilege.  In *Ange v. State, 98 Fla. 538*, 123 So. 916, , (1929) the Florida Supreme Court held that:

> "[t]his rule of privilege ... includes proceedings before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action by such court or officer.  This privilege extends to the protection of the judge, parties, counsel, and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto." '

'. *see LanChile Airlines v. Connecticut General Life Ins.*, 731 F. Supp. 477, . (S.D. Fla. 1990)

Here, *Plaintiff* sent a statutorily authorized presuit notice to *Defendant* which is covered under the litigation privilege as it is a condition precedent to bringing a suit, however *Defendant*'s reply was not authorized by statute and was wholly unnecessary.  *Defendant*'s statements were not necessarily preliminary thereto any litigation.

> "[T]he courts of Florida encourage pre-litigation settlement negotiations. It is in the interest of society to reach equitable and mutually satisfactory resolution of disputes without the necessity of suit....We hold that this policy reason is sufficiently enhanced, and the parties sufficiently protected, by the qualified privilege." *Pledger v. Burnup & Sims, Inc.*, 432 So. 2d 1323, . (Fla. Dist. Ct. App. 1983)

App.50

Thus at *best* their statements *might* be covered by qualified privilege (which they waived by not raising), but not absolute litigation privilege.

And finally, neither the litigation privilege nor qualified privilege apply to extortion/blackmail/18 U.S.C. § 242 "deprivation of civil rights under color of law", *Id.* § 1951 "Hobbs Act", or other criminal conduct. Such criminal acts bear no relation to the underlying civil litigation, and are therefore not privileged. The statements at issue constitute extortion/blackmail/deprivation of civil rights under color of law and are thus not privileged.

## 6.  CONTRACTING CLAIMS

This is not an affirmative defense, it is a general denial of the elements that *Plaintiff* must prove to win his case.

## 7.  NEGLIGENCE

Florida law only allows comparative negligence in negligence torts. *see* Fla. Stat. 768.81.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Founders Bank, Plaintiff, v. CHICAGO TITLE INSURANCE COMPANY, et al., Defendants. No. 12-cv-05198

## 8.  ASSUMPTION OF RISK - ABANDONMENT

"'abandonment' as applied to property and property rights has long had a generally accepted and a well defined and technical meaning. St. Peter's Church v. Bragaw,144 N.C. 126, 56 S.E. 688 (1970). What constitutes an 'abandonment' as relates to property has been defined by the Fifth Circuit and other courts. 'There must be a voluntary intention to abandon, or evi-

dence from which such intention may be presumed.' The No. 105, Belcher Oil Co. v. Griffin,97 F.2d 425, 426 (5th Cir. 1938); Mason v. Hasso,90 Ariz. 126, 367 P.2d 1 (1961); Commonwealth v. Koontz, 258 Pa. 64, 101 A. 863 (1917). Abandonment is always voluntary and involves a positive intention to part with ownership. McIver v. Norman,187 Or. 516, 527, 213 P.2d 144 (1949). It is essential that the owner act without coercion or pressure. Manello v. Bornstine,44 Wn.2d 769, 270 P.2d 1059 (1954); Huffman v. Smyth, 47 Or. 573, 84 P. 80 (1906). The doctrine of abandonment has no application unless there is a total desertion by the owner without being pressed by any necessity, duty, or utility to himself, but simply because he no longer desires to possess the thing and willingly abandons it to whoever wishes to possess it." Quoting Katsaris v. United States, 684 F.2d 758, 761-62 (11th Cir. 1982)

Here, *Defendant* can identify no affirmative actions that *Plaintiff* took to indicate intent to abandon the funds. The mere absence of action is not enough to infer abandonment.

Assuming, *arguendo*, that *Plaintiff* did abandon the funds, minimum due process still demands adequate notice and opportunity to be heard, which *Defendant* did not provide as outlined elsewhere in this brief. A lack of due process is fatal to this affirmative defense.

## 9. WAIVER - ABANDONMENT

"Waiver" is the voluntary and intentional relinquishment of a known right. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla. 2005); Bueno v. Workman, 20 So.3d 993, 998 (Fla. 4th DCA 2009); Winans v. Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007). The elements necessary to establish waiver are: the existence of a right, privilege, or advantage; the actual or constructive knowledge thereof; and an intention to relinquish that right, privilege, or advantage. Bueno v. Workman, 20 So.3d 993, 998 (Fla. 4th DCA 2009); Winans v.

Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007).

This affirmative defense is largely duplicative of the previous defense, and *Plaintiff* restates and incorporates that response here.

Here, *Defendant* can identify no affirmative actions that *Plaintiff* took to indicate intent to abandon the funds. The mere absence of action is not enough to infer abandonment.

### 10.   Speculative Damages

Asserting that the claimed damages are speculative, vague, or even non-existent does not constitute an affirmative defense. Manley v. Boat/U.S. Inc., No. 13-5551, 2016 U.S. Dist. LEXIS 41036, *14 (N.D. Ill. Mar. 29, 2016) ("simply accusing [a plaintiff] of pleading vague and speculative damages does not state an affirmative defense"); Varrasso v. Barksdale, No. 13-1982, 2016 U.S. Dist. LEXIS 46686, *7-8 (S.D. Cal. Apr. 5, 2016) (affirmative defense that plaintiffs' damages are "speculative or nonexistent . . . are simply allegations that Plaintiffs did not meet their burden of proof . . . [so] they are not affirmative defenses"); Joe Hand Promotions, Inc. v. Kurti, No. 14-1277, 2015 U.S. Dist. LEXIS 120170, *2 (C.D. Cal. Sept. 8, 2015) (11speculative damages[] is a defense to damages, not an affirmative defense")

### 11.   Publication or Retaliation

This is just a reworded duplication of the fourth affirmative defense "failure to state a claim".

## 12.  Good Faith

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by the defendant [government] official." *Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727*, 73 L. Ed. 2d 396 (1982).. The Supreme Court has acknowledged that the "good faith" defense for a public official charged with a violation of 42 U.S.C. § 1983 has both an objective and subjective element. *Id.* Qualified immunity only applies to civil damages, not equitable relief, and it only applies to individuals sued in their individual capacity. *see id.* Local government defendants–such as *Defendant*–are not entitled to qualified immunity. *see Owen v. Independence, 445 U.S. 622, 100 S. Ct. 1398*, 63 L. Ed. 2d 673 (1980)..

As outlined previously, sending notice to an address that *Defendant* had previously received thirteen returned mail notices from is not good faith, and neither is publishing a notice in a Spanish newspaper read by less than 0.2% of the population. Especially when *Defendant* had other reasonable ways to contact *Plaintiff* but chose not to even *attempt* to effectuate notice through them.

Minimum due process notice and hearings requirements in the context of the takings clause has been clearly establish federal law for decades.

A municipality could be liable under § 1983 for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional. *see Cooper v. Dillon*, 403 F.3d 1208.

Finally, *just compensation* under the takings clause is not retrospective damages, it is prospective equitable relief. The original property taken, and the just compensation are not the same thing or even the same value. *Plaintiff* is suing for

just compensation, not the original funds. Just compensation is just the fair market value of the property at the time it was taken, so it could be higher or lower than the original value of the property. With intangible money, the value only goes higher due to inflation and/or interest accruing. Qualified immunity does not apply to equitable relief.

## 13.   116.21 CONDITION PRECEDENT

Fla. Stat. § 116.21(3) and (4) are not conditions precedent, those words appear no where in the statute, and the statute is mute as to any requirements that must occur before a civil action is brought. Quite the opposite, the statute explicitly states that you cannot sue the clerk *at all* after the taking occurs. To accept this defense would have the practical effect of granting the state absolute immunity from all takings claims, because that "condition precedent" can only be performed *before* the taking occurred, however a takings claim is not ripe until *after* that taking has occurred. This outcome is even more egregious in light of the statute's inadequate notice procedures. This is an affront to due process and common sense.

*Plaintiff* is not required to exhaust state remedies before bringing a takings claim to federal court. *see Knick v. Township of Scott Pennsylvania*, 588 U.S.. "This Court has long recognized that property owners may bring Fifth Amendment claims for compensation as soon as their property has been taken, regardless of any other post-taking remedies that may be available to the property owner.". *see id.*

To whatever extent § 116.21, Fla. Stat.  (3) and (4) might apply, that affirmative

defense is preempted in counts I and II by the supremacy clause.  The state cannot create affirmative defenses to federal constitutional rights because they inherently conflict: the state cannot simply procedurally declare a "complete release and discharge from any liability in connection with" a federal constitutional right.  "Put simply, federal law preempts contrary state law".  *Hughes v. Talen Energy Mktg.*, 194 L. Ed. 2d at .

A municipality could be liable under § 1983 for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional. *see Cooper v. Dillon*, 403 F.3d 1208.

## 14.   FAILURE TO UPDATE ADDRESS

This defense is preempted by the supremacy clause in Counts I and II, because it conflicts with federal law. State law cannot lower minimum due process requirements below federal requirements, and there is no affirmative duty under federal law for *Plaintiff* to continuously update his address in an old eviction court cases. The burden is locate property owners is *Defendant*'s to bear under federal law, and state law cannot invert that. Especially when *Defendant* had other reasonable ways to contact *Plaintiff* but chose not to even *attempt* to effectuate notice through them.

Furthermore, *Plaintiff* did continuously update and provide a valid mailing address on his e-file account. It is unreasonable to expect *Plaintiff* to grave dig all of his old closed cases to post notice of address changes to those dockets. *Plaintiff* acted in good faith by keeping his e-file profile up-t-date. *Defendant* was incompe-

tent by not having procedures in place to automatically update and/or sync court docccket party contact information with their respective e-file accounts.  When *Plaintiff* updated his federal PACER account contact information, his other cases addresses were automatically updated.

## XI  Conclusion

Wherefore, *Plaintiff* respectfully requests that this court enter judgment for:

1. Declaration that *Defendant* has violated *Plaintiff*'s constitutional rights by taking his property for public use without just compensation;

2. Declaration that Fla. Stat. § 116.21 is unconstitutional as applied and/or on it's face;

3. Award *Plaintiff* $3,600 in liquidated just compensation for the taking of his court registry funds;

4. Declaration that *Defendant* has violated *Plaintiff*'s constitutional first amendment rights;

5. Grant such other and further relief as is just and appropriate.

# XII   UNSWORN DECLARATION

I declare under penalty of perjury that the foregoing and attached is true and correct.

Executed on:

_6-10-2023_

_____

Date

_____

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM

33

# Doc. 36

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER,

     Plaintiff,

v.                              Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY
CLERK OF COURTS,

     Defendant.

_____/

## PARTIES' JOINT STATEMENT OF
## UNDISPUTED FACTS FOR SUMMARY
## JUDGMENT

The parties jointly submit this statement of undisputed facts for purposes of their cross motions for summary judgment. Defendant Hillsborough County Clerk of Court is without firsthand knowledge regarding the facts in paragraphs 1 with respect to ex. H, 6, 9, and 21–22 of this filing, but is treating those facts as undisputed for these purposes. Accordingly, the Court may treat all facts in this joint filing as undisputed for purposes of the parties' cross motions for summary judgment.

1.    This statement of undisputed facts includes the following exhibits, which the parties agree are authentic:

- Exhibit A:  Receipts for the two court registry deposits by Mr. Warner.

70844973;2

App.60

- Exhibit B:   Mr. Warner's June 22, 2018, notice of change of address.

- Exhibit C:   Minutes from the October 9, 2018, hearing.

- Exhibit D:   Letters from the Clerk's office regarding the court registry funds.

- Exhibit E:   July 9, 2021, La Gaceta newspaper.

- Exhibit F:   Transcript of the January 30, 2023, deposition of Patrick Manteiga.

- Exhibit G:   La Gaceta mailing forms.

- Exhibit H:   Mr. Warner's e-file registration confirmation.

- Exhibit I:   Mr. Warner's demand letter in this action.

- Exhibit J:   The Clerk's response to Mr. Warner's demand letter in this action.

2.     Mr. Warner was the defendant in an eviction action in Hillsborough County Court, *Boutique Apartments LLC v. Warner*, Case No. 18-cc-22377.

3.     As part of the *Boutique Apartments* litigation, Mr. Warner deposited a total of $3,600 into the court registry pursuant to Florida Statute § 83.60 and the court's May 10, 2018, order. Exhibit A.

4.     In the *Boutique Apartments* litigation, the court issued an order directing Mr. Warner to pay $1,699 per month into the registry; Mr. Warner chose to pay an additional $101 per month, which also went into the registry as part of the case.

70844973;2

5.      Mr. Warner's address at the beginning of the *Boutique Apartments* litigation that he included on his filings in that case was 3012 W. De Leon St., Apt. 23, Tampa, Florida 33609.

6.      On June 22, 2018, Mr. Warner moved to 502 S. Fremont Ave. #1322, Tampa, Florida 33606.

7.      In the *Boutique Apartments* litigation, on June 22, 2018, Mr. Warner filed a notice of change of address, updating his address for the case to the 502 S. Fremont Ave. address. Exhibit B.

8.      Mr. Warner did not file any subsequent notices of changes of address with the court in the *Boutique Apartments* litigation.

9.      On June 23, 2018, Mr. Warner formally abandoned the apartment that was the subject of the eviction in the *Boutique Apartments* litigation.

10.     On August 24, 2018, the landlord (plaintiff) in the *Boutique Apartments* litigation moved to have the court release the registry funds to it.

11.     On October 9, 2018, the court held a hearing in the *Boutique Apartments* litigation, both on the landlord's motion to release the registry funds and its motion to dismiss Mr. Warner's counterclaims that he had filed in the action.

12.     In the *Boutique Apartments* litigation, at the October 9 hearing, the court granted in part and denied in part the landlord's motion to dismiss,

70844973;2

and directed the landlord to submit a proposed order disbursing the registry funds to the landlord. Exhibit C.

13. After the October 9 hearing, the landlord and Mr. Warner entered into a verbal agreement under which Mr. Warner would abandon his remaining counterclaims, and in exchange the landlord would allow Mr. Warner to claim the court registry funds.

14. Neither the landlord nor Mr. Warner filed any proposed orders seeking disbursement of the court registry funds, and the court never entered an order requiring disbursement.

15. In the *Boutique Apartments* litigation, from February 24, 2020, to April 10, 2020, the court received thirteen returned mail notices for notices that had been mailed to Mr. Warner's 502 S. Fremont Ave. address.

16. On June 12, 2020, the court dismissed the entire *Boutique Apartments* case for lack of prosecution.

17. On February 18, 2021, the Clerk mailed letters to the landlord entities and Mr. Warner (at his 502 S. Fremont Ave. address) notifying them of the funds remaining in the court registry and the pending escheatment to the State of those funds if the parties did not claim them. Exhibit D.

18. The Clerk did not electronically serve Mr. Warner at his e-mail address with any items during the *Boutique Apartments* litigation.

70844973;2

19.     On July 9, 2021, the newspaper La Gaceta published a list of unclaimed court funds in its paper, which included an entry for "BOUTIQUE APARTMENTS LLC, BROOKLYN FLATS VS WARNER, BLAKE 18-CC-022377 05/24/2018 *717.133 $3,600." Exhibit E.

20.     On September 1, 2021, the Clerk deposited the registry funds from the *Boutique Apartments* litigation into the fine and forfeiture fund for public use.

21.     Mr. Warner registered for an e-file account on myfloridaaccess.com on April 28, 2018, setting his e-mail address to blake@null3d.com, his phone number to (212) 542-0055, and his mailing address to 6220 S. Kelly Road, Tampa, Florida 33611. Exhibit H.

