No. 24-10748-B

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

◆

BLAKE WARNER,
*Plaintiff-Appellant,*

v.

HILLSBOROUGH COUNTY CLERK OF COURTS
*Defendant-Appellee.*

◆

On Appeal from the United States District Court
for the Middle District of Florida
(8:22-cv-01977-MSS-SPF)

## REPLY BRIEF OF APPELLANT

Aaron M. Streett
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

Megan E. Tankel
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, DC 20001-5692
Tel: 202.639.7700
Fax: 202.639.7890
megan.tankel@bakerbotts.com

Matthew P. Erickson
Matthew M. Hilderbrand
**BAKER BOTTS L.L.P.**
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
Tel: 512.322.2500
Fax: 512.322.2501
matthew.erickson@bakerbotts.com
matthew.hilderbrand@bakerbotts.com

*Attorneys for Plaintiff-Appellant Blake
Warner*

No. 24-10748-B

*Warner v. Hillsborough County Clerk of Courts*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Circuit Rule 26.1-2(b), the undersigned certifies that the

Certificates of Interested Persons contained in previous briefs are complete.


 /s/ Matthew P. Erickson                                        
Matthew P. Erickson

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... ii

TABLE OF CITATIONS ...................................................................... iv

INTRODUCTION ............................................................................... 1

ARGUMENT ..................................................................................... 4

I.      Defendant's new factual assertions are all unsupported or
        forfeited. .......................................................................... 4

II.     Section 116.21 is facially unconstitutional. ................................... 7

   A.   A facial challenge is the appropriate vehicle because Section 116.21
        is unconstitutional in every setting. ...................................... 8

   B.   Section 116.21 does not contain the reasonable and specific notice
        safeguards that the Constitution requires. ............................ 10

III.    Defendant's actions were unconstitutional as-applied. .................. 15

   A.   Warner had a property interest in the registry funds. .................. 15

   B.   Publication in *La Gaceta* was not reasonably calculated to give
        notice. .......................................................................... 16

   C.   The Court has never conditioned a party's right to notice on their
        perfect diligence. ............................................................ 18

IV.     Defendant's actions constitute a Taking. .................................. 20

CERTIFICATE OF COMPLIANCE ................................................... 24

CERTIFICATE OF SERVICE .......................................................... 25

## TABLE OF CITATIONS

**Page(s)**

C<small>ASES</small>

*Bennis v. Michigan,*
    516 U.S. 442 (1996).........................................................................20, 21

*City of New York v. New York, N.H. & H.R. Co.,*
    344 U.S. 293 (1953)..............................................................................11

*Damiano v. FDIC,*
    104 F.3d 328 (11th Cir. 1997).........................................................3, 10

*Horne v. Dep't of Agric.,*
    576 U.S. 350 (2015)..............................................................................21

*James v. Campbell,*
    104 U.S. 356 (1882)..............................................................................22

*\*Mennonite Bd. of Missions v. Adams,*
    462 U.S. 791 (1983)..........................................................2, 11, 12, 13, 18

*\*Mullane v. Cent. Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950).........................................................1, 3, 9, 10, 18

*Omnia Com. Co. v. United States,*
    261 U.S. 502 (1923)..............................................................................22

*Phillips v. Washington Leg. Found.,*
    524 U.S. 156 (1998)..............................................................................21

*Phipps v. Watson,*
    147 So. 234 (Fla. 1933) ........................................................................16

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984)..............................................................................22

iv

*Small Engine Shop, Inc. v. Cascio*,
    878 F.2d 883 (5th Cir. 1989)...........................................................................19

*Texaco, Inc. v. Short*,
    454 U.S. 516 (1982)..................................................................................13, 14

*Tulsa Prof. Coll. Serv., Inc. v. Pope*,
    485 U.S. 478 (1988)..................................................................................14, 16

**Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
    449 U.S. 155 (1980)..............................................................................15, 16, 21

STATUTES

Fla. Stat. § 50.011.............................................................................................8

*Fla. Stat. § 116.21 ...................................... 2, 3, 6, 7, 8, 10, 12, 13, 15, 22

Fla. Stat. § 717.001...........................................................................................5