22.     The 6220 S. Kelly Road address is where Mr. Warner's mother lives, and he received mail at that address from 2017 through 2022.

23.     The parties do not dispute that the exhibits listed under paragraph 1 of this joint statement of undisputed facts are authentic and speak for themselves.

Respectfully submitted,

/s/ *Blake Warner*

**Blake Warner,** *plaintiff pro se*
2211 S. Village Ave.
Tampa, Florida 33612
blake@null3d.com

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

6

70844973;2

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June 2023, I filed the foregoing using the Court's e-portal, and am sending a courtesy copy to Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant

70844973;2

# Doc. 37

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

BLAKE WARNER,

      Plaintiff,

v.                               Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY        **Dispositive Motion**
CLERK OF COURTS,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Hillsborough County Clerk of Court (the "Clerk") moves for summary judgment.[1]

## I.    INTRODUCTION

Plaintiff Blake Warner failed to timely seek funds deposited in his eviction case, styled *Boutique Apartments LLC v. Warner*, Hillsborough County Court Case No. 18-CC-022377 (the "Eviction Case"). After nearly three years of inaction, the funds were forfeited by statute. Now, Mr. Warner brings a variety of meritless claims against the Clerk alleging damages. But each claim fails as a matter of law.

---

[1] The Clerk maintains its motion for judgment on the pleadings (Doc. 21) should be granted, but files this motion for summary judgment to comply with the Court's dispositive motion deadline and to include additional record evidence developed since the prior filing.

The parties have filed a joint statement of undisputed facts (Doc. #36) ("JSOF"), which is cited as "JSOF ¶ [#]."

## II.   UNDISPUTED STATEMENT OF MATERIAL FACTS

1.   In the Eviction Case,[2] on May 10, 2018, Mr. Warner was ordered to deposit money into the county court registry. (JSOF ¶¶ 2-4; Doc. 33, VI.1[3]).

2.   By the end of May 2018, Mr. Warner had deposited $3,600 with the county court. (JSOF ¶¶ 2-4; Doc. 33, VI.4-5).

3.   Mr. Warner moved to 502 S. Fremont Ave. #1322, Tampa, FL 33606 (the "Fremont Address") on June 22, 2018 and filed a notice of change of address in the Eviction Case. (JSOF ¶¶ 5-7; Doc. 33, VI.6-7).

4.   In the Eviction Case, the county court determined Mr. Warner's **landlord** was entitled to the deposited funds and requested a proposed order directing disbursement to the landlord. (JSOF ¶ 12, Ex. C; Doc. 33, VI.11).

5.   Mr. Warner claims he subsequently entered into an agreement with his landlord for the funds. (JSOF ¶ 13; Doc. 33, VI.12). No record of this agreement was filed in the Eviction Case. (*See* 33-1, the Eviction Case Docket).

---

[2]   The Court may take judicial notice of filings—or *lack* of filings by Mr. Warner—in the Eviction Case under Fed. R. Evid. 201. *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). For the Court's convenience, the parties have filed copies of the docket and relevant filings with this Court, which are undisputed and also available at https://hover.hillsclerk.com/.

[3]   Because Mr. Warner's admissions in pleadings and sworn statements are binding judicial admissions, where possible, this motion cites to Mr. Warner's own filings. *See, e.g.*, *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718–19 (11th Cir. 2011) (internal citations omitted) (noting that admissions in pleadings are "proof possessing the highest possible probative value").

6.    Mr. Warner then moved to a new address (Doc. 33, VI.14), but never submitted another change of address in the Eviction Case. (JSOF ¶ 8; 33-1 the Eviction Case Docket).

7.    On June 12, 2020, the Eviction Case was dismissed for lack of prosecution. (JSOF ¶ 16; Doc. 33, VI.16; Eviction Case Dkt. No. 76).

8.    On February 18, 2021, the Clerk mailed letters to all parties in the Eviction Case that any unclaimed court registry funds would be sent to the State of Florida if a response and court order to disburse the funds was not received by April 21, 2021. (JSOF ¶ 17; Doc. 33, VI.17; Eviction Case Dkt. No. 77). The Clerk's notice to Mr. Warner was sent to the Fremont Address. (*Id.*)

9.    The Clerk published notice in the July 9, 2021 edition of *La Gaceta* of the upcoming forfeiture. (JSOF ¶ 19; Doc. 33, VI.18;[4] Fla. Stat. § 116.21(2)).

10.    On September 1, 2021, the Clerk disposed of the funds pursuant to Florida Statute § 116.21, and posted notice to the docket in the Eviction Case. (JSOF ¶ 20; Doc. 33, VI.19).

11.    On **July 29, 2022**, Mr. Warner emailed the undersigned counsel for the Clerk with the subject "Fla. Stat. 772.11 DEMAND LETTER" in which

---

4    "[C]ourts may take judicial notice of documents such as . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 n.10 (11th Cir. 1999)). In any event, Mr. Warner himself filed the July 9 edition of La Gaceta.

71032611;4

Mr. Warner stated he was "demanding $10,800) for the Clerk "embezzling $3,600 from Mr. Warner" and that "absent either payment or stipulation, a lawsuit will be filed against [the Clerk] for theft" and "other possible causes of action." (Doc. 11-1, 34-1).

12.     On August 26, 2022, counsel for the Clerk emailed Mr. Warner a response to his demand letter. (Doc. 1-2; 34-2).

13.     On August 29, 2022, Mr. Warner filed this case. (Doc. 1).

## III.   STANDARD FOR DETERMINATION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## IV.   MEMORANDUM OF LAW

Mr. Warner brings two sets of claims. Counts I through III relate to the underlying forfeiture of the funds in the Eviction Case against Mr. Warner. Counts IV and V relate to the Clerk attorney's response to Mr. Warner's civil theft demand, accusing the Clerk of embezzlement and theft. Both sets of claims fail as a matter of law, as explained below and as explained in the Clerk's pending motion for judgment on the pleadings. (Doc. 20).

### A.   Mr. Warner's claims regarding the disbursement of funds are meritless.

Count I (Due Process Clause: Adequate Notice and Hearing), Count II (takings Clause: Escrow Funds), and Count III (Breach of Fiduciary Duty:

Embezzlement) fail as a matter of law because: (1) the Clerk complied with Florida Statute § 116.21; (2) no taking occurred; (3) no duty was breached; and (4) Mr. Warner failed to timely bring his claim. The record evidence demonstrates that the Clerk complied fully with the law and provided the notice required.

### 1. The Clerk provided adequate notice and complied with Florida Statute § 116.21, defeating Count I.

This Court should enter summary judgment against Count I because the Clerk provided adequate notice and complied with Florida Statute § 116.21, which bars Mr. Warner's due process claim.

First, the Clerk's motion for judgment on the pleadings already noted the Clerk's compliance with the publication requirement under Florida Statute § 116.21. Doc. 21, at 7–13.

Second, the record developed since the Clerk's motion for judgment on the pleadings further establishes the Clerk provided adequate notice. In the Eviction Case, at a hearing held October 9, **2018**, the county court ruled the deposited funds should be disbursed to Mr. Warner's **landlord** and directed the landlord to submit a proposed order. (Doc. 33, ¶¶ 10-11). Twenty months later, the Eviction Case was dismissed for lack of prosecution on June 12, **2020**. (Doc. 33, ¶¶ 16). On February 18, **2021**, nearly two-and-a-half years after the court had ruled the funds belonged to the landlord, the Clerk mailed notice to

all parties indicating the unclaimed funds would be sent to the State of Florida if a response was not filed before April 21, 2021. (JSOF ¶ 17 & Ex. D; Doc. 33, ¶ 17). The Clerk's February 18, 2021 letter was also posted to the publicly-visible docket for the Eviction Case. (*See* 33-1 Eviction Case Docket, p.2). The Clerk also published notice of the pending forfeiture in the July 9, 2021 edition of *La Gaceta*. (JSOF ¶ 19; Doc. 33 ¶ 18). The Clerk forfeited the funds pursuant to Fla. Stat. § 116.21 on September 1, 2021, and posted notice to the docket in the Eviction Case. (JSOF ¶ 20; Doc. 33 ¶ 19).

Mr. Warner predicates his due process claim on the allegation that "La Gaceta does not meet the requirements of Fla. Stat. § 50.031 for a newspaper to be eligible to publish legal notices" and "La Gaceta does not meet the 'newspaper of general circulation' requirement of Fla. Stat. § 116.21. (Doc. 1, ¶¶ 26-27). The record evidence refutes Mr. Warner's conclusory allegations as a matter of law.

At least one Florida court has already confirmed La Gaceta satisfies these statutes. *See BAC Home Loans Servicing v. Kenneth Brand*, Twelfth Judicial Circuit Court, Sarasota County, Florida, Case No. 2010-CA-9403 (November 16, 2018) ("Order … finding the La Gaceta newspaper meets all statutory requirements for publishing legal notices") (attached as **Exhibit 1**). The Court in *BAC Home Loans* approved the use of La Gaceta in Sarasota County, where La Gaceta has even less readership than Hillsborough County.

Doc. 33-18, at 14:23–15:8 (testifying to the heaviest distribution in the City of Tampa); Doc. 33-19, at 36:17–37:10, 40:11–41:8, 77:22–78:19, 80:20–81:9 (testifying about growth into Sarasota, beginning with limited Sarasota distribution at the time of *BAC Home Loans*).

La Gaceta is a weekly periodical with at least twenty-five percent of its wording in English, its legal notices are freely available online, and it has the necessary periodicals license with the Post Office. (Doc. 33-18, at 18:1–19:19; *see* Fla. Stat. § 50.011(1)(b) (listing the requirements for papers serving notice under Florida Law).[5]

Due process is satisfied if the notice is "reasonably calculated" to reach the person. *See Dominguez v. U.S. Atty. Gen.*, 284 F.3d 1258, 1259 (11th Cir. 2002) ("Due process is satisfied so long as the method of notice is conducted 'in a manner 'reasonably calculated' to ensure that notice reaches the alien'").

Here, the Clerk: (i) mailed letters to *all* parties in the Eviction Case at the last address filed with the Clerk; (ii) posted a copy of the letter to the docket in the Eviction Case, which was publicly available on the internet; and (iii) published notice in the La Gaceta newspaper. (Doc. 33, ¶¶ 17-18; Doc. 33-1, p.2

---

[5]    Additionally, subsection 50.011(2) states a paper does not need a periodicals license or to otherwise comply with subsection 50.011(1)—which La Gaceta does—to freely publish its legal notices online, which La Gaceta also does. https://lagacetanewspaper.com/legalads/legals070921.pdf (showing the notice in this particular case).

71032611;4

No. 77; Doc. 33-4; Doc. 36-4). There is no dispute the Clerk's letter to Mr. Warner was sent to the Fremont Address, which was the address listed on the last notice of change of address Mr. Warner filed in the Eviction Case. (Doc. 33, ¶ 7; Doc. 33-40; *see also Lee v. U.S. Postmaster Gen.*, 174 F. Supp. 3d 1325, 1326-27 (M.D. Fla. 2016) (holding mailing a notice to the last known address meets the Constitution's due process requirements). Again, the Clerk sent this letter to the address that Mr. Warner himself provided, as he was required to do. Fla. R. Jud. Admin. 2.515(b); Doc. 33, ¶¶ 17-18; Doc. 33-1, p.2 No. 77; Doc. 33-4. The Clerk uses mailed notices, which the parties are obligated to keep up to date, pursuant to the applicable administrative orders. *See* Declaration of Diane Sultenfuss-Thomas, attached as **Exhibit 2**, ¶ 6 (citing to Hillsborough County Administrative Orders (S-2007-036, as amended by S-2019-005). And there is no dispute the Clerk published notice in the La Gaceta newspaper. *See Acevedo v. First Union Nat'l Bank*, 476 F.3d 861, 866 (11th Cir. 2007) (approving notice by publication).

The Clerk was never under any obligation to conduct any further searches for Mr. Warner, at some other address, especially given Mr. Warner's personal knowledge of the funds he had deposited and the prior court order indicating the funds belonged to the landlord and not Mr. Warner.

Again, consider the context. There was a hearing in the Eviction Case where the county court determined the funds should go to the landlord (not to

71032611;4

Mr. Warner). (Doc. 33, ¶¶ 10-13; Doc. 33-3, stating "Court to disburse $ 3398 to the plaintiff [Boutique Apartments LLC]", Doc. 33-8 ¶ 7). After that ruling, no one filed any notice with the court to claim the funds. (Doc. 33-1). Mr. Warner did not seek to recover the funds until March 31, 2022 (Doc. 33-1, p.2), nearly **four-years** after he had deposited them in the court registry and one-and-a-half years after they were forfeited pursuant to Fla. Stat. § 116.21. There is no dispute the Clerk mailed and published notice of the unclaimed funds. While Mr. Warner demands the Clerk do more to find him after he ignored the funds for several years, there is no legal obligation that require the Clerk to do more here. Accordingly, Plaintiff's first three claims fail as a matter of law.

### 2.    Mr. Warner's inaction resulted in forfeiture.

Mr. Warner waited nearly four years, until March 31, 2022, to first seek recovery of the funds he deposited with the court registry in May 2018. The court noted its ruling – that the funds belonged to the landlord and not Mr. Warner – following the October 9, 2018 hearing. Mr. Warner knew where the funds were being held and that an order was required, but he filed nothing in the Eviction Case to indicate he was entitled to the funds or timely seek their return. *See City of West Covina v. Perkins*, 119 S.Ct. 678, 681–82, 525 U.S. 234, 241 (U.S. 1999) ("Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial

71032611;4

procedures available to him. The City need not take other steps to inform him of his options.").

Despite having properly filed a notice of change of address when he moved to the Fremont Address, Mr. Warner failed to file the required notice of change of address when he moved away from the Fremont Address.  *But see Hollis v. W. Academy Charter, Inc.*, 782 F. App'x 951, 954 (11th Cir. 2019) ("[*P*]*ro se* litigants must nonetheless comply with procedural rules.").

The Clerk mailed notice to all parties and posted the letter to the online docket. And the Clerk published notice in La Gaceta. Still, Mr. Warner took no action to seek the funds before they were forfeited.

Mr. Warner claims the Clerk should have done more to find Mr. Warner, even though a diligent search of the record would only have revealed the funds had been determined to belong to the landlord and not Mr. Warner. *See* Doc. 33, at 4; Doc. 33-8 ¶ 7 (admitting the only record evidence was that the landlord was due to receive them). But the law does <u>not</u> require the Clerk to do more than it did here. *See also* Fla. R. Gen. Prac. & J. Admin 2.516(g) ("**Service by Clerk.** When the clerk is required to serve notices and other documents, the clerk may do so by e-mail as provided in subdivision (b)(1) or by any other method permitted under subdivision (b)(2). Service by a clerk is not required to be by e-mail.") (emphasis in original).

10

Plaintiff, by filing the required notice of address change, implicitly admitted that he understood the obligation to keep the Hillsborough County Court apprised of his contact information. (Doc. 11-3, ¶ 2, Administrative Order S-2019-005, which states "If … self-represented litigant experiences a change of mailing address … must promptly file with the clerk … a separate Designation of Current Mailing and E-Mail Address form for each case associated"). Despite this knowledge, Plaintiff failed to file any further updates to his address despite the three years that passed during the *Boutique Apartments* litigation. *See Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999) (citing *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539–40 (Fla. 3d DCA 1992)) (noting that even *pro se* litigants are expected to know and comply with the law); *see also U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)) ("[I]gnorance is no hidden virtue; a *pro se* [litigant] must follow the rules of procedure . . . ."). And Mr. Warner took no further action to pursue the funds or monitor the docket in the then-pending action, until it was too late.