OTHER AUTHORITIES

Hillsborough County Clerk of Court & Comptroller, *File without an
    Attorney (Pro Se)*, https://www.hillsclerk.com/Court-Services/Attorney-
    and-Pro-Se-Legal-Resources/Pro-Se...............................................................4

La Gaceta, *Advertise With Us*, https://lagacetanewspaper.com/advertising.17

La Gaceta, *Our History*, https://lagacetanewspaper.com/our-history...........17

## INTRODUCTION

When faced with the enticing possibility of depositing $3,600 into the Hillsborough County fine and forfeiture fund, the Hillsborough County Clerk ("Defendant") made only two half-hearted attempts to contact the rightful owner of the funds. First, after receiving *thirteen* return-to-sender mail notices for notices mailed to Blake Warner's ("Warner") old address, Defendant "attempted" to notify him at that address yet again. Doc. 36 at 4; *id*. at Ex. D. Second, Defendant published a small notice in a local periodical with a tiny and predominantly Latino readership. Doc. 33 at 5. Defendant did not serve Warner on his e-file account, contact him at his readily available email or phone number, or run any sort of search for Warner's current address. *Id*. Suffice it to say, neither of Defendant's chosen methods were "reasonably calculated . . . to apprise interested parties" of the potential deprivation, as required by the Constitution. *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950).

As such, this case is about the Hillsborough County Clerk falling short of constitutional notice requirements before taking personal property for

public use. It is also about an outdated law, Fla. Stat. § 116.21 (Section 116.21), that relies on outdated notice procedures that probably never complied with *Mullane* and certainly do not in 2024 with newspaper readership at an all-time low.

This case is not about, as Defendant asserts, "[Warner's] inaction in a lawsuit where he was the primary defendant." Resp. Br. 40. Defendant attempts to burden-shift, spending much of her brief discussing what Warner could or could not have done to prevent the county from taking his money. It is true that, for a time in 2020 and 2021, during the height of the Covid-19 pandemic, Warner did not exercise perfect diligence over his funds. But the Court has never conditioned a party's constitutional right to notice on their perfect diligence. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983). ("A party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation."). Nothing that Warner did or did not do relieved Defendant from the obligation to exercise reasonable diligence to provide Warner with fair notice.

Part I of this brief addresses some of Defendant's attempts to introduce new facts not found in the record below and to challenge already established facts (including facts to which Defendant herself stipulated).

Part II addresses Defendant's argument that Warner's facial challenge should fail because Warner cannot prove that Section 116.21 is unconstitutional in every setting. The Supreme Court has already told us that such laws are unconstitutional in every setting. *See Mullane*, 339 U.S. at 311. It is well established that more than publication notice is required before the government can take personal property. And, contrary to Defendant's argument, general knowledge of a law and one's obligations under it cannot supplant specific notice that a deprivation is pending. *See Damiano v. FDIC*, 104 F.3d 328, 335 n.13 (11th Cir. 1997).

Part III addresses Defendant's argument that Warner's as-applied argument should fail because of his own "inaction." Again, minimum notification procedures must be followed under the Constitution—no matter the property owner's actions or inactions.

Part IV addresses Defendant's Takings argument, which contends that unconstitutional Takings can only occur in the context of eminent domain. This is based on a misreading of *Bennis v. Michigan*, 516 U.S. 442 (1996). And it is easily refuted by a quick search of recent Takings jurisprudence.

## ARGUMENT

### I.    Defendant's new factual assertions are all unsupported or forfeited.

Defendant tries to obscure the record by asserting facts that are all unsupported, disputed, or forfeited. Three of the most egregious examples are addressed below.

First, Defendant claims that Warner "never checked . . . the online docket or any readily available sources regarding the funds, even after the case was dismissed for lack of activity." Resp. Br. 3. Defendant cites no evidence—and there none—to support her contention that Warner never checked the record.[1] In fact, Warner did check the record regularly until

---

[1] Defendant also neglects to mention that she failed to follow her own internal policy to serve parties' e-file accounts with each docket entry. *See* Hillsborough County Clerk of Court & Comptroller, *File without an Attorney (Pro Se)*, https://www.hillsclerk.com/Court-Services/Attorney-and-Pro-Se-Legal-Resources/Pro-Se (last visited August 13, 2024) ("Effective April 2019,

early 2020 when he, like most Americans, experienced an interruption to his daily life in the form of the Covid-19 pandemic.[2] When he checked the record in late 2021, he saw that his money had been escheated, his "FUNDS FOREVER BARRED." Doc. 33 at 5.