Mr. Warner's sworn declaration and his own motion for summary judgment admit that he was well aware of the funds' existence (he explicitly bargained for it), along with the need to file a proposed order so the Court would award the funds to him. Doc. 33, at 4; Doc. 33-8 ¶¶ 7–8; *see also* Fla. R. Civ. P. 1.600 (requiring a court order to disburse registry funds).

71032611;4

Notably, the constitutional requirement of notice does *not* actually require formal notice in all contexts; a party's actual knowledge of a matter can be sufficient. For example, in *VanHorn v. D.E.A.*, this Court held that a person's *actual knowledge* of the DEA's seizure of currency amounted "at a minimum to constructive knowledge of the DEA's seizure of the currency." 677 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009) (denying motion to set aside forfeiture under 18 U.S.C. § 983). To obtain relief from forfeiture under section 983, "the movant must show not only that the government knew or reasonably should have known of his interest in the property yet failed to take reasonable steps to notify him, but also that he did not know or have reason to know of the seizure within sufficient time to file a timely claim." *Id.* at 1309. The Court further noted the DEA's reasonable efforts to notify the plaintiff of the forfeiture proceeding, including through mailed notice. *Id.* Although "other steps were available" when the certified mail was returned unclaimed, the Court found that the plaintiff's actual knowledge, mixed with the reasonable efforts by the DEA, "comport[ed] with due process." *Id.*

This case presents the same situation. Mr. Warner's arguments alleging insufficient notice (despite the Clerk's efforts) are an attempt to circumvent the undisputed facts: Mr. Warner knew about the funds (he deposited them); Mr. Warner knew the procedure for claiming the funds (the court required a court order to disburse the funds); and Mr. Warner waited multiple years

71032611;4

before taking any further action. Doc. 33 ¶¶ 4-5, 10-13; Doc. 33-8 ¶¶ 7–8. Thus, Mr. Warner cannot show "that he did not know or have reason to know of the seizure within sufficient time to file a timely claim." *VanHorn*, at 1309.

The forfeiture is the inevitable result of Mr. Warner's delay and inaction, but he only has himself to blame. Unless his goal was to set up this lawsuit by ignoring the funds and then after-the-fact attempting to claim extra damages, there was no reason for Mr. Warner to not take prompt action upon allegedly securing the right to move for disbursement of the funds—especially given Mr. Warner's extensive history in litigating as a *pro se* and navigating court rules. *See* Pl.'s Resp. to Def.'s Interrogs., attached as **Exhibit 3,** at 3 (showing at least eight pre-forfeiture lawsuits, plus eight additional "REDACTED" cases).

The Clerk provided ample notice to Mr. Warner and the other *Boutique Apartments* litigants of the unclaimed funds. Mr. Warner's own inaction, despite his actual and constructive knowledge, resulted in their forfeiture. As a result, Judgment in the Clerk's favor is appropriate. *See VanHorn*, at 1311; *see also In re Alton*, 837 F.2d 457, 460–61 (11th Cir. 1988) (affirming judgment against request for extension of time to file objection to bankruptcy discharge, finding "no due process violation" because actual knowledge, even if misleading, obligated party with knowledge to determine the necessary dates for action, and thus could not "properly complain of the consequences of his inaction"); *see also* 11 U.S.C. § 523(a)(3)(A) (noting "actual knowledge" is

71032611;4

sufficient in the bankruptcy context, further illustrating a particular form of notice is not always necessary under the Constitution when a party has notice *or actual knowledge*).

### 3. Count II fails as a matter of law because no "taking" occurred.

This Court should enter summary judgment against Count II because no "taking" occurred as a matter of law. A statutory forfeiture of funds is *not* a taking. *U.S. v. Morales*, 36 F. Supp. 3d 1276, 1293–94 (M.D. Fla. 2014) (concluding a claim alleging a violation of the Takings Clause failed because property was forfeited pursuant to statute).

While Plaintiff's complaint does not specify whether he is referring to the Florida Constitution, the Federal Constitution, or both, the relevant provisions from the two constitutions are given the same interpretation and the outcome is the same. *See, e.g.*, *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1222 (Fla. 2011) (noting Florida and federal takings clauses are given the same interpretation), *rev'd on other grounds Koontz v. St. Johns River Mgmt. Dist.*, 570 U.S. 595 (2013); *Silvio Membreno & Fla. Ass'n of Vendors, Inc. v. City of Hialeah*, 188 So. 3d 13, 20 (Fla. 3d DCA 2016) (noting Florida and federal due-process clauses are given the same interpretation).

Under either constitution, takings are situations involving eminent domain—e.g., the government takes part of a person's land to expand a road.

14

But the Supreme Court has noted that the Takings Clause does not apply outside the context of eminent domain:

> Petitioner also claims that the forfeiture in this case was a taking of private property for public use in violation of the Takings Clause of the Fifth Amendment, made applicable to the States by the Fourteenth Amendment. But if the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State. The government may **not** be required to compensate an owner for property *which it has already lawfully acquired under the exercise of governmental authority **other than** the power of eminent domain.*

*Bennis v. Mich.*, 516 U.S. 442, 452 (1996) (emphasis added); *accord Morales*, 36 F. Supp. 3d at 1293–94.

Simply put, this case does *not* involve eminent domain. Here, Mr. Warner deposited funds into a court registry pursuant to Florida Statute § 83.60(2), and then forfeited those funds by failing to claim them as required by Florida Statute § 116.21. In other words, Hillsborough County obtained the funds through "the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452. As a result, the Takings Clause does not apply, and judgment in the Clerk's favor is appropriate.

### 4. The Clerk did not breach any duty.

This Court should enter summary judgment against Count III because Plaintiff cannot establish the elements for breach of fiduciary duty. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary

71032611;4

duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).[6]

Plaintiff alleges the Clerk "engage in self-dealing by unilaterally seizing– without court order–the principal/***Plaintiff***'s funds for their own use without conducting a reasonable/diligent attempt to return the funds or providing adequate notice to ***Plaintiff***." (Doc. 1, ¶ 51) (emphasis in original).

The Clerk did <u>not</u> breach any duty, because the Clerk complied with the requirements of Florida law. Specifically, the Clerk is required to deposit unclaimed funds into the fine and forfeiture fund every year. Fla. Stat. § 116.21(1) ("**Any unclaimed court-related funds** collected or deposited by the clerk which remain unclaimed **must be deposited into the fine and forfeiture fund"**) (emphasis added). And having done so, the Clerk receives a full release and discharge of any and all duties related to the deposited funds. Fla. Stat. § 116.21(4) ("**Upon such payment** to the fine and forfeiture fund, the … **clerk shall be released and discharged from any and all** further **responsibility or liability** … .") (emphasis added). The Clerk's compliance with Florida law cannot constitute a breach of fiduciary duty. *Cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428 (2014) ("[C]ourts must bear in

---

[6] "A federal court sitting in diversity jurisdiction applies the substantive law of the forum state (in this case, Florida) alongside federal procedural law." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (affirming entry of summary judgment against breach of fiduciary duty claim).

mind that the duty of prudence, under ERISA **as under the common law of trusts**, does not require a fiduciary to break the law.") (emphasis added) (citing Restatement (Second) of Trusts § 166, Comment *a* ("The trustee is not under a duty to the beneficiary to do an act which is criminal or tortious")).

Separately, the Clerk did <u>not</u> cause Mr. Warner damage by complying with Florida law. The Clerk: (i) mailed notice to Mr. Warner (and the other litigants); (ii) published the statutorily required notice; and (iii) posted the notice to the publicly-visible docket in the Eviction Case. Mr. Warner's alleged damages were self-inflicted, by his failure to claim the funds within the time required, which bars his claim as a matter of law. *See* Fla. Stat. § 116.21(3) ("**Unless claim is filed within such time** as aforesaid, **all claims in reference thereto are forever barred**.") (emphasis added).

The Clerk is not required to hold the funds in the registry indefinitely until such time as Mr. Warner desires to seek their return. Mr. Warner's multi-year delay is inexcusable when he – as the depositor of the funds – knew they were there the entire time. Moreover, the record in the Eviction Case would only indicate the funds belonged to the landlord and <u>not</u> to Mr. Warner. (Doc. 33, ¶¶ 1, 9-11; Doc. 33-8 ¶ 7). The only suggestion (without any record evidence) the funds *might* belong to Mr. Warner, and not his landlord, is Mr. Warner's sworn statement filed in this case in June 2023 that "after the [October 9, 2018] hearing, **Landlord** and **Plaintiff** [*i.e.*, Mr. Warner] entered

71032611;4

into an agreement to abandon Mr. Warner's remaining counter-claims and third party claims in exchange for the court registry funds." (Doc. 33, ¶ 12; 33-8, ¶ 8) (emphasis in original). Assuming *arguendo* Mr. Warner's statement is true, there is nothing to suggest the Clerk was aware of this agreement or any other fact that would indicate the funds were the property of Mr. Warner, rather than his landlord as the court ruled in the Eviction Case.

Therefore, this Court should enter summary judgment in favor of the Clerk and against Mr. Warner's Count III for breach of fiduciary duty.

**B.    Plaintiff's claims regarding the Clerk's response to his accusations of embezzlement and theft fail as a matter of law.**

Plaintiff's Count IV (Defamation Per Se: Extortion) and Count V (First Amendment Retaliation: Extortion) fail as a matter of law. Both Counts IV and V are predicated solely on Plaintiff's email demand (Doc. 34-1) and the Clerk's response (Doc. 34-2) to the demand, which was sent only to Plaintiff. There is no dispute over the content of these two documents.

**1.    Plaintiff is unable to show the elements of defamation.**

This Court should enter summary judgment against Count IV because Plaintiff cannot establish the elements of a defamation claim. The necessary elements of a defamation claim are: (1) publication of a statement, (2) falsity of the statement, (3) knowledge or reckless disregard by the defendant, (4) actual damages, and (5) the statement must be defamatory. *Jews for Jesus,*

71032611;4

*Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). "Publication" requires the defendant "publish[] or communicate[] [the statement] to a third person; statements made to the person alleging the defamation do not qualify." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007).

Here, Plaintiff sent correspondence to the Clerk's counsel and the Clerk's counsel sent a response letter *only* to Plaintiff. (Doc. 1-2; Doc. 34-1, Doc. 34-2). Because the Clerk did <u>not</u> send the response letter to anyone other than Plaintiff, there is no publication and Plaintiff's defamation claim fails as a matter of law. *See Geddes*, 960 So. 2d at 833.

Plaintiff alleges one of the Clerk's attorney's "published" the statements to another one of the Clerk's attorney's and their paralegal. (Doc. 1, ¶ 60; Doc. 34-2). But as a matter of law, this is not sufficient to satisfy the publication element of a defamation claim. *See Geddes*, 960 So. 2d at 833 ("When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication.").

The only person who "published" the response beyond the parties was Plaintiff himself when he chose to file it in this Court's public docket, but that act by him cannot and is not attributable to the Clerk. *E.g.*, *Valencia v.*

71032611;4

App.86

*Citibank Int'l*, 728 So. 2d 330, 330–31 (Fla. 3d DCA 1999) (holding plaintiff's decision to publish a statement cannot be attributable to the defendant).

Independently, Plaintiff's claim fails because Plaintiff cannot establish the falsity of the statement; the letter simply noted that he *might* have committed extortion by using threats of criminal accusations to obtain a settlement from the Clerk. Doc. 1-2; Fla. Stat. § 836.05 (explaining that a person commits extortion by maliciously threatening "to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatsoever . . . .").

Because Plaintiff cannot establish the necessary elements of publication or falsity, this Court should enter judgment as a matter of law against the defamation claim in Count IV.

### 2.   Florida's litigation privilege bars the defamation claim.

Similarly, Florida's broad litigation privilege bars Mr. Warner's defamation claim, even if all required elements were established (they are not). Under the litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). Florida courts have expressly held that litigation privilege applies to

71032611;4

App.87

"communicative acts" such as correspondences sent during litigation. *E.g.*, *Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 525–26 (Fla. 3d DCA 2017); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 381, 384 (Fla. 2007) (applying the privilege to letters sent that allegedly misrepresented the amount of money that the plaintiffs owed as debts).

The Clerk's attorney's responsive correspondence fits within that scope—it was a direct response to Mr. Warner's own pre-suit communication accusing the Clerk of engaging in purportedly criminal behavior. For the same reason that the litigation privilege would protect Mr. Warner's letter from being the focus of a civil lawsuit (regardless of whether or not Mr. Warner's letter constitutes criminal extortion), the litigation privilege likewise enables the Clerk to respond by pointing out the flaws in Mr. Warner's position. *See Levin*, 639 So. 2d at 608 ("participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim"). Because of Florida's broad litigation privilege, this Court should enter judgment as a matter of law against the defamation claim in Count IV.

### 3. Mr. Warner did not suffer any retaliatory act.

This Court should enter summary judgment against Count V because Mr. Warner cannot establish the necessary element of any adverse retaliatory act by the Clerk. A plaintiff in a First Amendment retaliation case must show

three elements: (1) he or she engaged in constitutionally protected speech, (2) he or she suffered an adverse action, and (3) a causal relationship exists between the protected speech and the adverse action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)). Here, neither the second nor third elements are present.

In Count V, Mr. Warner alleges first amendment retaliation, based on the Clerk's attorney's response to his demand letter accusing the Clerk of embezzlement and theft. In the response, the Clerk's attorney's explained: "we write to explain why your proposed lawsuit would be frivolous and serve no purpose, other than to subject you to potential liabilities." (Doc. 34-2, p.2). As to these "potential liabilities," the Clerk's attorney's further explained that Mr. Warner's threatened claim under Fla. Stat. § 772.11 "provides a defendant with the right to recover attorney's fees and costs for defending against such a claim." In sum, the Clerk's attorneys explained the legal deficiencies in Mr. Warner's demand and identified the possibility attorney's fees could be awarded to the Clerk if Mr. Warner pursued his threatened claims. On these undisputed facts, Mr. Warner cannot state a claim for First Amendment retaliation as a matter of law.

First, merely threatening counterclaims (which the Clerk did not even do here) is not sufficient to constitute adverse action for purposes of retaliation. *See Smith v. Haynes*, 940 F.3d 635, 648 (11th Cir. 2019) (holding the

defendant's discussion of possible counterclaims did not meet "the governing test for what constitutes adverse action"). Similarly, the Supreme Court "has condoned limiting retaliation liability when the challenged government action, whether conduct or speech, is so pervasive, mundane, and universal in government operations that allowing a plaintiff to proceed on his retaliation claim would 'plant the seed of a constitutional case' in 'virtually every' interchange." *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 148–49 (1983)). Likewise, the Seventh Circuit has explained that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation . . . ." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998).

Here, the Clerk did not threaten counterclaims; it's response was far tamer and simply noted that Mr. Warner could be liable for attorney's fees and costs if he pursued an unsuccessful civil theft claim. Fla. Stat. § 772.11(1). While the Clerk's letter also explained that threatening to accuse another of a crime in order to obtain money *may* constitute a violation of a criminal statute, *see* Fla. Stat. § 836.05 (explaining that a person commits extortion by maliciously threatening "to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatsoever . . . ."), the response letter did <u>not</u> threaten any criminal prosecution. (Doc. 34-2, stating "We trust it was not your intent to commit extension.")