Defendant tells the Court that had Warner simply checked up on the docket at the appropriate time, he would have seen "hint[s] that he might want to claim his money." Resp. Br. 33. But the Constitution demands notice, not hints. And there was no way Warner could have known from the docket that the county intended to *permanently* deprive him of his property. This is because the letters corresponding to the returned-mail docket entries, and the April 30, 2021 unclaimed-funds docket entry, all indicated that the funds would go to the state *custodial* unclaimed-property fund under Fla. Stat.

---

the Clerk's Office will begin electronically serving various court documents to Attorneys of Record and litigants registered for e-service through the Florida Court E-Filing Portal for all civil court cases."). Had she followed her policy, Warner would have received the Eviction Case notices to his email account, which he regularly checked.

[2] Warner did not voluntarily introduce this fact below because Defendant did not put forth the factual assertion that Warner never checked the docket.

§ 717.001, *et seq.*, which has no deadlines for owners to claim their property. *See* Doc. 33-1 at 2 (county court docket sheet); Op. Br. 2-5, 10-11 & n.4 (describing Florida statutory scheme). By the time the county announced on the docket that it would take *title* to Warner's property under Section 116.21 (rather than *custody* under Section 717), it was too late for Warner to do anything about it:

| | | CASE NUMBER: 18-CC-022377 |
|---|---|---|
| | | **BOUTIQUE APARTMENTS LLC,BROOKLYN FLATS vs WARNER, BLAKE** |
| | | "Counter-Plaintiff: WARNER, BLAKE","Defendant: WARNER, BLAKE","Third Party Plaintiff: WARNER, BLAKE" |
| 04/05/2022 | 81 | LITIGATION |
| 03/31/2022 | 80 | MOTION |
| | | To Return Deposited Funds |
| | | "Counter-Plaintiff: WARNER, BLAKE","Defendant: WARNER, BLAKE","Third Party Plaintiff: WARNER, BLAKE" |
| 09/01/2021 | 79 | UNCLAIMED FUNDS DISPOSED PER FS 116.21, FUNDS FOREVER BARRED |
| 04/30/2021 | 78 | UNCLAIMED FUNDS SENT TO DEPT OF FINANCIAL SVC PER FS 717.113 |
| | | ENTERED IN ERROR |
| 02/18/2021 | 77 | UNCLAIMED FUNDS LETTER SENT TO PARTY |

Doc. 33-1 at 2. Defendant's attempt to shift the blame falls flat.

Second, Defendant tries to relitigate an established fact by calling into question Warner's unwritten agreement with his landlord in the Eviction Case—that Warner would keep the funds in exchange for dropping his remaining claims. Defendant tells the Court, "there is no written record or evidence of this alleged agreement in the Eviction Action." Resp. Br. 6. The

trouble for Defendant, though, is that she expressly stipulated to this fact in the parties' joint statement of undisputed facts. Doc. 36 at 4.

Third, Defendant asserts that "the final substantive action in the Eviction Action on the funds was a verbal order from the judge awarding the funds to the landlord." Resp. Br. 33. But Defendant did not raise this issue below. And yet again, the parties' joint statement of undisputed facts resolves the matter, stating that "the court never entered an order requiring disbursement." Doc. 36 at 4. At most, the record establishes only that, at the 2018 hearing, the judge directed the landlord to submit a proposed order to disburse the funds to the landlord. Doc. 36 at 3-4. He never did.

Defendant's attempts to muddy the waters by introducing new facts and casting doubt on established ones are unavailing. The record is clear and available to all—including Defendant—for reference.

## II.    Section 116.21 is facially unconstitutional.

Contrary to Defendant's arguments, Warner's facial challenge is firmly supported by precedents that have been established for more than 70 years. Section 116.21 is unconstitutional on its face.