23

On these undisputed facts, Mr. Warner's retaliation claim fails as a matter of law because no adverse action occurred. The Clerk's attorneys merely provided a mundane reminder that phrasing matters and notice of the potential for the Clerk to receive an award of its attorney's fees and costs. *Id.* The response did not even rise to the level of a threatened counterclaim, which, even then, would not be actionable. *See, e.g.*, *Tzoc v. M.A.X. Trailer Sales & Rental, Inc.*, No. 13-cv-23859, 2015 WL 2374594, at *14 (S.D. Fla. May 18, 2015) (finding a purported threat to countersue a "plaintiff for $300,000 was not [an] adverse action"). Moreover, Mr. Warner cannot demonstrate the response was tied to his exercise of speech. Rather, the language was clear that the Clerk might only seek a fee-shifting award under § 772.11(1) *if* he proceeded with his "proposed lawsuit" under the civil theft statute. (Doc. 1-2).

Finally, Mr. Warner cannot demonstrate he suffered any harm from any alleged retaliation. He still could have filed the lawsuit, in which case the Clerk would have defended against it (as it has defended this case). The Clerk maintains any civil theft claim would be meritless and preserves any and all rights it may have to defend itself under the law, including the statutory right to seek attorney's fees. But noting that possibility is not a retaliatory act. *E.g.*, *Smith*, 940 F.3d at 648. Mr. Warner's Count V, asserting retaliation, is a creative, but legally deficient attempt to recover "damages" in apparent recognition that Mr. Warner can no longer seek to recover the deposited funds

71032611;4

due to his own inaction, as explained above. Accordingly, this Court should dismiss Count V as a matter of law because Mr. Warner cannot establish any retaliatory act or harm.

## V.    CONCLUSION

Due to Mr. Warner's own inaction for several years, the funds he previously deposited were forfeited. Barred from recovering these funds by statute, Mr. Warner asserted five creative, but legally deficient, claims, seeking more than he lost.

Mr. Warner admits the last docket entry regarding the funds suggested his former landlord was entitled to the funds. Doc. 33, at 4; Doc. 33-8 ¶ 7. Although Mr. Warner claims to have explicitly bargained for those funds with the landlord—demonstrating his knowledge of the need to collect them—he then took no action to collect them for three years. Doc. 33, at 4; Doc. 33-8 ¶ 8.

While *pro se* litigants are certainly able to represent themselves, they are also responsible for knowing the law. *E.g.*, *L.E.B. v. D.D.C.*, 304 So. 3d 54, 58 (Fla. 2d DCA 2020). Mr. Warner asks this Court to award him the funds he forfeited through his inaction, but the Court should not reward Mr. Warner's unwillingness to act timely on his own behalf when he could have made a difference. And Mr. Warner's claims regarding the pre-suit correspondence fail as a matter of law. Accordingly, the Clerk requests judgment as a matter of law in its favor on all counts.

71032611;4

App.92

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*

Counsel for Defendant

71032611;4

# Doc. 38

# United States District Court

## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER

v.

HILLSBOROUGH COUNTY
CLERK OF COURTS

Case Number 8:22-CV-1977

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# I  INTRODUCTION

*Plaintiff* responds in opposition to *Defendant's Motion for Summary Judgment* D.E. 37 ("DMSJ"), and adopts and reincorporates his Verified Partial Motion for Summary Judgment D.E. 33 ("PMSJ").

Why would the states bother administering custodial unclaimed property programs with the goal of reuniting unclaimed property with their rightful owners if they could just seize ownership of the funds after a brief dormancy period and posting a thirty-day notice in a Spanish newspaper that practically no one reads reads, and then invoking the doctrine of "no taksies backsies" when the rightful owners try to reclaim their property? *Defendant*'s position is of course nonsensical, and would be a radical

1

departure from existing takings clause jurisprudence. Widespread support for their position would systematically lead to the dismantling of existing unclaimed property laws, and then the erection of true escheatment statutes in their wake.

## II   DISPUTED FACTS

*Plaintiff* disputes Fact #4 in *DMSJ*:

> "4. In the Eviction Case, the county court determined Mr. Warner's landlord was entitled to the deposited funds and requested a proposed order directing disbursement to the landlord. (JSOF ¶ 12, Ex. C; Doc. 33, VI.11)."

This "fact" is disputed insofar as it mischaracterizes the cited material as indicating that the court *ruled* or *ordered* that the landlord was entitled to the funds. The actual cited material speaks for itself. Especially in light that this assertion contradicts the cited materials which specifically state that no disbursement order was made. *see* JSOF ¶ 12, Ex. C; Doc. 33, VI.11.

## III   FUNDS

*Defendant* repeatedly presents argument in their DMSJ that would seem to imply or state that the deposited $3,600 does not belong to *Plaintiff*. *see* "The only suggestion (without any record evidence) the funds might belong to Mr. Warner, and not his landlord, is Mr. Warner's sworn statement filed in this case in June 2023" and "Moreover, the record in the Eviction Case would only indicate the funds belonged to the landlord and not to Mr. Warner". *Defendant* neither argues that Mr. Warner's statement would not be admissible at trial nor presents any evidence to rebut it. Such an argument is improper in a motion for summary judgment and should be stricken. Presumably they know this, which is why they stipulated to it. *see* JSOF ¶ 13.

Assuming *arguendo* that *Defendant*'s assertion is true and the amount the court indicated ($3,398 *see* JSOF Exhibit C) was the landlords, they do not dispute that the remaining over-payment of $202 is rightfully *Plaintiffs*. *see* JSOF ¶ 4. Therefore their argument is not about liability at all, but rather disputing the amount of the damages.

## IV   DUE PROCESS

*Defendant* misrepresents that "Mr. Warner predicates his due process claim on the allegation that 'La Gaceta does not meet the requirements of Fla. Stat. § 50.031 for a newspaper to be eligible to publish legal notices' and 'La Gaceta does not meet the 'newspaper of general circulation' requirement of Fla. Stat. § 116.21.'". The due process challenge is a lot more than just those two positions. The quoted positions were in reference to the clerk not complying with the requirements of § 116.21 and applicable state law negating their affirmative defense. Though it is *Plaintiff*'s position that notice by publication never satisfies due process if the identity of the owner(s) is known. And that if *Defendant* needed a determination as to whether Mr. Warner or his landlord was the rightful owner, then they should have filed an interpleader action.

The *BAC Home Loans Servicing* case *Defendant* cited as support for the assertion that La Gaceta meets the newspaper of general circulation requirement is not relevant here, because it interpreted an old version of Fla. Stat. § 50.011 that was superseded on January 1, 2022 with a new statutory requirement that the newspaper must be circulated to at least ten percent of the population which *Plaintiff* invoked in his PMSJ. The old law had no minimum circulation requirement.

*Defendant* also cites to *Lee v. U.S. Postmaster Gen* for it's contention that due process is satisfied if they simply mail a letter to the last known address. The instant

App.97

action is distinguished because:

1. Lee had been arrested on drug charges and the were funds seized via civil asset forfeiture. Here, Mr. Warner was neither arrested in the eviction action nor were the escrow funds accused of being related to criminal activity.

2. The notice sent to Lee was received and signed for by his girlfriend and the court cited that notices received by family members combined with newspaper publication satisfies due process. In the instant action, it is undisputed that Mr. Warner did not live at the Fremont address and that the mailed notices were returned undelivered. *see* JSOF ¶ 15, PMSJ Undisputed Fact #14, Warner Affidavit #9, and Exhibit warner lease 05-17-19 to 04-30-20. *Defendant* presented no facts that a) anyone associated with Mr. Warner lived at the Fremont address at the time the notice was sent and b) that they received the notice on Mr. Warner's behalf. In fact, Mr. Warner does not know who moved into the Fremont apartment after he moved out. And *Defendant* presented no facts that the letter was sent via *certified* mail and *Plaintiff* denies knowing anyone that lived at the *Fremont* address after he moved out. *see* Warner Declaration ¶ 16.

And finally, *Defendant* cited to *Acevedo v. First Union Nat. Bank*, which is distinguished because the FDIC had neither knowledge of the identity of the owner the cashiers check nor any last known address, so the court accepted notice by publication. In the instant case, *Defendant* knew the identities of all possible owners, had addresses, and had reasonable means to contact them, therefore notice by publication does not satisfy due process here.

# V   INACTION

*Plaintiff* disagrees with *Defendant*'s representations that the period of dormancy is calculated from the date of deposit (may 2018) to the date that *Plaintiff* tried to claim the funds (March 31 2022). *see* "Mr. Warner waited nearly four years, until March 31, 2022". Rather, the period of dormancy is property calculated from the date the complete eviction action was dismissed on June 12, 2020 to the date *Plaintiff* tried to claim the funds (March 31 2022) or roughly one year and nine months. *see* JSOF ¶ 16.

   *Defendant* conflates Mr. Warner knowing where the money is, and knowing that it has been (or will be seized). From Mr. Warner's perspective, the funds are in an escrow account which is a safe place just like a bank account, to hold money until you retrieve it. After all, no one refers to or thinks of money deposited in a bank checking account as "seized" or otherwise in jeopardy. And this is why the instant case is distinguished from the cited *City of West Covina v. Perkins*: The property owner in *City of West Covina* was informed that his property had been seized and he failed to act. *Defendant* has produced no evidence that suggests that Mr. Warner knew *Defendant* was intending to escheat his funds or that his funds were at risk in any way.

   It is very telling that the *Defendant* intended to embezzle the escrow funds because the courts rules that *Defendant* cites to explicitly states that "when the clerk is required to serve notices and other documents, the clerk may do so by e-mail", yet the clerk elected to instead serve via mail to an old address with thirteen returned undelivered notices. And that mailed notice was not mandatory, the clerk had a choice: email or known bad address, and they intentionally chose the known bad address. *Defendant*

App.99

never claims that they did not know what *Plaintiff*'s email was.

Finally, inaction is not enough to constitute abandonment. *Defendant* has failed to present any evidence that *Plaintiff* took any affirmative steps to indicate the abandonment of the funds. If inaction was enough, States across the country would just seize all property held in their respective unclaimed property divisions.

## VI   ELECTRONIC SERVICE

Not once had *Defendant* stated that they could not take the reasonable steps of contacting *Plaintiff* via email, e-service, phone number, drivers license, or a more diligent address search. Their entire defense is not that they did not that any of those contact methods were unreasonable or unavailable, but rather because of an obscure court rule that gave them *discretion* not to try. That cited administrative order conflicts with federal minimum due process' reasonable notice provisions, and is thus preempted.

Indeed the general public can electronically serve documents or notice in *any* thirteenth judicial circuit court case. *see* Warner Declaration ¶ 12 - 15. If the general public can do it, so can the clerk.

And the *Defendant*'s own website setup to guide *pro se* litigants states that they would serve various court documents electronically begining April 2019:

> "Effective in April 2019, the Clerk's Office will begin electronically serving various court documents to Attorneys of Record and litigants registered for e-service through the Florida Court E-Filing Portal for all civil court cases." *see* attached clerk_prose_guide.pdf and Warner Declaration ¶ 17

Mr. Warner knew nothing of any duty to continuously file address change notices on the docket, he believed that once he registered for e-service that all documents

would be served electronically. *see* Warner Declaration ¶ 2 - 10.  The one address change that Mr. Warner posted was to notify the landlord of his new address to facilitate the return of his rental deposit, and to inform the court that he was no longer in possession of the subject dwelling. *see* Warner Declaration ¶ 11.

## VII   COUNT II: TAKINGS CLAUSE

*Defendant* cites *Bennis v. Mich.*, 516 U.S. 442, 452 (1996) for its contention that a taking can only occur in cases involving eminent domain where the property has been lawfully acquired under the exercise of governmental authority.

*Bennis* was a joint owner of a car that was seized via civil asset forfeiture after her husband engaged in illegal sexual activity with a prostitute in the car. *Bennis* had notice and opportunity to be heard because she was sued directly by the state in a civil asset forfeiture action and appeared for that action.

The case is distinguished because it was not about adequate notice or opportunity to be heard, rather it was about the joint-property interest in property subject to civil asset forfeiture. The court specifically noted that "The gravamen of petitioner's due process claim is not that she was denied notice or an opportunity to contest the abatement of her car; she was accorded both ...  Rather, she claims she was entitled to contest the abatement by showing she did not know her husband would use it to violate Michigan's indecency law.".  Additionally the property in that case was seized by the state via a lawful court order, unlike the instant action.  The "the exercise of governmental authority" was the court order, *not* mere statutory authority as we have here.

The ruling merely affirms that the state is not obligated to provide just compensa-

tion for property that is forfeited pursuant a court order.

# VIII   Count III: Breach of Fiduciary Duty

*Defendant* contends that the breach of fiduciary duty claim must fail because " the Clerk complied with Florida Statute § 116.21" and "no duty was breached;".  *see* DMSJ IV.A.4.  However in a circular argument, they claim no duty was breached because they complied with § 116.21 so their sole argument here is effectively that they complied with § 116.21.

*Plaintiff* agrees that if the court finds that a) Fla. Stat. § 116.21 is constitutional and b) that *Defendant* complied with all of it's requirements, than that is a complete defense to this breach of fiduciary duty claim.  To be clear, it would still be a breach, however *Defendant* could not be held liable for it under *state law*.

To that end, *Plaintiff* has already sufficiently briefed the constitutionality of § 116.21 in PMSJ, as well as addressed the non-compliance with § 116.21 (which might afford *Defendant* a defense to state law claims).  Of particular note, *Plaintiff* previously argued and presented evidence in PMSJ that the July 9, 2021 edition of La Gaceta merely reached less than 1 percent of the population of Hillsborough County which fell woefully short of the statute's 10 percent requirement.

The clerk contends that they are "not required to hold the funds in the registry indefinitely until such time as Mr. Warner desires to seek their return.".  *Plaintiff* would love to be "burdened" with being paid approximately 3 percent upfront to hold the funds on top of collecting interest on the principal indefinitely with the possibility that the owner may never show up to claim the funds.  I would gladly hold any funds anyone wants to give me for as long as they want.  To even pretend that they were

harmed or burdened by this is nonsensical. The states engage in aggressive custodial takings statutes solely to collect interest. *see MARON v. PATRONIS* (N.D. Fla. 2022) No. 4:22-cv-00255.

In any event, once they were sufficiently fed up with collecting free money, they should have sent the money to the State's Unclaimed Property Division as their letter notice indicated that they would do, not kept it for themselves.

## IX   COUNT IV: DEFAMATION

*Plaintiff* was initially going to invoke the doctrine of compelled self-publication defamation and waiver of qualified privilege, however he does not believe it is an efficient use of anyone's time to argue this count, therefore he elects to major on the majors and abandons Count IV.

## X   COUNT V: FIRST AMENDMENT VIOLATION

*Defendant* only challenges that "he ... suffered an adverse action" and "a causal relationship exists". They then misrepresent the basis of the adverse action as being based on threatened counterclaims, attorney fees, and costs associated with an unsuccessful civil claim. To be clear, the adverse action was the veiled threat of criminal prosecution.

As for the causal relationship, the adverse action was embedded in a direct response to Mr. Warner's first amendment activity. Specifically, petitioning his government for redress and his speech. And it is clear from the context of that letter that *Defendant*'s goal when referencing the criminal statute was to chill Mr. Warner's first amendment rights.

7-1-2023

_____

Date

_____

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM

10

# Doc. 41

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER,

      Plaintiff,

v.                                Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY
CLERK OF COURTS,

      Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S VERIFIED PARTIAL MOTION FOR SUMMARY JUDGMENT

      Defendant Hillsborough County Clerk of Court submits this response in opposition to Plaintiff Blake Warner's ("Mr. Warner") Verified Motion for Partial Summary Judgment (Doc. # 33) (the "MPSJ").