**A.     A facial challenge is the appropriate vehicle because Section 116.21 is unconstitutional in every setting.**

Section 116.21 authorizes sheriffs and clerks of courts in July to compile and publish in a newspaper of general circulation a list of any or all unclaimed money which came into their hands before January 1 of the preceding year. Fla. Stat. § 116.21(1). It requires the notice to "specify that unless such moneys are claimed on or before September 1 after such publication that same shall be declared forfeited to such county." *Id*. § 116.21(2).[3] If no such claim is made the funds can be deposited into the fine and forfeiture fund with no further recourse for the property owner. In addition, another Florida statute requires that legal notices published in a newspaper "in lieu of process" must be placed in a newspaper containing at least 25 percent of its words in English. Fla. Stat. § 50.011.

---

[3] Defendant makes much out of Warner's calculation of the statute's dormancy period of 18 months. Warner's 18-month period was based on the publication date in July, rather than the deposit in the fine and forfeiture fund in September. But even adopting Defendant's 21-month dormancy period makes no substantive difference. The law falls woefully short of constitutional requirements.

Taken together, these two laws allow a county to take personal property with no notice except for publication in a newspaper that is not predominantly English. This is not a "caricature," Resp. Br. 15, as Defendant contends. It is a purely factual description of what county officials can do (and routinely have done) under these two laws.

*Mullane* squarely controls. 339 U.S. at 320. The New York banking law at issue in *Mullane* allowed trust companies to pool small trust estates together, while only requiring notice to beneficiaries through publication in a local newspaper. *Id*. at 309-10. The Supreme Court concluded that the statute's notification requirement was a mere "feint" because "[c]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper." *Id*. at 315. As a result, the Court struck down the law as unconstitutional. *Id*. at 320.

Despite this clear precedent striking down a law in its entirety (not merely as-applied) because it required only publication notice, Defendant tells the Court that a facial attack is untenable because Warner must prove that the law is unconstitutional in every setting. But the Supreme Court has

*already told* us that such a law is unconstitutional in every setting. It does not contain the notice safeguards that are constitutionally required. No set of circumstances could make such a law constitutional. Curiously, Defendant avoids addressing this foundational precedent—*Mullane* appears zero times in her response brief.

**B.    Section 116.21 does not contain the reasonable and specific notice safeguards that the Constitution requires.**

After reaching the merits, Defendant argues that Warner's facial argument must fail for three reasons: (1) Publication of the law itself is notice, Resp. Br. 11, 17; (2) In the court registry context, litigants know exactly where their money is and their obligations to claim it, Resp. Br. 16; and (3) Florida requires all legal notices to be published online, Resp. Br. 18-19. None hold water.

First, it is true that publication of the law itself provides general notice of its own contours. That is true of all statutes. But the Constitution requires more—*specific* notice of a pending deprivation, not *general* notice of the law. *See Damiano v. FDIC*, 104 F.3d 328, n.13 (11th Cir. 1997) (stating due process required federal receiver to mail a copy of the published notice to the

10

plaintiff even if the plaintiff knew that the failed financial institution was in federal receivership); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) (holding that "a mortgagee's knowledge of [a mortgagor's] delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending"); *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953) (holding creditors who knew that the debtor commenced bankruptcy proceedings were not under a duty to inquire about the claims bar date established by the bankruptcy court and were, thus, entitled "to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred"). Defendant's argument proves too much. If the mere publication of a notice procedure were sufficient in and of itself, then *every* statutory notice rule—no matter how deficient the notice provided for therein—would be constitutional. For example, a statute could state that parties get 30 seconds' notice, or that notice will be published in a secret, locked room. Under Defendant's position, such obviously deficient notice procedures would be constitutional because they appear in a statute. That

11

cannot be, as it would conflict with Supreme Court case law cited above. And it would render Due Protections a nullity in many cases.