## I.    INTRODUCTION

      This case relates to unclaimed funds Mr. Warner deposited in the court registry in an underlying eviction lawsuit, styled *Boutique Apartments LLC v. Warner*, Hillsborough County Court Case No. 18-CC-022377 (the "Eviction Case"), and then ignored for over three years. Mr. Warner alleges the pre-forfeiture notices were inadequate. And Mr. Warner claims the response to his post-forfeiture civil theft demand letter constituted defamation or retaliation.

1

In his MPSJ, Mr. Warner moves for summary judgment on three of his five claims: (1) "Count I: Due Process", (2) "Count II: Takings Clause", and (3) "Count V: First Amendment retaliation. *See* Doc. 33, pp. 16-24. But the undisputed facts and record evidence demonstrate Mr. Warner is not entitled to relief, and instead the Clerk is entitled to judgment in its favor. Specifically, Mr. Warner received more than adequate notice of the funds in the court registry, he did not experience a "taking," and his retaliation claim is facially meritless. Accordingly, the Clerk requests the Court at a minimum deny Mr. Warner's motion. The Clerk maintains this Court should enter judgment against Mr. Warner's claims, either by granting the Clerk's Amended Motion for Judgment on the Pleadings (Doc. #21) ("AMJP") or its motion for summary judgment (Doc. #37) ("MSJ").

## II.   BACKGROUND

The parties have filed a joint statement of undisputed facts (Doc. #36) ("JSOF"), which is cited as "JSOF ¶ [#]."

## III.   STANDARD FOR DETERMINATION

This Court should enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Milgram v. Chase Bank USA, N.A.*, 2023 WL 3874276, at *3 (11th Cir. June 8, 2023) (internal quotation omitted). The Court reviews all evidence in "the light most favorable to the nonmoving

party" and draw "all justifiable inferences in that party's favor." *Id*. While there is no genuine dispute as to any material fact, *see* JSOF, it is the Clerk – not Mr. Warner – who is entitled to judgment as a matter of law. *See* Clerk's AMJP and MSJ.

## IV.   MEMORANDUM OF LAW

Mr. Warner's MPSJ fails to establish the necessary requirements for judgment in his favor. To the contrary, his own sworn statements support the Clerk's prior motions for judgment dismissing all claims. For clarity, this response tracks the order of arguments in Mr. Warner's MPSJ.

### A.   Mr. Warner's arguments with respect to his Count I: Due Process claim fail as a matter of law.

#### 1.   Although Florida Statute § 116.21 is constitutional, the Court need not evaluate the challenge here.

The thrust of Mr. Warner's due process argument is his suggestion that the entirety of Florida Statute § 116.21 is unconstitutional in all cases. Doc. 33, at 10–11 ("As this law applies to court registry cases, there is ***always*** a last known address associated with the court case so notice by publication is never sufficient.") (emphasis in original). Mr. Warner's premise for challenging the law fails under the undisputed facts of this case.

First, the "last known address" argument fails because the Clerk sent notice to the last known address provided by Mr. Warner himself in the required notice of change of address he filed. *See* JSOF # 6-8, 17, and Ex. D

3

(reflecting Mr. Warner provided the Clerk with the Fremont Address as his address, which is where the Clerk mailed notice). In addition to mailing the notice to Mr. Warner at the last known address he provided to the Clerk, the Clerk also posted a copy of the letter to the docket in the Eviction Case. *See* Doc. 33-1, the Eviction Case Docket, No. 77.

The Clerk's publication in a local newspaper, *La Gaceta*, was in addition to mailing notice to Mr. Warner's last known address and posting notice on the case docket. *See* JSOF, # 6-8, 17, 19 and Ex. D; Doc 33-1 No. 77. And thus, this Court need not entertain Mr. Warner's constitutional challenge to Fla. Stat. § 116.21 because the undisputed facts establish that other forms of notice were provided – not only publication.

Federal courts employ a general "policy of strict necessity in disposing of constitutional issues." *Minnick v. Cal. Dept. of Corr.*, 452 U.S. 105, 122 (1981) (quoting *Rescue Army v. Mun. Court*, 331 U.S. 549, 568 (1947)). As the *Rescue Army* decision noted, the courts draw this policy from the general practice of "refus[ing] to render advisory opinions" and "the case and controversy limitation" of Article III of the Constitution. 331 U.S. at 568. To that end, the Supreme Court has urged judicial restraint in cases involving facial challenges to statutes. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008) ("Facial challenges are disfavored … Facial challenges also run contrary to the fundamental principle of judicial

71205288;3

restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'") (internal citation omitted). Here, the precise facts do <u>not</u> require the Court evaluate the constitutionality of publication-only notice because other forms of notice were provided.

Moreover, a party's general obligation for due process purposes is to give notice that is "reasonably calculated" to reach the intended recipient. *Dominguez v. U.S. Atty. Gen.*, 284 F.3d 1258, 1259 (11th Cir. 2002) (finding notice was sufficient if sent to the last address provided by the intended recipient, especially where recipient had an "affirmative duty to provide the government with a correct address").

This Court has noted that in cases involving property in the government's possession, a citizen's actual knowledge of the property being in the government's possession is sufficient notice. *VanHorn v. D.E.A.*, 677 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009) ("VanHorn is entitled to no relief under Section 983(e) because, even if for an unknown reason VanHorn received no notice of the certified mail, VanHorn knew or should have known of the seizure of the currency within sufficient time to file a timely claim."). Here, Mr. Warner knew the funds were in the court registry because he deposited

5

them, and he knew an order was required for disbursement because of the prior court rulings. *See* JSOF # 3 & 12.

Importantly, the Supreme Court previously explained the scope of due process with respect to property in the government's possession. *See City of West Covina v. Perkins*, 525 U.S. 234 (1999). In *Covina*, the adverse action was greater because the governmental entity there actually "seized" property as part of a search warrant. *Id.* at 237. In contrast, here the Clerk did not "seize" anything in this case; Mr. Warner knowingly deposited the funds at issue with it pursuant to Florida Statute § 83.60(2), which requires a tenant facing an eviction to deposit his or her rent money with the court pending the outcome of the eviction action. Regardless, as *Covina* makes clear, once the party is aware of where the property is located, the obligation to uncover the procedure for recover falls on the party – not the government. *Id.* at 240-41.

The Court explained:

[W]hen law enforcement agents seize property pursuant to a warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return. . . . Individualized notice that the officers have taken the property is necessary in a case such as the one before us because the property owner would have no other reasonable means of ascertaining who was responsible for his loss.

No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. **Once the property owner is informed that his**

6

App.111

> **property has been seized, he can turn to these public
> sources to learn about the remedial procedures available
> to him. The city need not take other steps to inform him of
> his options**. . . . [W]e have not concluded that the State must
> provide further information about those procedures.

*Id.* at 240–41 (emphasis added). A holding to the contrary would "conflict[]
with the well-establish practice of the States and the Federal Government,"
rendering rules such as Federal Rule of Criminal Procedure 41(d) along with
"every analogous state statute" unconstitutional. *Id.* at 243–44.

*Covina* is consistent with the general requirement—found in both
Florida and federal law—that litigants (including *pro se* litigants) are
responsible for knowing the law. *U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315
(11th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)
("[I]gnorance is no hidden virtue; a *pro se* [litigant] must follow the rules of
procedure . . . ."); *Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA
1999) (citing *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539–40 (Fla. 3d
DCA 1992)). Mr. Warner knew he had a responsibility to keep the court and
Clerk apprised of his current address, and he knew that disbursement of the
funds required an order. JSOF ¶¶ 7, 12, 14; Doc. 11-3; Fla. R. Civ. P. 1.600.

The undisputed facts establish Mr. Warner had actual knowledge of the
funds on deposit and that the Clerk provided sufficient notice:

1. Mr. Warner knew he was a party to the Eviction Case. JSOF
¶¶ 2–13.

71205288;3

2. Mr. Warner knew he deposited the funds at issue into the court registry in the Eviction Case. JSOF ¶ 4, Ex. A (receipts for the deposits Mr. Warner made).

3. Mr. Warner knew he was required to update his current address, and initially complied by providing the Clerk with the Fremont Address. JSOF ¶¶ 7–8, ex. B; Fla. R. Jud. Admin. 2.515(b); Doc. 11-3, ¶ 2; *see also Hung Thien Ly*, 646 F. 3d at 1315 (noting *pro se* litigants must know and follow the law); *Gladstone*, 729 So. 2d at 1004 (same).

4. Mr. Warner knew the county court required an order to disburse the funds. JSOF ¶ 12, Ex. C; *see also* Fla. R. Civ. P. 1.600 ("Money paid into court under this rule shall be deposited and withdrawn by order of court.").

5. Mr. Warner alleges he negotiated with the landlord-plaintiff in the Eviction Case to receive the money, despite the court finding the landlord-plaintiff was entitled to receive it. *Id.* at ¶¶ 10–13, Ex. C. Clearly, Mr. Warner knew the location of the money and the process for obtaining it. *See City of West Covina*, 452 U.S. at 241; *VanHorn*, 677 F. Supp. 2d at 1309, 1311. *Compare City of West Covina*, 452 U.S. at 236–37 (showing the notice the plaintiff in that case received), *with* JSOF Ex. A (showing the receipts Mr. Warner received).

6. The Clerk sent letters to all the parties notifying them of the unclaimed funds. JSOF ¶ 17, Ex. D. And the Clerk sent the letter to Mr.

71205288;3

Warner at the address he himself provided in the required notice of address change form. *Id.* at ¶¶ 7–8, 17; Doc. 11-3.

7.    The Clerk also published a copy of the letter on the docket in the Eviction Case. Doc. 33-1 No. 77.

8.    After nearly three years of inactivity by Mr. Warner, the Clerk published notice of the unclaimed funds in La Gaceta, which is a paper that fully complies with Florida Statute §§ 50.011 and 116.21. JSOF ¶ 19, ex. E; MSJ IV.A.1 and Ex. 1 thereto.

In short, this Court need not and should not entertain Mr. Warner's constitutional challenge to publication-only notice here because Mr. Warner had actual knowledge of the funds and because the Clerk provided other forms of notice.

### 2.    Florida Statute § 116.21 complies with due process.

Although the Court need not resolve Mr. Warner's challenge, Fla. Stat. § 116.21 is constitutional because it relates solely to "unclaimed monies deposited" with the Clerk of the Court. *See Covina*, 525 U.S. at 241 (holding municipality was not required to take other steps to notify owner of remedial procedures once the owner was informed of where the property was held). Again, unlike in *Covina*, there was no mystery of where the property went because Mr. Warner himself deposited them into the court registry during active litigation. *See* Florida Statute § 83.60(2) (requiring tenants to deposit

unpaid rent amounts during eviction actions, as in the Eviction Case). Mr. Warner knowingly deposited the funds at issue; he knew they were there. JSOF ex. A (showing the receipts Mr. Warner received, which were also published to the docket). Again, Florida Statute § 116.21 deals with parties who are fully aware of where funds are and the steps needed to claim them. *See* 525 U.S. at 241. At *any* point during the three-year gap from October 2018 (when the parties had their hearing at which the Hillsborough court required a proposed order to disburse the funds) to September 2021 (when the funds were forfeited), Mr. Warner could have submitted a claim. JSOF ¶¶ 11, 20. His failure to do so does not justify a broad attack on an entire statutory framework that is constitutional both facially and as-applied.

### 3.   The Clerk was not required to search for Mr. Warner.

Mr. Warner implies the Clerk was required to search for, and possibly guess, at alternative addresses for him. *See* PMSJ, p. 13 (section VII(3)). Mr. Warner does not provide any factual or legal basis for his implied contention that the Clerk for his county-court Eviction Case, would have access to or a basis to rely on information associated with his driver's license, the Florida state-wide e-portal system (which is separate from the Hillsborough County Clerk's system, *see* Doc. 31-2, ¶¶ 4-5), or to confirm he was the same Mr. Warner named in other litigation. Regardless, even if the Clerk had been able to use any of these other sources to find Mr. Warner, there is no requirement

71205288;3

that the Clerk do so. *See Covina*, 525 U.S. at 241 (holding municipality was not required to take other steps). And further, Mr. Warner's claim the Clerk needed to do more than *Covina* requires fails here because the filings in the Eviction Case indicated the owner of the property was Mr. Warner's landlord, and not Mr. Warner. *See* JSOF ¶ 12 and Ex. C (reflecting court's ruling that funds would be disbursed to landlord).

### 4. The Clerk used the last address Mr. Warner provided to the Clerk for this purpose.

There is no dispute the Clerk mailed notice to Mr. Warner at the address he last provided to the Clerk in his notice of change of address filing. *See* JSOF ¶¶ 6-7, 17. The Clerk also posted the same notice to the docket publicly available on the internet. Doc. 33-1 No. 77.

Unable to explain why he failed to take any action over the three-year period the Eviction Case sat idle and unable to excuse his failure to file a second notice of change of address form as required, Mr. Warner argues the Clerk should have contacted him some other way, including by mailing notice to his mother. Doc. 33, at 12–13. Mr. Warner does not provide any legal support for sending notice to his mother's address or to impose a duty on the Clerk to use addresses employed by other entities, like the City of Tampa (which is obviously separate from the Clerk of the Hillsborough County court), especially where Mr. Warner had provided the Clerk with a notice of

change of address form identifying where notice should be sent. JSOF ¶¶ 7–8, ex. B; Doc. 11-3. Mr. Warner cites to a supposed list of other cases in which he was involved, but never rebuts the undisputed fact that notice was provided on the docket and to the address he himself provided in the Eviction Case. JSOF ¶¶ 7–8, Ex. B.

Mr. Warner's complaint alleging insufficient notice and lack of due process fails as a matter of law because: (1) the Clerk sent notice to the last address Mr. Warner filed for the Clerk to use; (2) the Clerk published notice on the docket in the Eviction Case to which Mr. Warner was a party; and (3) the Clerk published notice in *La Gaceta*, a local newspaper meeting the requirements of Florida law for legal publications.

### B.   Mr. Warner's arguments with respect to his Count II: Takings Clause claim fail as a matter of law because Mr. Warner did not experience a taking.

Although Mr. Warner attempts to confuse the issues by offering a purported definition of "escheatment," it does not change the fact that he cannot demonstrate the Takings Clause applies in this case. MPSJ at 1–2, 14–15.[1] The Takings Clause *only* applies when the government exercises its power of eminent domain. *Bennis v. Mich.*, 516 U.S. 442, 452 (1996) ("The

---

[1]   Mr. Warner appears specifically to confuse escheatment, as he cites to a case (*Choice Plus, LLC v. Department of Financial Services*, 244 So. 3d 343) that involved a specific statutory scheme under Chapter 732 of the Florida Statutes regarding unclaimed property in probate estates.  That case is irrelevant to this situation, which involves a party depositing money with the court, then failing to claim it.

12

government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."). In contrast, a statutory forfeiture of funds is *not* a taking. *U.S. v. Morales*, 36 F. Supp. 3d 1276, 1293–94 (M.D. Fla. 2014) (concluding a claim alleging a violation of the Takings Clause failed because property was forfeited pursuant to statute). Holding otherwise would effectively forbid *all* governmental forfeitures—it would essentially declare all movements of property to the government as "takings." In other words, if a person forfeited $2,000 for any reason, the government would then have to pay that person $2,000 as "compensation" for the forfeiture. This position is absurd and unsupported by any of Mr. Warner's cited cases.

### C.   Mr. Warner's arguments with respect to his Count V: First Amendment Retaliation claim fail as a matter of law because he fails to establish the required elements.