Second, as Defendant sees it, the court registry context is unique because "litigants [] already know they are involved in disputes and know exactly where any money is and their obligations to claim it." Resp. Br. 16. But Defendant cites no precedent holding that pre-escheatment notice requirements are different in the court registry context.[4] There is no reason it should matter. A "party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Mennonite*, 462 U.S. at 799. The Supreme Court has held that more than publication notice is required even where property owners would be expected to be *more* diligent than people like Mr. Warner who have their property in court registry

---

[4] Additionally, the scope of Section 116.21 is much broader than just the court registry context as it includes "all unclaimed moneys deposited or collected by [the sheriffs and clerks of the courts of the various counties of the state] in their official capacity." Fla. Stat. § 116.21(1). Given this language, Section 116.21 could arguably include civil forfeitures within its ambit.

funds—such as in the context of a tax sale on a delinquent property. *Id*. at 799-800.

Defendant assures the Court that "the situation here is no different than a statute of limitations, or a court's local ruling requiring a filing by a certain deadline." Resp. Br. 27. But a key feature of those examples is that they are self-executing rules of law. Conversely, under Section 116.21, officials have discretion whether or not to take the funds. Fla. Stat. § 116.21(1) ("The sheriffs and clerks of the courts . . . are *authorized at their discretion . . . to pay into the fine and forfeiture fund of their respective counties . . . .*") (emphasis added). The Court in *Texaco, Inc. v. Short* explained that it is "essential" to distinguish "self-executing feature[s] of [a] statute" from actions taken subsequently to implement the legislative command. 454 U.S. 516, 533-35 (1982).[5] Specific notice is not required for a "rule of law uniformly

---

[5] *Texaco* examined a state law providing that mineral interests unused for 20 years automatically would revert to the surface owner unless a "statement of claim" was filed. 454 U.S. at 518. Appellants claimed this law would result in an unconstitutional taking of their interests without due process unless they were notified before the 20-year period expired. *Id*. at 533. The Court upheld the law but repeatedly emphasized its "self-executing" character,

affecting all citizens," but when property will be taken "after a specific determination that the deprivation was proper," notice is essential. *Id*. at 537; *See also Tulsa Prof. Coll. Serv., Inc. v. Pope*, 485 U.S. 478, 486-87 (1988) (holding that Oklahoma nonclaim statute was subject to Due Process notice requirements because of significant involvement of state in proceedings triggering the time bar). This case falls into the latter category—not the former.

Third and finally, the statute is not saved by the fact that Florida requires legal notices be published online. While "chance alone" might bring a property owner to a notice in a well-circulated local newspaper, there is little chance that an owner stumble upon www.floridapublicnotices.com. Defendant cites no authority saying this alternative is constitutionally sufficient, nor can she.

---

noting that the Constitution would govern any action taken later to terminate finally appellants' property interests: "It is undisputed that, before judgment could be entered in a quiet title action that would determine conclusively that a mineral interest has reverted . . . , the full procedural protections of the Due Process Clause . . . including notice . . . must be provided." *Id*. at 534.

### III.   Defendant's actions were unconstitutional as-applied.

Even if Section 116.21 were somehow facially constitutional, Defendant's specific actions as to Warner—escheating his property without sufficient notice—were unconstitutional. Accordingly, Warner's as-applied challenge should succeed.

### A.   Warner had a property interest in the registry funds.

On appeal, Defendant puts forth a new legal theory that Warner was not entitled to any pre-escheatment notice because Defendant had reason to believe, based on the Eviction Case docket, the funds belonged to the landlord plaintiff in the Eviction Case. Putting aside for a moment that this argument is forfeited—and, of course, contrary to the parties' joint statement of undisputed facts, Doc. 36 at 4—Warner *did* have a property interest in the money, and, as no order regarding the funds had ever been made, Defendant was required to contact both Warner and the landlord plaintiff.

Florida law is clear that money deposited in a court registry is personal property. *Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 160 (1980) ("The principal sum deposited in the registry of the court plainly was private property, and . . . not the property of [the c]ounty. This is the rule in

15

Florida.") (citing *Phipps v. Watson*, 147 So. 234, 235 (Fla. 1933)). The Fourteenth Amendment protects even "intangible interests" in property such as "unsecured claim[s]." *Pope*, 485 U.S. at 485 (1988) (holding creditor's cause of action against an estate for an unpaid bill was property interest protected by the Fourteenth Amendment). Here, Defendant held the funds in the court's registry "for the purpose of making a fair distribution [between]" Warner and his landlord. *Beckwith*, 449 U.S. at 161. Both Warner and his landlord maintained property interests in the fund, even though their interests had not been secured by a disbursement order. *Id*.