Mr. Warner has the *affirmative* burden of demonstrating he would be entitled to a directed verdict on each element of his First Amendment retaliation claim. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993). He fails to do so. *See* MPSJ, at 15–18. A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in constitutionally protected speech, (2) the plaintiff suffered an adverse action, and (3) a causal relationship exists between the protected speech and the

adverse action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Mr. Warner appears to confuse a retaliatory prosecution with the undisputed facts in this case. Here, the Clerk, through its undersigned counsel, sent Mr. Warner a letter responding to his civil theft demand letter. JSOF Exs. I-J. Mr. Warner's civil theft demand accused the Clerk of "embezzlement" and "theft" and threatened to sue if he was not paid more than he had deposited with the Clerk. *Id.* In response, the Clerk through the counsel (the same counsel Mr. Warner emailed with his initial demand letter), explained the factual and legal deficiencies in Mr. Warner's threatened actions. *Id.* The Clerk did <u>not</u> threaten legal prosecution or even to file a counterclaim, but merely cautioned Mr. Warner that if he brought a civil theft claim, the Clerk would be entitled to seek its attorney's fees and costs for defending such a claim. *Id.* The Clerk also cautioned that Mr. Warner's unfounded accusations "may" be interpreted as an unlawful act. *Id.* But the Clerk's response letter never threatened to pursue any prosecution – even if appropriate – against Mr. Warner. *Id.*

Mr. Warner argues "[a] person of ordinary firmness[] would interpret [the Clerk's response] as a veiled threat for criminal prosecution if *Plaintiff* followed through with his legal demand and initiated civil legal proceedings against *Defendant*." MPSJ, at 15. First, a person of ordinary firmness would

understand that the Clerk's office is not a prosecutor and does not bring criminal actions. Second, a person of ordinary firmness would not interpret the Clerk's tame reminder about the importance of phrasing as a threat, especially given the complete language of the letter. JSOF Ex. J ("We trust it was not your intent to commit extortion."). Third, Mr. Warner fails to demonstrate that he in fact *did not* commit extortion by attempting to shake down the Clerk by accusing it of criminal conduct. Fla. Stat. § 836.05 (explaining that a person commits extortion by maliciously threatening "to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatsoever . . . ."). Fourth, Mr. Warner *in fact brought this lawsuit, thus proving he was never actually felt threatened.*

Additionally, merely threatening counterclaims (which is more "adverse" than the Clerk's statements in this case) is not sufficient to constitute adverse action for purposes of retaliation. *See Smith v. Haynes*, 940 F.3d 635, 648 (11th Cir. 2019) (holding the defendant's discussion of possible counterclaims did not meet "the governing test for what constitutes adverse action"). Similarly, the Supreme Court "has condoned limiting retaliation liability when the challenged government action, whether conduct or speech, is so pervasive, mundane, and universal in government operations that allowing a plaintiff to proceed on his retaliation claim would 'plant the seed of a constitutional case' in 'virtually every' interchange." *The Baltimore*

*Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 148–49 (1983)). Logically, the law must permit a government entity to engage in the "mundane" action of responding to a demand letter served upon it. *See also Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) ("it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation …"). Mr. Warner, having failed to timely request disbursement of the funds, cannot now manufacture a claim by feigning distress over receiving a mundane response letter. Accordingly, the Court should deny Mr. Warner's PMSJ with respect to his First Amendment Retaliation claim.

### D. Mr. Warner's arguments with respect to the Clerk's defenses are unpersuasive and irrelevant.

As set forth above, the Court should deny Mr. Warner's PMSJ, and thus, the Court need not address the Clerk's affirmative defenses. Independently, Mr. Warner's responses are legally insufficient to satisfy his burden. *See Fitzpatrick*, 2 F.3d at 1115 ("the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party") (internal citation omitted). To not already addressed above, the Clerk notes the following in response to Mr. Warner's attacks:

71205288;3

**1 and 3.      Compliance with Florida Statute § 116.21.** Mr. Warner argues federal preemption overrides section 116.21 and that La Gaceta is not compliant with Florida law. MPSJ, at 19–20, 24-25. The Clerk explained above that it complied with all required due process. *See* § IV.A, *infra*. And prior Florida cases and the record establish that La Gaceta satisfies the requirements of Florida law. *See* Doc. 37-1, Clerk's MSJ Ex. 1, *BAC Home Loans Servicing v. Branad*, No. 2010-CA-9403 (Sarasota Circuit Court, Nov. 6, 2018) (Ordering holding "*La Gaceta* meets all statutory requirements for publishing legal notices in Sarasota County").

In attacking La Gaceta, Mr. Warner relies on a post-publication statute – the 2022 amendment to Florida Statute § 50.011. Doc. 33, at 20 (admitting the amendment was *after* the Clerk satisfied its duty to publish notice); *Smiley v. State*, 966 So. 2d 330, 336 (Fla. 2007) (noting that statutes affecting duties are presumed to apply only *prospectively*); *Thayer v. State*, 335 So. 2d 815, 817 (Fla. 1976) (emphasis added) ("A statute operates prospectively unless the intent that it operate retrospectively is *clearly expressed*."). Regardless of the retroactivity point, Mr. Warner overlooks that La Gaceta *continues to satisfy the current version of the law*. Section 50.011 does not require a paper to have an audience of at least 10% of households; it requires a paper to either satisfy that requirement *or* be entered as periodical class mail in the county. Doc. 33-18, at 18:1–19:19 (showing La Gaceta has the

periodicals license, has at least twenty-five percent of its wording in English, and is available to the public generally while discussing topics relevant to the Tampa community); Doc. 33-19, at 85:18–88:25 (discussing La Gaceta's qualifications and interest to the general public); Doc. 37-1 (showing a court's finding that La Gaceta complies with the law). And in any event, its notices are available online, satisfying subsection 50.011(2) (which alleviates any requirement to comply with subsection (1), though La Gaceta does so). Doc. 33-18, at 18:1–19:19.

**2, 7-9, 13-14.     Delay, Negligence, Inaction and Condition Precedent.** Mr. Warner failed to update his address in the Eviction Case when he moved away from the Freemont Address, despite having filed a change of address notice earlier in that same case. Mr. Warner, having deposited funds in the Eviction Case, failed to timely move the Court for an order requiring disbursement of the funds to him. Because of his inaction and failure to respond, the Clerk turned the funds over to the fine and forfeiture fund more than three years after they were first deposited. As a result of Mr. Warner's inaction and failure to make the appropriate filings in the Eviction Case, the Clerk has been prejudiced by the loss of the funds Mr. Warner now demands from the Clerk. On these undisputed facts, *see* JSOF. ¶¶ 3, 7–8, 10–14, Exs. A–C, the doctrines of Laches, Waiver, Assumption of Risk, and condition precedent all operate to defeat his claims.

71205288;3

Contrary to Mr. Warner's arguments, federal law in fact *does* require that very compliance. *U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)) ("[I]gnorance is no hidden virtue; a *pro se* [litigant] must follow the rules of procedure . . . ."). And Mr. Warner's reliance on his filings with the Florida e-portal do not impact the analysis because the Clerk has nothing to do with Florida's state-run e-file system; it uses systems under its actual control. Doc. 37-2, ¶¶ 4-5.

**5. Litigation Privilege.** The litigation privilege bars Mr. Warner's defamation claim. It also provides a barrier to Mr. Warner's First Amendment Retaliation claim, because Mr. Warner must establish a rare circumstance where the retaliation was especially egregious given that it took place in the litigation context of the exchange of a demand letter and response. *Steffes*, 144 F.3d at 1075 ("it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation ...").

## V.   CONCLUSION

The Clerk maintains this Court should enter judgment in its favor, as described in its motion for judgment on the pleadings (Doc. 21) and motion for summary judgment (Doc. 37). Regardless, this Court should deny Mr. Warner's MPSJ because he cannot establish entitlement to judgment as a matter of law on the undisputed facts.

71205288;3

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*

Counsel for Defendant

71205288;3

App.125

# Doc. 42

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BLAKE WARNER,

     Plaintiff,

v.                                                    Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY
CLERK OF COURTS,

     Defendant.

_____/

**DEFENDANT'S REPLY IN SUPPORT OF**
**<u>SUMMARY JUDGMENT</u>**

Defendant Hillsborough County Clerk of Court (the "Clerk") replies to

Mr. Warner's Response (Doc. 38) (the "Response") in further support of its

Motion for Summary Judgment (Doc. 37) (the "Motion").

**I.**    **Mr. Warner's Response underscores the Clerk's point: ignorance**
      **of the law is no excuse for Mr. Warner's inaction.**

In its Motion, the Clerk explains Mr. Warner's inaction and failure to

comply with the applicable rules led to the forfeiture he challenges. *See* Doc.

37, at 5-6, 9-14.

Mr. Warner's Response implies that self-professed ignorance helps him

here. Doc. 38, at 6 ("Mr. Warner knew nothing of any duty to continuously file

address change notices on the docket . . . ."); Doc. 38-3 ¶¶ 4–8 ("[Mr. Warner]

never read any of the local court rules or administrative orders before or during the pendency of [the underlying eviction lawsuit].”). It does not.

Ignorance of the law is no excuse. *See* Doc. 37, at 10 (citing *Hollis v. W. Academy Charter, Inc.*, 782 F. App'x 951, 954 (11th Cir. 2019) for the proposition that pro se litigants must comply with procedural rules). There is no due process violation here: federal courts and Florida courts alike have recognized that *pro se* litigants are responsible for knowing the law. *U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011); *Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999).

Mr. Warner made the decision to proceed as a *pro se* litigant in the underlying eviction action. By doing so, he undertook the responsibility to learn and comply with the rules. *See, e.g.*, Fla. Stat. § 454.18 (noting litigants may appear *pro se*, but in doing so they subject themselves “to the lawful rules and discipline of” the courts in which they appear). That included the rule to keep the court apprised of his current address, which could have avoided this entire situation. Doc. 11-3 ¶ 2 (requiring *pro se* litigants to file notices of address changes). Accepting Mr. Warner's position would only encourage ignorance and undermine the entire point of having rules in the first place.

71376318;2

App.128

## II.  Mr. Warner's suggestion that the Clerk should operate as a bank is unreasonable.

This Court should dismiss Count III because the Clerk complied with the requirements of Florida law and did not breach any duty. *See* Motion, pp. 15-18. In Response, Mr. Warner tries to equate the Clerk with a bank and states:

> [Mr. Warner] would love to be "burdened" with being paid approximately 3 percent upfront to hold the funds on top of collecting interest on the principal indefinitely with the possibility that the owner may never show up to claim the funds.[1] I would gladly hold any funds anyone wants to give me for as long as they want. To pretend that [the Clerk was] harmed or burdened by this is nonsensical.

*See* Response, pp. 8-9.

In other words, Mr. Warner contends the Clerk has an obligation to operate as his bank forever. Mr. Warner's position is unsupported in any case law, statute, or other source of authority, which is presumably why the Response is devoid of any authority here. At most, the Response cites generally to a docket. *See* Response, p.9 (citing *Maron v. Patronis*, No. 4:22-cv-00255, filed in the Northern District in July 2022). No substantive orders have been entered in *Maron*, but a motion to dismiss (addressing Chapter 717 of the Florida Statutes and not the Section 116.21 at issue here) remains pending.

---

[1]   It is unclear where Mr. Warner gets "3 percent," as the Clerk actually charged less than that per Florida Statute § 28.24(11).

Mr. Warner also objects to the Clerk's characterization of his multi-year inaction that led to the forfeiture in this case. *See* Doc. 38, at 5–6. But it is tough to imagine a better word for what Mr. Warner did (or did not do). He knew where the money was, he explicitly negotiated to receive the money, and he then proceeded to do nothing for years. Doc. 37, at 9–10 (describing the still-unexplained delay in Mr. Warner's efforts to claim the funds he deposited). Mr. Warner's efforts to distinguish the cited the *City of West Covina v. Perkins*, 119 S.Ct. 678, 681–82, 525 U.S. 234, 241 (U.S. 1999) case are unpersuasive. *See* Response, p.5 (suggesting this case is different because "no evidence suggests that Mr. Warner knew . . . his funds were at risk in any way."). Again, ignorance of the law is no excuse. *See supra* Section I (noting *pro se* litigants cannot claim ignorance of the law as an excuse).

In sum, there is no reason to treat the Clerk as a bank. Rather, the Clerk is a governmental entity in Florida responsible for filings in the various Hillsborough County courts. Mr. Warner's efforts to distract from his own failures are unconvincing, and the Clerk requests judgment in its favor.

### III.   Mr. Warner's arguments underscore the importance of parties protecting their own interests by following the relevant rules.

Mr. Warner asserts several arguments in response to the undisputed evidence that his own inaction led to the forfeiture in this case. First, he suggests the Hillsborough County court's local rule requiring litigants to file

71376318;2

App.130

notices of address changes is nothing but "an obscure court rule" that somehow "conflicts with federal minimum due process . . . ." Doc. 38, at 6. Yet again, Mr. Warner makes a futile plea for the court to accept self-professed ignorance of the law as an excuse. *But see supra* Section I (noting that ignorance of the law is not an excuse in state or federal courts for a failure to comply with local rules); *Hollis*, 782 F. App'x at 954 ("[P]ro se litigants must nonetheless comply with procedural rules.").

Additionally, this argument ignores the case law recognizing that where a law requires a party to maintain up-to-date contact information, those laws themselves are "notice" to the party and any failures to do so are in turn attributable to the party. *See, e.g.*, *Dominguez v. U.S. Atty. Gen.*, 284 F.3d 1258, 1260 (11th Cir. 2002) (quoting *U.S. v. Estrada-Trochez*, 66 F.3d 733, 736 (5th Cir. 1995)) ("[U]ltimate fault lies with the Appellant for [her] failure to comply with a [change of address notification] law that is essential to the administration of the INS."); *McGuire v. City of N.Y.*, 301 F. Supp. 2d 333, 336 (S.D.N.Y. 2004) (holding that mailings to a last known address complied with due process where the law placed the burden on the individual to notify the government of any address changes); *see also Estrada-Trochez*, 66 F.3d at 736 (rejecting a party's argument that the government should have notified him through various family members, given that the government sent mail notice to the party's last known address). There is no realistic limiting factor to Mr.

71376318;2

Warner's position; it is essentially an argument that *pro se* litigants do not need to comply with local rules they do not bother reading. The administrative orders requiring notices of address changes are clear local rules, and Mr. Warner's attempt to denigrate them as "obscure" misses the point that he was still under an obligation to comply with them. *See* Doc. 11-3 ¶ 2.

Second, Mr. Warner places substantial emphasis on whether he in fact had the right to claim the funds. Doc. 38, at 2–3. As a starting point, the Clerk does not dispute for these purposes the idea that Mr. Warner had some off-the-record arrangement with the landlord that he could claim the funds instead of the landlord. But the Clerk is not able to divine these types of behind-the-scenes facts; it relies on parties to keep it apprised, and what Mr. Warner *cannot* deny is that everything in the record *does* in fact make it appear as though the landlord was the party with the right to seek the funds. Doc. 36 ¶ 12; Doc. 36-3. The absence of a final order caused the Clerk to attempt to contact *everyone* involved in the underlying eviction action. Doc. 36 ¶¶ 17, 19; Doc. 36-4. In other words, the Clerk was sending a clear message to the parties: "We do not know where this money should go, and one of you needs to claim it." Mr. Warner's failure to do so is entirely on him.

The law is clear: A party's failure to take steps to protect him- or herself will not be rewarded. When a party is aware that the government is in possession of funds he or she wishes to claim, it is that party's obligation to in

fact claim them. *Covina*, 525 U.S. at 241 ("Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options."). Mr. Warner's attempt through this lawsuit is to point the finger at everyone other than himself, when in fact he had multiple years to take *any* action to protect his claimed rights.