And even if the mandated rent payments indisputably belonged to the landlord, it does not matter. Warner *overpaid* a not-insubstantial amount into the court registry fund. Doc 36 at 2. Defendant should have known, at the very least, that the $202 overpayment belonged to Warner.

## B.    Publication in *La Gaceta* was not reasonably calculated to give notice.

Defendant tells the Court four times in her brief that Warner has "disparaged" *La Gaceta*, a community paper that encompasses the diverse culture living in the Tampa Bay area. Defendant's argument is, of course,

16

legally irrelevant. *La Gaceta* no doubt appreciates Defendant's soliloquy in its honor. But this is not a defamation case with *La Gaceta* as plaintiff and Warner as defendant. Putting that aside, Warner has never denied that *La Gaceta* has value. Nor has he said anything negative about it. He has simply stated facts about its audience and circulation that make it a poor vehicle for delivering notice to a non-Spanish speaker.

*La Gaceta* is, in fact, known as a Spanish-language periodical.[6] The Spanish section is in the front, the English legal notices are in the back,[7] and the target audience and readership are primarily Hispanic.[8] It is scarcely

---

[6] *See* La Gaceta, *Our History*, https://lagacetanewspaper.com/our-history (last visited Aug. 13, 2024) ("Manteiga . . . found[ed] La Gaceta as an afternoon Spanish-language daily newspaper in 1922."); La Gaceta, *Advertise With Us*, https://lagacetanewspaper.com/advertising (last visited Aug. 13, 2024) ("La Gaceta is the only paid-circulation Spanish-language newspaper in the Tampa Bay, Central Florida and the West Coast area.").

[7] Doc. 36-5 (July 9, 2021 *La Gaceta* Newspaper).

[8] *Advertise With Us*, *supra* note 6 ("La Gaceta is your link to the lucrative Latin market.").

read by any demographic, reaching between 0.14 and 0.20 percent of residents in Hillsborough County in July 2021. Doc. 33 at 6.[9]

While the language and limited circulation of *La Gaceta* make this case particularly egregious, they are unnecessary for Warner's constitutional argument. The Supreme Court has held that publication notice is insufficient even in more widely-circulated publications. *See, e.g.*, *Mullane*, 339 U.S. at 309.

### C.     The Court has never conditioned a party's right to notice on their perfect diligence.

Defendant attempts to flip the burden onto Warner by painting a picture of Warner's inactivity. Putting aside that much of this alleged inactivity occurred during the height of the Covid-19 pandemic, Defendant's arguments fail.

The Court has never conditioned a party's right to notice on their perfect diligence. *See Mennonite*, 462 U.S. at 799. The government cannot, consistent with the Constitution, shift the burden of ensuring adequate

---

[9] For more on La Gaceta circulation, see Order, *BAC Home Loans Serv'g v. Brand*, 2018 WL 5909311 (Fl. Cir. Ct. Nov. 6, 2018).

notice to the property owner. In *Small Engine Shop, Inc. v. Cascio*, the Fifth Circuit confronted a Louisiana statute that allowed "any person" to request actual notice in advance of the seizure of specific immovable property by filing the request in the mortgage records of the parish in which the property is located. 878 F.2d 883, 883 (5th Cir. 1989). The Defendant sheriff pressed an interpretation of the statute that would require property owners to file a request in order to receive notice before a foreclosure sale. *Id*. at 884-85. The Court held that such an interpretation would be constitutionally untenable: "the Supreme Court has articulated a standard allocating the burdens of notice in this due process context." *Id*. at 887. Property owners, it explained, are "entitled to means as certain as mail to ensure actual notice if her name and address are reasonably ascertainable through the exercise of reasonably diligent efforts." *Id*. at 887-88.[10]

---

[10] Instead of interpreting the provision to shift the burden, the Court interpreted it to "give property owners, whose identities a reasonably diligent, responsible state actor could not reasonably ascertain, the opportunity to request such notice and thereby become ascertainable." *Small Engine*, 878 F.2d at 893.