## IV.   Mr. Warner fails to offer any support for his takings claim.

The takings claim does not fit in these facts, because no constitutional "taking" ever occurred. *See* Motion, pp. 14–15. Rather than addressing this point and offering *any* source of authority suggesting a taking occurred, Mr. Warner instead tries to distinguish *one* of the Clerk's cited cases. *See* Response, p. 7 (trying, unsuccessfully, to distinguish *Bennis v. Michigan*). Mr. Warner suggests *Bennis* is distinguishable "because it was not about adequate notice or opportunity to be heard . . . ." *Id.* Mr. Warner's argument merely conflates his takings claim with his due process claim. Additionally, the Response fails to address any of the other cases holding there needs to be an eminent domain action for the Takings Clause to apply. *See id.*; Motion, pp. 14-15 (discussing several cases including *U.S. v. Morales*, 36 F. Supp. 3d 1276 (M.D. Fla. 2014)). Accordingly, summary judgment in the Clerk's favor remains appropriate on this count.

## V.    Mr. Warner mistakes the importance of Florida Statute § 116.21 operating as a *state law* defense with respect to his fiduciary duty claim.

Mr. Warner again conflates his counts when he suggests the constitutionality of Florida Statute § 116.21 has any bearing on whether that state-created defense applies to the state-created claim of breach of fiduciary duty. Breach of fiduciary duty claims do not flow from the federal Constitution, and Florida is fully capable of offering any defenses to those claims that it might like. And federal courts considering state-law claims apply the substantive law of the forum state (Florida here) when determining those claims. *See, e.g.*, *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (affirming entry of summary judgment against breach of fiduciary duty claim).

## VI.    Mr. Warner's abandonment of his defamation claim warrants judgment in the Clerk's favor.

Although Mr. Warner's abandonment of his defamation claim in his summary judgment response does not technically comply with Federal Rule of Civil Procedure 41, his failure to address the Clerk's points does result in judgment in the Clerk's favor. Doc. 38, at 9; *see also* Doc. 26, at 7 (citing *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984)) ("Failure to oppose any motion for summary judgment may result in the entry of a judgment for the movant without further proceedings.").

71376318;2

## VII.  Mr. Warner fails to rebut the Clerk's arguments regarding his retaliation claim.

Finally, Mr. Warner does not address the vast majority of the Clerk's points regarding his supposed First Amendment retaliation claim. Rather than offering any positions in *support* of why his claim allegedly has merit, he instead offers only two brief paragraphs with no supporting authorities. Doc. 38, at 9. He does not address any of the numerous cases noting that in-litigation communications do not give rise to retaliation liability. *See, e.g.*, *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 148–49 (1983)); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998); *Tzoc v. M.A.X. Trailer Sales & Rental, Inc.*, No. 13-cv-23859, 2015 WL 2374594, at *14 (S.D. Fla. May 18, 2015). And he fails to address these points or offer any cases suggesting the Clerk did anything even remotely close to "retaliation" in this case because he cannot—nothing supports his theory. Rather, his theory is just a futile effort to create damages in a manufactured lawsuit. *See generally* Doc. 36. Enough is enough, and the Clerk requests judgment in its favor.

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**

Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant

71376318;2

# Doc. 43

# United States District Court

## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER

v.

HILLSBOROUGH COUNTY
CLERK OF COURTS

Case Number 8:22-CV-1977

## PLAINTIFF'S REPLY TO
## DEFENDANT'S RESPONSE TO PLAINTIFF'S VERIFIED
## PARTIAL MOTION FOR SUMMARY JUDGMENT

## CONSTITUTIONAL CHALLENGE

The Clerk mischaracterizes the challenge to F.S. 116.21 as a pure facial challenge[1], when it is both as an applied and facial challenge[2]

The Clerk avoids the core "last known address" argument by rigidly arguing that under federal due process, the "last known address' can *only* be the physical mailing address filed with the clerk. Mr. Warner's position is that:

---

[1] "The thrust of Mr. Warner's due process argument is his suggestion that the entirety of Florida Statute § 116.21 is unconstitutional in all cases."

[2] *see* MPSJ Doc. 33 ("XI Conclusion") "Declaration that Fla. Stat. § 116.21 is unconstitutional as applied and/or on it's face;"

App.138

1. the "last known address" does not have to be a physical mailing address, but could be an electronic address such as e-file or email, phone number/text message, or even another more recent physical address available to the Clerk; and

2. the "last known address" is the most recent address known to the Clerk, which was *not* the physical address filed with the *closed* case. And any attempt to use state law (local court rules) to lower federal minimum due process requirements by limiting or specifying which "addresses" the Clerk can use for notification is preempted by federal law.

   Especially when those very same court rules the Clerk cites explicitly authorize the Clerk to serve notices via e-mail and the clerk opted not to do so. The Clerk even had a policy (that they violated here) at the time to to serve documents to litigants via e-file[3]

## Fla. Stat. § 50.011 Ten Percent Abandoned

Mr. Warner agrees with the Clerk that the 10 percent distribution requirement in Fla. Stat. § 50.011 is a disjunctive "or", and that La Gaceta satisfies § 50.011 for summary judgment purposes by being enrolled in USPS periodical mail[4]. Therefore, the Court need not address the retroactive application of § 50.011. Mr. Warner still maintains that La Gaceta's distribution to less than 0.2% of the Hillsborough County population does not satisfy federal minimum due process.

---

[3]*see* attached Exhibit B: "Effective in April 2019, the Clerk's Office will begin electronically serving various court documents to Attorneys of Record and litigants registered for e-service through the Florida Court E-Filing Portal for all civil court cases.". https://www.hillsclerk.com/Court-Services/Attorney-and-Pro-Se-Legal-Resources/Pro-Se

[4]Though Defendant cited the wrong periodical mail document.

# CROSS SUMMARY JUDGMENT PROCEDURE

The Clerk contends that "Mr. Warner does not address the vast majority of the Clerk's points regarding his supposed First Amendment retaliation claim" (Doc. 42). Mr. Warner did not specifically address all of the Clerk's points because he found the argument unpersuasive, cited non-binding authorities, and Mr. Warner had adequately briefed the matter in his PMSJ (Doc. 33). Mr. Warner declined to re-argue the same points six times[5]

Mr. Warner contends that it was improper for the Clerk to file a separate Motion for Summary Judgment that sought judgment on the exact same issues sought in Plaintiff's Verified Motion for Partial Summary Judgment. This created a situation where the parties were forced to argue the exact same issues multiple times, needlessly duplicating the litigation. Rather the Clerk should have sought summary judgment on those issues in it's response to Plaintiff's PMSJ which would have limited the pages (by default) to 55 (25 + 20 + 10). By duplicating the litigation, Defendant has expanded the potential pages to at least 110 pages. Mr. Warner does not believe that repeating his same arguments will make them anymore persuasive to the Court, and therefore he is standing on arguments he already made once in the cross-motions. If this is not the case, then Mr. Warner seeks leave to file supplemental responses to his Response Doc. 38 and this reply to file duplicative arguments.

---

[5]Once in the Defendant's AMJOP, once in the response, once in Plaintiff's PMSJ and once in the response, once in Defendant's MSJ and once in the response.

_7-20-2023_

Date

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM

# Doc. 50

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BLAKE ANDREW WARNER,**

     **Plaintiff,**

v.                             **Case No: 8:22-cv-01977-MSS-SPF**

**HILLSBOROUGH COUNTY CLERK
OF COURTS,**

     **Defendant.**

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Verified Motion for Partial Summary Judgment, (Dkt. 33), Defendant's Motion for Summary Judgment, (Dkt. 37), and the Parties' Joint Statement of Undisputed Facts. (Dkt. 36) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

On August 29, 2022, Plaintiff Blake Warner initiated this action against Defendant Hillsborough County Clerk of Courts. (Dkt. 1) In the Complaint, Plaintiff alleges that Defendant seized Plaintiff's property without due process, in violation of Florida Statutes, the Due Process Clause of the Fourteenth Amendment, and the Takings Clause. (Id. at ¶¶ 45, 48) In the alternative, Plaintiff claims that §§ 116.21 and 50.031, Fla. Stat. (2023), are unconstitutional. (Id. at 21) Plaintiff also asserts claims of defamation and breach of fiduciary duty against Defendant. (Id. at ¶¶ 51, 61)

Finally, Plaintiff asserts that Defendant threatened Plaintiff with criminal prosecution in its response to his demand letter and that this threat constitutes retaliation in violation of the First Amendment. (Id. at ¶ 66)

Plaintiff seeks a declaratory judgment that Defendant took Plaintiff's property without due process and in violation of the Takings Clause; a declaratory judgment that Fla. Stat. §§ 116.21 and 50.031 are unconstitutional; damages in the amount of the property allegedly taken, as well as nominal and punitive damages; and an award of attorney's fees, costs, and expenses. Plaintiff moved for summary judgment on Counts I, II, and V of the Complaint, which refer to Plaintiff's due process, takings, and First Amendment claims. (Dkt. 33) Defendant moved for summary judgment on all of Plaintiff's claims. (Dkt. 37)

The following facts are undisputed in this record for purposes of resolving the motions. Plaintiff was the defendant in an eviction action in Hillsborough County Court, Boutique Apartments LLC v. Warner, Case No. 18-cc-22377. (Dkt. 36 at ¶ 2) As a result of the litigation, Plaintiff deposited $3,600.00 into the court registry pursuant to Fla. Stat. § 83.60. (Id. at ¶ 3)

When the Boutique Apartments litigation began, Plaintiff's address, which appeared on his case filings, was 3012 W. DeLeon St., Apt. 23, Tampa, Florida. (Id. at ¶ 5) On June 22, 2018, Plaintiff moved to 502 S. Fremont Ave., Apt. 1322, Tampa, Florida. (Id. at ¶ 6) Accordingly, Plaintiff filed a notice of change of address in the Boutique Apartments litigation. (Id. at ¶ 7) Plaintiff never provided any further update of his address with the court in the Boutique Apartments litigation, (Id. at ¶ 8), even

2

though he moved to 3002 W. Cleveland St., Tampa, Florida, on May 17, 2019. (Dkt. 33-8 at ¶ 9)

On June 23, 2018, Plaintiff formally abandoned the apartment that was the subject of the <u>Boutique Apartments</u> litigation. (Dkt. 36 at ¶ 9) The Landlord, who was the plaintiff in the <u>Boutique Apartments</u> action, moved the county court to release the registry funds to it. (<u>Id.</u> at ¶ 10) At a hearing on October 9, 2018, the county court directed the landlord to submit a proposed order disbursing the registry funds to the landlord. (<u>Id.</u> at ¶ 12) After this hearing, the landlord and Plaintiff entered into an oral agreement. (<u>Id.</u> at ¶ 13) According to this agreement, Plaintiff would abandon counterclaims he had filed in the <u>Boutique Apartments</u> action, and the landlord would allow Plaintiff to claim the registry funds. (<u>Id.</u>) Neither the landlord nor Plaintiff ever filed any proposed orders seeking disbursement of the court registry funds. (<u>Id.</u> at ¶ 14) The county court never entered an order requiring the funds to be disbursed. (<u>Id.</u>)

Plaintiff maintained an e-file account on myfloridaaccess.com since April 28, 2018. (<u>Id.</u> at ¶ 21) This account contained an email address, a phone number, and Plaintiff's mother's mailing address. (<u>Id.</u> at ¶ 21, 22) Plaintiff received mail at his mother's address from 2017 to 2022. (<u>Id.</u> at ¶ 22) Defendant never electronically served Plaintiff at his e-mail address with any items during the <u>Boutique Apartments</u> litigation or thereafter. (<u>Id.</u> at ¶ 18) From February 24, 2020, to April 10, 2020, the court received thirteen returned mail notices for notices that it had mailed to Plaintiff at 502 S. Fremont Ave. (<u>Id.</u> at ¶ 15)

3

On June 12, 2020, the court dismissed the <u>Boutique Apartments</u> litigation for lack of prosecution. (<u>Id.</u> at ¶ 16) Eight months later, on February 18, 2021, Defendant mailed letters to the landlord and Plaintiff to notify them that funds remained in the court registry and that these funds would escheat to the state if they were not claimed. (<u>Id.</u> at ¶ 17) Defendant mailed this letter to 502 S. Fremont Ave. (<u>Id.</u>)

On July 9, 2021, <u>La Gaceta</u>, a newspaper, published a list of unclaimed court funds. (<u>Id.</u> at ¶ 19) This publication included the following entry: "BOUTIQUE APARTMENTS LLC, BROOKLYN FLATS VS WARNER, BLAKE 18-CC022377 05/24/2018 *717.113 $3,600." (Dkt. 36-5 at 23)

On September 1, 2021, after no response was received to its notices, Defendant deposited the funds from the <u>Boutique Apartments</u> litigation into the fine and forfeiture fund for public use. (Dkt. 36 at ¶ 20)

The record does not reflect how plaintiff learned of the forfeiture, but on July 29, 2022, Plaintiff emailed the attorneys for Defendant a written demand pursuant to § 772.11 of the Florida Statutes. (Dkt. 36-9) Section 772.11 creates a civil remedy for criminal theft. § 772.11, Fla. Stat. (2023). On August 26, 2022, Defendant's attorney responded. (Dkt. 36-10) In this response, Defendant's attorney stated, "[T]hreatening to accuse another of any crime or offense, including theft, with the intent to obtain money may constitute the crime of extortion. <u>See</u> Fla. Stat. § 836.05[.]" (<u>Id.</u>). Defendant's attorney quoted the statute's language in its entirety, then stated, "We trust it was not your intent to commit extortion." (<u>Id.</u>)

4

On August, 29, 2022, Plaintiff initiated this action under 42 U.S.C. § 1983 on the grounds that Defendant took his property without due process of law in violation of the Fourteenth Amendment and the Takings Clause. Additionally, Plaintiff alleges Defendant threatened to prosecute him for extortion and this threat constitutes retaliation in violation of the First Amendment. He also asserts state law claims of defamation and breach of fiduciary duty against Defendant.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.  DISCUSSION

### a.  Count I – Due Process Clause: Adequate Notice and Hearing

Plaintiff contends Defendant took his property without due process of law in violation of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment requires that a state provide notice and an opportunity for hearing before depriving a citizen of property. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). "Due process does not require that a property owner receive actual notice before the government may take his property." Jones v. Flowers, 547 U.S. 220, 226 (2006). Instead, notice must be "reasonably calculated, under all the circumstances," to apprise persons affected by an action and to afford them an opportunity to present their objections. Mullane, 339 U.S. at 314.

6

### i. Mailed Notice

This Court declines to hold that notice is sufficient when the government mails notice to a person at an address from which the government's previous mailings to that person were returned to the government undelivered. Here, Defendant received thirteen returned mail notices for notices that it had mailed to Plaintiff at 502 S. Fremont Ave. between February 24, 2020, and April 10, 2020. (Dkt. 36 at ¶ 15) Mailing a letter to Plaintiff at this address in 2021 was not reasonably calculated to apprise him of the registry funds' forfeiture because Defendant had reason to know Plaintiff no longer lived there. Defendant's mailed notice, under these circumstances, did not satisfy the requirements of due process.