Here too, the government cannot shift its constitutional burden onto the person who is entitled to notice. The government was required to be reasonably diligent in delivering notice to Warner before taking an action that would adversely affect his property interests. Minimum notification procedures must be followed under the Constitution—no matter the property owner's actions or inactions.

Defendant could have easily mailed or emailed Warner proper notice before taking his property, thereby satisfying constitutional requirements. Defendant chose not to do so.

## IV.    Defendant's actions constitute a Taking.

On appeal, Defendant renews her incorrect reading of the Takings Clause that she put forth below. In Defendant's view, the Takings Clause applies only to eminent domain. She misinterprets language from *Bennis v. Michigan* to mean that the government owes just compensation only in the context of eminent domain. Resp. Br. 38. That view is incorrect.

*Bennis* was a civil forfeiture case. 516 U.S. 442 (1996). The property owner challenged the forfeiture of her car as a Taking on appeal from a trial

20

court proceeding in which the judge declared the car a public nuisance and ordered the car's abatement. *Id*. at 444-45. The Supreme Court rested its decision on the fact that the car was taken through a lawful proceeding that afforded Due Process: "[I]f the *forfeiture proceeding* here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred *by virtue of that proceeding* from petitioner to the State." *Id*. at 452 (emphases added). Here, of course, there was no such forfeiture proceeding to adjudicate Defendant's claimed entitlement to Warner's private property; Defendant just took it.

Defendant seems not to understand that the Fifth Amendment applies outside the eminent-domain context. As the Supreme Court clarified nearly a decade ago, it applies when the government takes personal property, just as when it takes real property. *Horne v. Dep't of Agric.*, 576 U.S. 350, 367 (2015). Moreover, from the sheer number of Takings cases outside of the eminent domain context (including in cases involving court registry funds), it is clear that Defendant's position is mistaken. *See*, *e.g.*, *Beckwith*, 449 U.S. at 161 (court registry funds); *Phillips v. Washington Leg. Found.*, 524 U.S. 156,

21

159-60 (1998) (IOLTA accounts); *Omnia Com. Co. v. United States*, 261 U.S. 502, 508 (1923) (contract rights); *James v. Campbell*, 104 U.S. 356, 358 (1882) (intellectual property); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 999 (1984) (trade secrets). The Takings Clause applies.

## CONCLUSION

Warner respectfully requests that the Court reverse the district court's judgment. He requests that the Court hold that Florida Statute § 116.21 is facially unconstitutional under the Due Process Clause, that Defendant's actions violated his Due Process rights, and that Defendant's escheatment of his funds constituted an unconstitutional taking.

Dated: August 14, 2024                    Respectfully submitted,

                                          */s/ Matthew P. Erickson*
                                          BAKER BOTTS L.L.P.

Aaron M. Streett                          Matthew P. Erickson
**BAKER BOTTS L.L.P.**                    Matthew M. Hilderbrand
910 Louisiana Street                      **BAKER BOTTS L.L.P.**
Houston, Texas 77002-4995                 401 South 1st Street, Suite 1300
Tel: 713.229.1234                         Austin, Texas 78704-1296
Fax: 713.229.1522                         Tel: 512.322.2500
aaron.streett@bakerbotts.com              Fax: 512.322.2501
                                          matthew.erickson@bakerbotts.com
                                          matthew.hilderbrand@bakerbotts.com
Megan E. Tankel
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, DC 20001-5692
Tel: 202.639.7700
Fax: 202.639.7890
megan.tankel@bakerbotts.com


                                          *Attorneys for Plaintiff-Appellant Blake*
                                          *Warner*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the page and type-volume limitations of Fed. R. App. P. 32(a)(7), because it contains 4,101 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and with the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typespace using 14-point Palatino Linotype.

*/s/ Matthew P. Erickson*
Matthew P. Erickson

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2024, I electronically filed this brief and thereby served all counsel of record through the Court's CM/ECF system.

/s/ *Matthew P. Erickson*
Matthew P. Erickson