Plaintiff argues that Defendant had a duty to search for an accurate address for Plaintiff. For example, Plaintiff notes that Defendant could have searched Plaintiff's name on its own website and would have discovered at least two actions to which Plaintiff was a party. (Dkt. 33 at 9) The address Plaintiff listed on these actions was his mother's address at which he received mail from 2017 to 2022. (Id.) The Supreme Court has dismissed these arguments in a similar case. In Jones v. Flowers, the plaintiff asserted that the State "should have searched for his new address in the . . . phonebook and other government records such as income tax rolls." 547 U.S. at 235–36. The Court concluded, "An open-ended search for a new address . . . imposes burdens on the State significantly greater than [other] relatively easy options[.]" Id. at 236 (noting that when the government's certified mail was returned "unclaimed," the government could have sent the notice to the same address via regular mail or posted the notice on

7

the front door at the same address). Accordingly, the Court dismisses Plaintiff's arguments that Defendant could have found his address by, for example, searching the clerk's website for other actions to which Plaintiff was a party. Nevertheless, Defendant fails to show that it is entitled to summary judgment on the issue of whether its mailed notice to Plaintiff satisfied the requirements of due process.

### ii.  Notice by Publication: <u>La Gaceta</u>

Notice by publication is appropriate "where it is not reasonably possible or practicable to give more adequate warning." <u>Mullane</u>, 339 U.S. at 317–18 ("[W]e overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose . . . addresses are unknown to the trustee."). Sections 50.011(1) and 50.031, Florida Statutes (2023), list the current requirements for the publication of legal notices under Florida law. The version of § 50.011 effective when Defendant published the notice at issue in <u>La Gaceta</u> had different requirements than the current version. In 2021, these provisions stated that when a statute directs or permits publication of notice in a newspaper "in lieu of process," the newspaper must be published at least once a week, contain at least 25% of its words in English, hold a periodical permit from the post office within the relevant county, contain information of a public character or interest to the county residents, and have been in existence for at least one year prior to publishing legal notices. §§ 50.011 and 50.031, Fla. Stat. (effective June 29, 1999, to Dec. 31, 2021).

In at least one case in this district, a judge confronted this issue and held publication in <u>La Gaceta</u> is constitutionally sufficient. <u>See Davis v. Hillsborough</u>

Cnty., Case No. 8:20-cv-1067, 2020 WL 7041762, at *5 (M.D. Fla. Dec. 1, 2020).

Additionally, La Gaceta satisfied each of the statutory requirements in 2021. The

exemplars the Parties provide suggest La Gaceta was published at least once a week

in 2021.[1] (Dkt. 36-7) More than 25% of the exemplar La Gaceta publications the

Parties provided was in English. (Dkt. 36-5) The exemplars the Parties provided

indicate that La Gaceta held a periodical permit from the United States Postal Service

in Hillsborough County.[2] (Dkt. 36-7) It published information of a public character or

interest to Hillsborough County residents, such as solicitations from the Port of Tampa

Bay for contractors' bids to maintain the Port's facilities, or a story about "Champa

Bay" selling out the Amalie Arena for a Lightning game watch party. (Dkt. 36-7 at 12,

13) Finally, La Gaceta celebrated its 99th year of publication in 2021. (Id. at 2) At the

point in time relevant to this inquiry (i.e., the date Defendant published its notice

regarding the forfeiture of Plaintiff's funds), La Gaceta satisfied the statutory

requirements for publications of legal notice. Accordingly, the Court finds as a matter

of law that publication in La Gaceta was constitutionally sufficient to provide due

process in 2021.

This Court finds that Plaintiff received notice of the funds' potential forfeiture

via Defendant's publication of notice in La Gaceta. Therefore, Plaintiff's property was

---

[1] The Parties stipulate to the authenticity of four postal service mailing forms, Postal Service Form 3541, completed with information about La Gaceta's periodical mailing. These forms are attached to the Parties' Joint Statement of Undisputed Facts. (Dkt. 36-7)

[2] The Court takes judicial notice of the zip code for the "Post Office of Permit" as falling within Hillsborough County. (Dkt. 36-7) See Fed. R. Evid. 201(b)(2).

not forfeited to the state without notice, the only basis for the due process challenge. Accordingly, summary judgment for Defendant is appropriate on Count I of the Complaint.

### b. Count II – Takings Clause: Escrow Fund

Plaintiff's claim that the state's escheatment of the registry funds violates the Takings Clause fails as a matter of law. The Supreme Court has consistently upheld statutory schemes providing for the escheatment of abandoned or unclaimed property. Texaco, Inc. v. Short, 454 U.S. 516, 530 (1982). In Texaco, Inc., the Supreme Court reasoned,

> In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect . . . . It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no "taking" that requires compensation. The requirement that an owner of a property interest . . . must come forward and file a current statement of claim is not itself a "taking."

Id.; see also Bennis v. Michigan, 516 U.S. 442, 452 (1996) (holding, in a case of statutory forfeiture in a criminal action, that the "government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain"); Standard Oil Co. v. New Jersey, 341 U.S. 428, 435–36 (1951) ("As a broad principle of jurisprudence . . . , it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons.").

10

Florida Statutes §§ 116.21 and 717.113 authorize the forfeiture of unclaimed property in the state's lawful possession. In actions by Florida landlords for possession of a dwelling unit, a tenant must pay into the court registry the accrued rent as alleged in the complaint and the rent that accrues during the proceeding's pendency as it comes due. § 83.60(2), Fla. Stat. (2023). "All intangible property held for the owner by any court . . . that has not been claimed by the owner for more than 1 year after it became payable or distributable is presumed unclaimed." Id. at § 717.113.

Section 116.21 directs the clerk of a county to prepare a list of all unclaimed funds deposited with the court each year. Id. at § 116.21(2).

> Such list or compilation shall be published . . . during . . . July in a newspaper of general circulation in the county . . . , and the notice shall specify that unless such moneys are claimed [by] September 1 . . . that same shall be declared forfeited to such county.

Id. Persons claiming an interest in funds held by the clerk of court may file a written claim with the sheriff or clerk on or before September 1. Id. at § 116.21(3). Upon providing sufficient proof of his interest in the funds, the person "shall be entitled to receive any part of the moneys so claimed." Id.

"Any unclaimed court-related funds collected or deposited by the clerk which remain unclaimed must be deposited into the fine and forfeiture fund established under s. 142.01." Id. at § 116.21(1). Section 142.01 requires the clerk of the circuit court in each county to create the fine and forfeiture fund. Id. at § 142.01. The fund consists of "revenues received by the clerk as revenue authorized by law to be retained by the clerk," among other things. Id. at § 142.01(1)(g). Since § 83.60(2) authorizes the clerk

11

to retain tenants' payment of rent into the court registry, these payments are "revenues" under § 142.01(1)(g).

The Florida Statutes mandate the forfeiture of unclaimed funds lawfully in the state's possession "upon the failure of its owner to take reasonable actions imposed by law," namely, filing a timely written claim with the sheriff or clerk of court. Texaco Inc., 454 U.S. at 530. These provisions create a statutory scheme providing for the forfeiture of unclaimed property in the state's lawful possession. Accordingly, the escheatment of unclaimed funds pursuant to Florida Statutes does not constitute a taking requiring just compensation. Therefore, Defendant is entitled to summary judgment on Count II of the Complaint.

### c. Count III – Breach of Fiduciary Duty: Embezzlement

Plaintiff next claims that Defendant breached a fiduciary duty it owed Plaintiff with respect to the funds in the court registry. This claim fails because no relationship exists between Plaintiff and Defendant other than as dictated by statute. The relationship between Plaintiff and Defendant regarding the funds Plaintiff deposited in the court registry is not a contractual relationship. Unlike common law fiduciaries' obligations, the Defendant's obligations to Plaintiff related to court deposits are dictated by the Florida Statutes, not by common law.

Defendant breached no duty to Plaintiff because Defendant complied with the statutory requirements related to the funds. Plaintiff's accrued rent deposits went unclaimed for nearly three years before they were forfeited according to § 116.21. Notably, under § 717.113, property that has not been claimed by an owner for more

than one year after it became distributable is presumed unclaimed. § 717.113, Fla. Stat. (2023). Thus, Plaintiff's funds were presumed unclaimed as early as October 9, 2020. Indeed, the statutes required Defendant to deposit the funds into the fine and forfeiture fund because they were unclaimed. Id. at § 116.21(1).

Defendant complied with the statute directing it to publish a list of unclaimed property in a newspaper. Under § 116.21(2), Defendant "may . . . make and compile a list of any or all unclaimed moneys which came into their hands as provided in subsection (1)." Id. at § 116.21(2). The list "shall be published one time during . . . July in a newspaper of general circulation . . . , and the notice shall specify that unless such moneys are claimed on or before September 1 after such publication that same shall be declared forfeited to such county." Id. Defendant published its list and notice of forfeiture in La Gaceta on July 9, 2021. (Dkt. 36 at ¶ 19)

On September 1, 2021, Defendant was required by law to pay the unclaimed funds into the fine and forfeiture fund, as required by § 116.21(1). "Any unclaimed court-related funds collected or deposited by the clerk which remain unclaimed **must be deposited** into the fine and forfeiture fund established under s. 142.01." Id. at § 116.21(1)(emphasis added). Section 116.21(4) states that upon payment into the fine and forfeiture fund, the clerk "shall be released and discharged from any and all further responsibility or liability in connection therewith." Id. at 116.21(4). Consequently, Defendant's obligations to Plaintiff regarding the funds terminated on September 1, 2021, and Defendant is entitled to summary judgment on Count III of the Complaint.

13

### d. Count IV – Defamation Per Se: Extortion

Next, Plaintiff claims that Defendant committed defamation when Defendant's attorney stated in response to Plaintiff's demand letter that the demand may constitute extortion. Under Florida law, the elements of defamation are: (1) publication, (2) falsity, (3) negligence as to the falsity on a matter concerning a private person, (4) actual damages, and (5) the statement must be defamatory. Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008). The publication element "requires that the allegedly defamatory statement be communicated to one other than the person defamed." Shafran v. Parrish, 787 So. 2d 177, 179 (Fla. 2d DCA 2001).

Here, Defendant's allegedly defamatory statement, that Plaintiff committed extortion, was never published to a person other than Plaintiff. The statement is contained in Defendant's attorney's response to Plaintiff's demand letter. (Dkt. 36-10) This letter was only sent to Plaintiff. (Id.) Nonetheless, Plaintiff alleges that the publication element of defamation is satisfied because Defendant's attorney published the statement to another attorney and a paralegal who work in the same law firm.

The Court notes that Defendant's attorney cannot be liable for defamation for publishing an allegedly defamatory statement to another attorney and a paralegal within the same firm under Florida law. "A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable[.]" Nodar v. Galbreath, 462 So. 2d 803, 809 (Fla. 1984). In Hock v. Loren, 273 So. 3d 56, 58–59

14

(Fla. 4th DCA 2019), the court held where an attorney makes a statement to his or her client as part of the attorney-client relationship, there is no publication to a third party. The court noted the client is the principal, and the attorney is the agent. Id. at 58. When an attorney speaks to his client as part of the attorney-client relationship, their interests are so unified the communication is "tantamount to the principal 'talking to itself.'" Id. at 59 (quoting Am. Airlines, Inc. v. Geddes, 960 So. 2d 830, 833 (Fla. 3d DCA 2007). Additionally, courts have held that communications by a corporation's agents, such as private investigators, to the corporation's management personnel do not satisfy the publication element. See Lopez v. Ingram Micro, Inc., No. 95–2004–CIV, 1997 WL 401585, at *6 (S.D. Fla. Mar. 18, 1997). The Court also finds persuasive that under Florida law, "privileged persons" protected by the attorney-client privilege include "the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A., 519 F.Supp.3d 1184, 1197 (S.D. Fla. Feb. 11, 2021) (citations and internal quotations omitted).

In this case, Plaintiff alleges that Defendant's attorney published a statement to two of his colleagues. The attorney's publication to another lawyer and a paralegal within the same firm facilitated the firm's legal representation of Defendant. The attorney made the statement "on a subject matter in reference to which he had a duty," namely, the firm's representation of Defendant. Nodar, 462 So. 2d at 809. The attorney made the statement to persons "having a corresponding interest or duty," another attorney and a paralegal within the same firm, presumably also taking part in

15

Defendant's representation. Id. Just as there is no publication when an attorney makes a statement to his or her client as part of the attorney-client relationship, Hock, 273 So. 3d at 58–59, there is no publication when an attorney makes a statement to other attorneys within the same firm or "any of their agents that help facilitate attorney-client communications or the legal representation." Diamond Resorts, 519 F.Supp.3d at 1197. Plaintiff cannot show that the publication element of defamation is satisfied. Plaintiff's claim for defamation fails. Accordingly, summary judgment for Defendant is appropriate on this basis on Count IV of the Complaint.

Additionally, Plaintiff cannot satisfy the elements of a defamation claim Defendant because Plaintiff does not allege that Defendant ever made a statement. Instead, Plaintiff alleges that Defendant's attorney made a defamatory statement. (Id. at ¶¶ 59–61) Since Defendant's attorney is not named as a defendant in this action, Plaintiff's defamation claim fails. Even if Plaintiff contended that Defendant is liable for the attorney's actions because Defendant ratified or adopted the attorney's statement, Plaintiff cannot show that the statement was published to a person other than Plaintiff under Florida law. For these reasons, Defendant is entitled to summary judgment on Count IV of the Complaint.

### e.  Count V – First Amendment Retaliation: Extortion

Finally, Plaintiff alleges Defendant's attorney's statement about extortion in response to Plaintiff's demand letter was a threat of criminal prosecution. Plaintiff argues this threat was in retaliation for Plaintiff's exercise of his First Amendment rights. The First Amendment provides that "Congress shall make no law . . . abridging

16

the freedom of speech, or . . . the right . . . to petition the government for a redress of grievances." U.S. Const. Amend. I. "The Amendment protects 'not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right.'" DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)). To establish a claim of First Amendment retaliation, a plaintiff must show: (1) that his speech was constitutionally protected; (2) that the plaintiff suffered adverse action that would likely deter a person of ordinary firmness from engaging in such speech; and (3) a causal relationship exists between the protected speech and the adverse action. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). The parties do not dispute the contents of Plaintiff's email and Defendant's response. Therefore, no genuine issue of material fact exists as to Plaintiff's First Amendment retaliation claim. The question is one of law.

The Court finds that Plaintiff suffered no adverse action; therefore, the Court need not decide whether the first or third elements of Plaintiff's First Amendment retaliation claim are satisfied. Plaintiff asserts that he decided not to pursue his civil theft claim against Defendant because Defendant's attorney threatened him with criminal prosecution for extortion. He argues that this intimidation and the loss of his potential civil theft claim against Defendant constitutes adverse action in the First Amendment retaliation context.

Plaintiff's decision to drop his civil theft suit in response to his legitimate fear that he would not succeed or that he may be guilty of extortion does not support a

17

finding that Plaintiff suffered any adverse action at Defendant's hands. Plaintiff's threatened civil theft suit was meritless. See § 772.11, Fla. Stat. (2023)(requiring a plaintiff to establish by clear and convincing evidence a violation of criminal theft statutes to succeed on a claim of civil theft). Because the Court finds that Plaintiff had offered no evidence by which to establish at all, and certainly not by clear and convincing evidence, that the Defendant committed civil theft, Plaintiff's decision to dismiss his civil theft claim did not cause him to suffer an adverse action.

Thus, Plaintiff cannot establish all the elements of a First Amendment retaliation claim. Accordingly, summary judgment for Defendant is appropriate on Count V of the Complaint.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiff's Verified Motion for Partial Summary Judgment, (Dkt. 33), is **DENIED**.

2. Defendant's Motion for Summary Judgment, (Dkt. 37), is **GRANTED**.

**DONE** and **ORDERED** in Tampa, Florida, this 12th day of February 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person