**FOR PUBLICATION**

In the
# United States Court of Appeals
For the Eleventh Circuit

---

No. 24-10748

---

BLAKE WARNER,

*Plaintiff-Appellant,*

*versus*

HILLSBOROUGH COUNTY CLERK OF COURTS,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-01977-MSS-SPF

---

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

LAGOA, Circuit Judge:

Appellant Blake Warner claims that the Clerk of Courts of Hillsborough County, Florida, violated the Fifth and Fourteenth

Amendments of the U.S. Constitution by declaring that funds he had deposited into the court registry for an eviction proceeding were forfeited to the county under Florida Statute § 116.21. Although Warner had not claimed the funds for almost two years, he argues that he was not given sufficient notice before they were declared forfeited on account of abandonment. The Hillsborough County Clerk mailed a letter to Warner's old address—for which the Clerk had already received 13 return-to-sender notices—and published notice in a predominantly Spanish-language newspaper serving less than 0.2 percent of the county. These attempts at notice, Warner contends, violated his due process rights and led to an unconstitutional taking. On summary judgment, the district court disagreed, finding that the newspaper notice was constitutionally sufficient, and that the forfeiture did not result in an unconstitutional taking.

After careful review, and with the benefit of oral argument, we affirm in part and reverse in part the district court's decision. We hold that, although § 116.21's notice procedure is not facially unconstitutional, the Hillsborough County Clerk's application of the statute to Warner was unconstitutional because no notice was reasonably calculated to reach him. The Clerk also effected an unconstitutional taking of Warner's property because Warner had not abandoned the funds.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 25, 2018, Warner's landlord initiated an eviction proceeding against him in Hillsborough County Court. Florida Statute § 83.60 requires a tenant in an eviction proceeding to deposit into the court registry any allegedly accrued rent until resolution of the litigation.[2] After eviction proceedings commenced, Warner deposited into the court registry two months' worth of rent, which amounted to $3,398, plus an additional $101 per month, for a total of $3,600. On April 27, 2018, Warner filed an answer and a counterclaim.

At the time that the eviction litigation began, Warner's address was 3012 W. DeLeon St., Apt. 23, Tampa, Florida. On April 28, 2018, Warner registered an e-file account with the State of Florida on myfloridaaccess.com. This account contained an email address, a phone number, and his mother's mailing address, at which he received mail from 2017 to 2022. As acknowledged by the Hillsborough County Clerk during oral argument, Warner's e-file

[1] We largely adopt the district court's factual summary, which, consistent with the standard of review for summary judgment, summarizes undisputed or stipulated facts. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1287 (11th Cir. 2024).

[2] *See* Fla. Stat. § 83.60(2) ("In an action by the landlord for possession of a dwelling unit, if the tenant interposes any defense other than payment, including, but not limited to, the defense of a defective 3-day notice, the tenant shall pay into the registry of the court the accrued rent as alleged in the complaint or as determined by the court and the rent that accrues during the pendency of the proceeding, when due.").

account was accessible to the Clerk, and the Clerk had the ability to view and send messages to Warner's email address listed in the account.

On June 22, 2018, Warner moved to 502 S. Fremont Ave., Apt. 1322, Tampa, Florida, and he filed an address-change notice in the eviction litigation in compliance with the Hillsborough County Court's local administrative rules. The next day, Warner abandoned the apartment that was the subject of the eviction litigation.

On August 24, 2018, the landlord filed a Motion to Disburse Money from the Registry of the Court to obtain the funds that Warner had deposited. At a hearing on October 9, 2018, the Hillsborough County Court directed the landlord to submit a proposed order disbursing the funds to the landlord. Following this hearing, however, the landlord and Warner entered into an oral agreement whereby Warner would abandon his counterclaims in exchange for the landlord's allowing Warner to claim the funds.

On May 17, 2019, Warner moved to 3002 W. Cleveland St., Tampa, Florida, but this time, he did not update his address with the Hillsborough County Court. From February 24, 2020, to April 10, 2020, the Hillsborough County Clerk received thirteen returned mail notices for notices that the Clerk had mailed to Warner at his old 502 S. Freemont Ave. address.

On June 12, 2020, the Hillsborough County Court dismissed the eviction litigation for lack of prosecution.

On February 18, 2021, apparently pursuant to Florida Statute § 717.118,[3] the Hillsborough County Clerk mailed letters to the landlord and Warner to notify them that the funds in the court registry would be sent to the State's Division of Unclaimed Property if they were not claimed.[4] The Clerk mailed Warner's letter to his old address at 502 S. Fremont Ave. and never electronically served Warner at his e-mail address with any items during the eviction litigation or thereafter.

On July 9, 2021, the Clerk published notice of the unclaimed funds in *La Gaceta*, a primarily Spanish-language local newspaper. This publication included the following entry in English: "BOUTIQUE APARTMENTS LLC, BROOKLYN FLATS VS WARNER, BLAKE 18-CC022377 05/24/2018 *717.113 $3,600." Although the entry cited Florida Statute § 717.113, which directs unclaimed funds to the State's Division of Unclaimed Property,[5]

[3] *See* Fla. Stat. § 717.118(1) ("In order to provide all the citizens of this state an effective and efficient program for the recovery of unclaimed property, the department shall use cost-effective means to make at least one active attempt to notify owners of unclaimed property accounts valued at more than $250 with a reported address or taxpayer identification number.").

[4] The notification letter mentions the State's Unclaimed Property Division but does not cite to any statute. Later, the Clerk took the funds pursuant to Fla. Stat. § 116.21. In this litigation, both parties now effectively agree that Fla. Stat. § 116.21 is the applicable statute.

[5] *See* Fla. Stat. § 717.113 ("All intangible property held for the owner by any court, government or governmental subdivision or agency, public corporation, or public authority that has not been claimed by the owner for more than 1 year after it became payable or distributable is presumed unclaimed. Except as provided in s. 45.032(3)(c), money held in the court registry and for which

the Clerk concluded the notice by stating that the listed funds would be forfeited to the county pursuant to Florida Statute § 116.21.[6] Newspaper publication of this impending forfeiture was required by that statute,[7] and Florida Statutes §§ 50.031 and 50.011

---

no court order has been issued to determine an owner does not become payable or distributable and is not subject to reporting under this chapter.").

[6] *See* Fla. Stat. § 116.21(1) ("The sheriffs and clerks of the courts of the various counties of the state are authorized at their discretion on or before September 25 of each and every year hereafter to pay into the fine and forfeiture fund of their respective counties, or the fine and forfeiture fund created under s. 142.01, any or all unclaimed moneys deposited or collected by them in their official capacity, which unclaimed moneys came into their hands prior to January 1 of the preceding year and for which moneys claim has not been made. Any unclaimed moneys collected or deposited by the clerk of the circuit court in the course of the clerk's court-related activities may be processed under this chapter; however, the clerk must pay for the cost of publication of the list of unclaimed court-related funds. Any unclaimed court-related funds collected or deposited by the clerk which remain unclaimed must be deposited into the fine and forfeiture fund established under s. 142.01.").

[7] *See* Fla. Stat. § 116.21(2) ("The sheriffs and clerks of the various courts of the respective counties may, during the month of July of each year, hereafter make and compile a list of any or all unclaimed moneys which came into their hands as provided in subsection (1) above. Such compilation shall list, in addition to the name of the defendant, the respective amounts of such unclaimed moneys. Such list or compilation shall be published one time during the month of July in a newspaper of general circulation in the county served by such sheriff or clerk, and the notice shall specify that unless such moneys are claimed on or before September 1 after such publication that same shall be declared forfeited to such county.").

specified the criteria by which newspapers may be selected by the Clerk for this purpose.[8]

On September 1, 2021, after no response was received, the Clerk deposited the funds from the eviction litigation into the county's fine and forfeiture fund for public use pursuant to § 116.21.

On August 29, 2022, Warner initiated this action against the Clerk under 42 U.S.C. § 1983. Among other claims, Warner argued that the Clerk took his property without due process of law in violation of the Fourteenth Amendment's Due Process Clause and without paying him just compensation in violation of the Fifth Amendment's Takings Clause. Warner sought a declaratory judgment that the Clerk violated these constitutional provisions; a declaratory judgment that Florida Statutes §§ 116.21 and 50.031 are unconstitutional; damages in the amount of the property allegedly

[8] *See* Fla. Stat. § 50.031 (1999) (requiring publication "in a newspaper which at the time of such publication shall have been in existence for 1 year and shall have been entered as periodicals matter at a post office in the county where published, or in a newspaper which is a direct successor of a newspaper which together have been so published"); Fla. Stat. § 50.011 (1999) (requiring "publication in a newspaper printed and published periodically once a week or oftener, containing at least 25 percent of its words in the English language, entered or qualified to be admitted and entered as periodicals matter at a post office in the county where published, for sale to the public generally, available to the public generally for the publication of official or other notices and customarily containing information of a public character or of interest or of value to the residents or owners of property in the county where published, or of interest or of value to the general public").

taken, as well as nominal and punitive damages; and an award of attorney's fees, costs, and expenses. Both Warner and the Hillsborough County Clerk moved for summary judgment on these claims.

The district court granted the Clerk's motion for summary judgment. It concluded that the letter notice did not satisfy the Due Process Clause "because [the Hillsborough County Clerk] had reason to know [Warner] no longer lived [at 502 S. Fremont Ave]." The district court, however, found that publication in *La Gaceta* constituted adequate notice. The district court also rejected Warner's takings claim because "[t]he Supreme Court has consistently upheld statutory schemes providing for the escheatment of abandoned or unclaimed property." Warner appealed.

## II. STANDARD OF REVIEW

"We review a 'summary judgment *de novo*, applying the same legal standards used by the district court.'" *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019) (quoting *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008)) (emphasis added). "When the parties have filed cross-motions for summary judgment, we review *de novo* the district court's grant of summary judgment and view the facts in the light most favorable to the non-moving party on each motion." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1287 (11th Cir. 2024). "Summary judgment is appropriate if there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

"We review the constitutionality of a statute *de novo*." *United States v. Ballinger*, 395 F.3d 1218, 1225 (11th Cir. 2005). This standard of review applies to both facial and as-applied challenges. *See United States v. Evans*, 476 F.3d 1176, 1178 (11th Cir. 2007).

## III. ANALYSIS

Warner challenges the Hillsborough County Clerk's taking of the court registry funds on three grounds. First, Warner contends that Florida Statute § 116.21 is unconstitutional on its face because it does not provide the notice required by the Due Process Clause. Second, he argues that, even if § 116.21 is valid, the Clerk applied it in a manner that deprived him of constitutionally adequate notice. Third, Warner asserts that the Clerk's taking of his funds violated the Fifth Amendment because he had not abandoned the funds and, thus, the Clerk took them for public use without just compensation. We address each in turn.

### A. Facial Challenge to Florida Statute § 116.21 Under the Due Process Clause

"[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [a deprivation of property] and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). "[A] plaintiff can only succeed in a facial challenge [to a statute on due process grounds] by 'establish[ing] that no set of circumstances exists under which the [the statute] would be valid,' *i.e.*, that the law is

unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987) (third alteration in original)).

Here, § 116.21 provides that Florida's clerks of court "may, during the month of July of each year, … make and compile a list of any or all unclaimed moneys which came into their hands," and that this list "shall be published one time during the month of July in a newspaper of general circulation in the county …, and the notice shall specify that unless such moneys are claimed on or before September 1 after such publication that same shall be declared forfeited to such county." Section 116.21 thus does not require individualized notice and, instead, provides only for publication notice.

Warner argues that § 116.21 violates the Due Process Clause because, under Supreme Court precedent, publication notice alone is insufficient when the government knows of other methods reasonably calculated to inform the property owner. *See Mullane*, 339 U.S. at 319 (holding that statutory notice by publication to known beneficiaries was inadequate because it was "not reasonably calculated to reach those who could easily be informed by other means at hand"); *see also Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962) ("[N]otice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."). In short, Warner contends that

*Mullane* facially invalidated the statutory notice provision in that case.

We disagree. To start, *Mullane* did not facially invalidate the statutory notice provision in that case; instead, the Court invalidated the statute as applied in the circumstances before it. *Compare Mullane*, 339 U.S. at 317 ("Those beneficiaries represented by appellant whose interests or whereabouts could not with due diligence be ascertained come clearly within this category. As to them the statutory notice is sufficient."), *with id.* at 318 ("As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. … Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."). Because *Mullane* itself was an as-applied constitutional case, it cannot, as Warner contends, compel the facial invalidity of § 116.21.

Moreover, the application of § 116.21 would not necessarily be unconstitutional in all circumstances. The Florida Attorney General has explained that, in comparison with another statute concerning the disposition of unclaimed funds held by a court, § 116.21 "governs the disposition *of all other funds* the clerk or the sheriff has collected or deposited in his or her official capacity that remain unclaimed and are not specifically directed to be otherwise disposed of by law." Fla. Att'y Gen. Op. 99-64 (1999) (emphasis added). In other words, § 116.21 operates as a catch-all provision for funds held by the county. Indeed, Warner acknowledges that

"the scope" of the statute "is much broader than just the court registry context." In some circumstances, certain funds held by the county may have no identifiable owner. For example, money found and turned over to the county would appear to fall within the scope of § 116.21. There, *Mullane* makes clear that publication notice would be sufficient, since no owner would be known. *See Mullane*, 339 U.S. at 317.

Because Warner has not established that § 116.21 is unconstitutional in all circumstances, his facial challenge must fail. *See Salerno,* 481 U.S. at 745. Accordingly, we affirm the district court's decision on this count.

**B. As-Applied Challenge to Florida Statute § 116.21 Under the Due Process Clause**

On appeal, it is uncontested that the Hillsborough County Clerk complied with § 116.21 by publishing notice in a local newspaper of the impending forfeiture of Warner's funds.[9] But Warner contends that publication notice in this instance was unconstitutional because the Clerk published the notice in a primarily Spanish-language newspaper—despite Warner's inability to understand Spanish—that served only 0.2 percent of the county. He further argues that the Clerk had other means of notice that were

[9] "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The first two elements here are neither contested nor open to contest on appeal.

reasonably calculated to reach him—namely, his e-mail address, phone number, and another mailing address that he actually used. Warner next asserts that, although the Hillsborough County Clerk exceeded the notice required by § 116.21 by sending a letter, that notice was still inadequate because the Clerk had previously received 13 return-to-sender notices for that outdated address. In response, the Clerk maintains that the newspaper publication was sufficient, primarily because Warner never updated his address with the court and because the general public notice of § 116.21 itself constituted sufficient notice of forfeiture in this case.

For the following reasons, we hold that the County Clerk's application of § 116.21, as applied to Warner, violated the Due Process Clause because the Clerk's notice attempts were not reasonably calculated to reach him.

*i. General public notice of § 116.21 does not constitute sufficient notice to Warner in this case.*

At the outset, we must address the Hillsborough County Clerk's attempt to evade a due process analysis altogether. The Clerk essentially contends that there is *no* situation in which § 116.21 is unconstitutional because "the mere passage of the law itself is a notice to all citizens of Florida that they must comply with it." For this argument, the Clerk relies on a statement in *Texaco, Inc. v. Short*, 454 U.S. 516 (1982). There, the Supreme Court addressed "how a legislature must go about advising its citizens of actions that must be taken to avoid a valid rule of law that a mineral interest that has not been used for 20 years will be deemed to be

abandoned." *Short*, 454 U.S. at 531. "Generally," the Court answered, "a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id.* at 532. From this, the Clerk concludes that "publication of the law itself would provide sufficient notice to comport with the requirements of due process."

But the Clerk misinterprets this statement. As the Supreme Court explained, the appellants in *Short* "d[id] not challenge the sufficiency of the notice that must be given prior to an adjudication purporting to determine that a mineral interest has not been used for 20 years." *Id.* at 536. Instead, they "simply claim[ed] that the absence of specific notice prior to the lapse of a mineral right renders ineffective the self-executing feature of the Indiana statute." *Id.* Although the Court rejected this latter claim, it nonetheless explained that it *could* have upheld the former claim under different circumstances. The Due Process Clause, the Court reasoned, "certainly would preclude [a defendant] from obtaining a declaratory judgment that his adversary's claim is barred without giving notice of that proceeding." *Id.* "The reasoning in *Mullane*," the Court explained, "is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the Mineral Lapse Act." *Id.* at 535.

Here, Warner does not claim that he suffered a lack of notice about the self-executing feature of § 116.21. He is not claiming, in

other words, that there was insufficient notice of the requirements of § 116.21 such that the statute cannot operate to extinguish his property interest in the funds if the conditions of the statute are met. Rather, Warner asserts that he lacked sufficient notice of the Clerk's determination that the conditions of § 116.21 were met with respect to his funds. Like the "judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur" discussed in *Short*, the Clerk's determination that Warner abandoned his funds was a factual adjudication concerning property rights that was subject to the Due Process Clause. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) (holding a clerk of court's issuance of writ of attachment to be state action concerning property rights that is equally subject to due process requirements).

In fact, specific notice of the Clerk's determination is especially required here because the Clerk's decision to apply § 116.21 to Warner was, itself, discretionary. In *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478 (1988), the Supreme Court addressed due process requirements for Oklahoma's nonclaim statute, which was triggered by the commencement of court proceedings. "Where the legal proceedings themselves trigger the time bar, even if those proceedings do not necessarily resolve the claim on its merits," the Court stated, "the time bar lacks the self-executing feature that *Short* indicated was necessary to remove any due process problem. Rather, in such circumstances, due process is directly implicated and actual notice generally is required." *Pope*, 485 U.S. at 487. Put simply, if the State must take additional actions to implement a forfeiture statute to a specific property, "there is

significant state action" that implicates the Due Process Clause. *Id.*; *see also Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir. 1987) ("Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest.").

Here, § 116.21 provides that "[t]he sheriffs and clerks of the courts of the various counties of the state are *authorized at their discretion*" to take unclaimed moneys. Fla. Stat. § 116.21(1) (emphasis added). In accordance with the plain meaning of these terms, a Florida intermediate appellate court has interpreted the statute to be discretionary. *See Baker v. State*, 343 So. 2d 622, 624 (Fla. 4th DCA 1977) (noting that, under an earlier version of the statute with the same relevant language, forfeiture was "invocable solely at the discretion of the sheriff and clerk of the court involved"). Even though a more recent amendment provides that, "[a]ny unclaimed court-related funds collected or deposited by the clerk which remain unclaimed *must* be deposited into the fine and forfeiture fund established under s. 142.01," § 116.21(1) (emphasis added), that language follows immediately after the provision requiring "the clerk [to] pay for the cost of publication of the list of unclaimed court-related funds." Together, these provisions naturally read that any funds "which remain unclaimed" after publication notice (i.e., after the Clerk has decided to initiate § 116.21 proceedings) "must be deposited into the fine and forfeiture fund." Indeed, the Legislature that added the new language also said that unclaimed funds "*may* be processed under this chapter." *Id.* (emphasis added). Thus, the plain language grants the Clerk discretion to take unclaimed funds,

which is conclusive as to the statute's meaning.[10] *See Cox Enters., Inc. v. Pension Ben. Guar. Corp.*, 666 F.3d 697, 704 (11th Cir. 2012) ("When the language of a [Florida] statute is plain and unambiguous we must apply that meaning."); *Williams v. State*, 186 So. 3d 989, 991 (Fla. 2016) (requiring statutes to be interpreted primarily by its plain meaning).

Thus, the forfeiture of Warner's funds was not a self-executed consequence of § 116.21. Instead, the Clerk first decided to initiate § 116.21 proceedings for Warner's funds, and then, after receiving no response to its prior notice attempts, the Clerk determined that the funds met the statutory criteria for forfeiture and took the funds. Because both *Short* and *Pope* command that specific notice be provided to Warner, we conclude that general public notice of § 116.21's requirements was insufficient here.

*ii. The Hillsborough County Clerk's publication notice in* La Gaceta *was constitutionally deficient.*

Having decided to initiate § 116.21's forfeiture procedure, the Hillsborough County Clerk made two attempts to notify Warner. One was to publish notice in a local newspaper, which

[10] The Clerk suggests that, under the canon of constitutional avoidance, we should not interpret § 116.21 to provide the Clerk with discretion in its application. But the plain meaning of the statutory language is clear, and "[i]n the absence of more than one plausible construction, the canon [of constitutional avoidance] simply has no application." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580 (2022) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)); *see also Metro. Dade Cnty. v. Bridges*, 402 So. 2d 411, 414 (Fla. 1981) (same).

was the only means of notice required by § 116.21. According to Warner, this publication notice was constitutionally deficient for two reasons: (1) other methods of notice reasonably calculated to reach him were available, and (2) the Clerk's use of *La Gaceta* was not reasonably calculated to reach him as it is a primarily Spanish-language newspaper serving less than 0.2 percent of the county. The Clerk argues that publication notice was the only reasonably available means of notice because Warner failed to inform the Clerk of his new address. The Clerk also argues that the Constitution does not require any characteristics for the type of newspaper used.

We hold that the Clerk's use of *La Gaceta* violated the Due Process Clause in this instance because other means reasonably calculated to notify Warner were available. Accordingly, we do not decide whether, if other means of notice were unavailable, the use of *La Gaceta* in this instance would be constitutionally sufficient.

The Supreme Court's decision in *Mullane* establishes that publication notice satisfies the Due Process Clause if, and only if, the persons so notified are unknown or otherwise unreachable. *See Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *Jones v. Flowers*, 547 U.S. 220, 237 (2006) ("Following up by publication was not constitutionally adequate under the circumstances presented here because, as we have explained, it was possible and practicable to give Jones more adequate

warning of the impending tax sale."); *Schroeder*, 371 U.S. at 212–13 ("The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question"); *Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 116 (1956) ("Measured by the principles stated in the *Mullane* case, we think that the notice by publication here falls short of the requirements of due process. … In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records.").

Here, there were other reasonably possible and practicable ways to notify Warner. It is undisputed that Warner maintained an e-file account with the State that contained his correct e-mail address, telephone number, and another mailing address at which he did, in fact, receive mail. This e-file account was accessible to the Clerk, and the Clerk admits that it could have sent an e-mail to Warner. In light of *Mullane*, this fact alone defeats the constitutional sufficiency of publication notice in this case. Indeed, *Mullane* recognized that commonly used means of communication should be used instead of publication notice if they are available. *Cf. Mullane*, 339 U.S. at 319 ("However it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication.").

None of the Clerk's arguments to the contrary prevail. The Clerk argues that it was not required to find Warner's e-file contact information because Warner failed to update his address with the Clerk as required by the court's rules. But the Supreme Court has rejected the idea that negligence waives the right to notice. *See Jones*, 547 U.S. at 231–32 (holding that something more must be done when a letter is returned unclaimed even if the addressee was required to update his address). Although the Clerk was not required to conduct an open-ended search of public records for Warner's address, *see id.* at 235–36, and while it may be true that the State, rather than the county, manages the e-file system, the Clerk could have easily obtained Warner's correct contact information and the Clerk concedes that it could have sent Warner an e-mail. In addition, the Clerk's argument that notice was required only for the landlord—on the ground that the court docket listed the landlord as the last person identified as entitled to the funds—is barred. The deposited funds were the subject of a dispute between Warner and the landlord, not automatically the landlord's exclusive property. Moreover, the Clerk stipulated that Warner and his landlord reached an oral agreement entitling Warner to the funds, so the Clerk cannot now challenge that fact. Finally, even if the landlord had a property interest in the funds, Warner overpaid into the court registry by $202, so he would also be entitled to notice in any event. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160–61 (1980) ("The principal sum deposited in the registry of the court plainly was private property, and was not the property of Seminole County. This is the rule in Florida as well as

elsewhere." (citation modified) (regarding different statute governing deposits with court)).

In sum, given the other more direct means of notice available, the Clerk's publication in *La Gaceta* was not reasonably calculated to reach Warner and, thus, was constitutionally deficient.[11]

*iii. The Hillsborough County Clerk's letter notice to Warner was constitutionally deficient.*

Before publishing notice in *La Gaceta*, the Hillsborough County Clerk sent a letter to Warner's outdated address on file with the court, informing him of an impending escheatment. This means of notice was not required by § 116.21. Although this additional notice might have cured any deficiency with the publication notice, we conclude that the letter was itself constitutionally deficient since it was not reasonably calculated to reach Warner.

In *Jones*, the Supreme Court held that, "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." 547 U.S. at 225. "We do not think," the Court explained, "that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed." *Id.* at 229. Indeed, this principle—that alternative means of notice are required if it

[11] For the same reasons, the fact that this notice also appeared on the State's online database of public notices does not satisfy the Due Process Clause here.

becomes apparent that the initial notice has failed and other means of notice remain available—has been explicitly recognized by the Florida Supreme Court as it applies to Florida's clerks of court. *See Delta Prop. Mgmt. v. Profile Invs., Inc.*, 87 So. 3d 765, 771 (Fla. 2012) ("*Jones* establishes … that where a notice sent by certified mail is returned undeliverable, the clerk of court must take additional reasonable steps to notify a titleholder of the upcoming tax sale.").

Here, the Clerk did not just send one letter and receive back one return-to-sender notice before neglecting to take further action. Instead, despite receiving 12 return-to-sender notices from the Post Office for letters mailed to Warner's old address, the Clerk sent the letter informing Warner of an impending escheatment to that same address. When that letter was also returned undelivered, the Clerk took no further action. The Clerk never altered its means of notice, even though it was apparent that letters mailed to Warner's 502 S. Fremont Ave. address were not reaching him. As discussed above, other means of notifying Warner were available, such as his e-mail address, telephone number, and another valid mailing address, all of which were easily accessible within the State's e-file system that the Clerk concedes it uses. The Clerk's failure to use available alternative means of notice—and the continued mailing of letters to an obviously invalid address—demonstrates that the letters were sent in a mechanical manner, with little regard for whether Warner was actually informed of the impending escheatment.

And even if the letters had reached Warner, they still would not have informed him of the impending forfeiture of his funds. The letters stated that Warner's funds would be transferred to the State's unclaimed property fund under § 717.001, rather than forfeited to the county fine and forfeiture fund under § 116.21. Under the former scenario, Warner's funds would have been held by the State in a custodial account, available for him to reclaim at *any* time. Thus, even if Warner had received the Clerk's letters, he would not have received notice that the Clerk was on the threshold of declaring his funds forfeited to the county and that any claim to them would be "forever barred."

Under the circumstances in this case, we conclude, like the Supreme Court in *Jones*, that the Clerk's letters were not reasonably calculated to reach Warner and, thus, that the letters did not provide sufficient notice of the forfeiture under the Due Process Clause.

**C. Takings Clause Challenge Under the Fifth Amendment**

Our Constitution prohibits a State from taking private property for public use without just compensation. *See* U.S. CONST. amends. V, XIV.[12] "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). This type of government action constitutes a *per se* taking,

[12] The Fifth Amendment's Takings Clause has been incorporated against the States by way of the Fourteenth Amendment's Due Process Clause. *See Chicago B. & Q. Railroad Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581 (1897).

and to prove it, a plaintiff must show (1) that he owned the property, (2) that the government directly appropriated the property for its own use, and (3) that the plaintiff was not given just compensation. *See Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1334 (11th Cir. 2025).

"From an early time," however, the Supreme Court "has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time." *Short*, 454 U.S. at 526. Such escheatment of abandoned property is not a taking because "there is no owner to compensate." *Cerajeski v. Zoeller*, 735 F.3d 577, 581 (7th Cir. 2013). But "[t]here must be a voluntary intention to abandon, or evidence from which such intention may be presumed." *Katsaris v. United States*, 684 F.2d 758, 761–62 (11th Cir. 1982) (quoting *The No. 105*, 97 F.2d 425 (5th Cir. 1938)).

Warner argues that he has a valid claim under the Takings Clause for two reasons. First, he maintains that because the Hillsborough County Clerk failed to provide adequate notice of the impending forfeiture, his lack of response did not amount to abandonment of his funds. Second, he argues that the statute's presumption of abandonment after 18 months is constitutionally insufficient.

The Clerk responds with several arguments: a taking can occur only in the context of eminent domain; losing property because of a failure to take an action required by statute to maintain the property is not a taking under *Short*; and there is no "hard-and-fast rule" for what minimum amount of time must pass before a

State can presume that property is abandoned. The Clerk also questions whether the funds were even Warner's in the first place. The Clerk's arguments are without merit.

First, as already discussed above, the Clerk previously stipulated to the district court that Warner had a property interest in the funds; the Clerk cannot now disavow that stipulation on appeal.

Second, a takings claim is not limited to eminent domain situations. The Clerk's argument to the contrary stems from its misinterpretation of the following passage from *Bennis v. Michigan*, which concerned civil forfeiture of a car used in commission of a crime: "The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." 516 U.S. 442, 452–53 (1996). This statement refers to the government's exercise of its police power in the context of property used in the commission of a crime. But this case does not involve the police power, much the less exercise of the police power in that context. Indeed, it is well established that a taking can occur outside the traditional exercise of eminent domain. *See, e.g.*, *Beckwith*, 449 U.S. 155 (taking of court registry funds); *Horne v. Dep't of Agric.*, 576 U.S. 350 (2015) (taking of raisins produced for commercial sale).

Third, on this particular record, the Clerk cannot presume Warner abandoned his funds. Under Florida law, property can be presumed abandoned only if there is evidence that the owner intended to abandon the property. *See Dade Cnty. v. City of N. Miami*

*Beach*, 69 So. 2d 780, 783 (Fla. 1953) ("Abandonment is a question of intent and he who asserts it, has the burden of proving it. Nonuse is only evidence that may or may not point to abandonment."); *Brown v. Reynolds*, 872 So. 2d 290, 295 (Fla. 2d DCA 2004). Here, the only premise for the Clerk's inference that Warner intended to abandon his funds, and that action under § 116.21 was therefore permissible, was Warner's failure to respond to the Clerk's notice. But the Clerk cannot premise abandonment on notices that were constitutionally deficient and that Warner never received.

In fact, an inference of abandonment in these particular circumstances would be constitutionally invalid as it would allow the government to take property because of its own failure to provide due process. *See Jones*, 547 U.S. at 234 ("[B]efore forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking."); *Bennis*, 516 U.S. at 452 ("*[I]f the forfeiture proceeding here in question did not violate the Fourteenth Amendment*, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State." (emphases added)); *Lacy v. City of Chicago*, 728 F. Supp. 3d 901, 915 (N.D. Ill. 2024) ("… Lacy has adequately stated a Takings Clause claim based on the City's failure to provide two notices before selling or disposing of her impounded vehicle.").

Fourth, the Clerk cannot prevail with its argument that Warner forfeited his funds by not complying with § 116.21, which is a statute addressing abandoned property. Forfeiture differs from abandonment: property is forfeited not because the owner

intended to relinquish it, but because the owner failed to satisfy the conditions of ownership. *See United States v. Locke*, 471 U.S. 84, 100 (1985).

The Clerk's reliance on *Short* to support its forfeiture argument is misplaced, as *Short* concerned abandonment, not forfeiture. *Locke* is equally unhelpful to the Clerk. *Locke* focused on a special type of property created by legislative grant—mineral interests—rather than more traditional types of private property. *See* 471 U.S. at 104 (noting that the "power to qualify existing property rights is particularly broad with respect to the 'character' of the property rights at issue" in that case). Additionally, unlike the statute in *Locke*, it is not the case that "[s]pecific evidence of intent to abandon is simply made irrelevant" by § 116.21. *Id.* at 100. Whereas the statute in *Locke* deemed property forfeited when an annual claim of ownership was not filed, § 116.21 requires the Clerk to publish notice in a newspaper to confirm the owner's intent to abandon property that has already remained unclaimed. Section 116.21 thus follows the traditional statutory scheme for determining whether abandonment was intended. Nor does it matter that § 116.21 uses the term "forfeited" rather than "abandoned." In *Locke*, the statute at issue employed the term "abandonment" rather than "forfeiture," yet the Supreme Court treated the action as a forfeiture in substance even if not in form. *See id.* at 97–100. Because § 116.21 aims to determine whether property owners intended to abandon their property—and because the Clerk could not have presumed abandonment from Warner's failure to

respond to the Clerk's unconstitutional notice attempts—there is no valid evidence that Warner abandoned his funds.

We thus conclude that the Clerk violated the Fifth Amendment by taking Warner's funds in the county registry for the county's use without providing just compensation.

## IV. CONCLUSION

For the reasons stated above, we affirm in part and reverse in part the district court's decision. We hold that § 116.21's notice procedure is not facially invalid under the Due Process Clause; that the Hillsborough County Clerk's application of the statute to Warner violated the Due Process Clause; and that the Hillsborough County Clerk effected a taking of Warner's property in violation of the Fifth Amendment. We remand to the district court for further proceedings consistent with our opinion.

**AFFIRMED IN PART AND REVERSED IN PART.**

LUCK, Circuit Judge, concurring in part and dissenting in part:

The majority opinion is split into three parts. First, it affirms the judgment for the Hillsborough County Clerk of Court on Blake Warner's facial procedural due process challenge to Florida Statutes section 116.21. Second, it reverses the judgment for the Clerk on Warner's as-applied procedural due process challenge to section 116.21. And third, it reverses the judgment for the Clerk on Warner's Takings Clause claim based on the application of section 116.21 to the money he left in the court registry. I join the first two parts of the majority opinion, but I respectfully dissent as to the third part. The district court properly granted judgment for the Clerk on the takings claim.

The Clerk's actions do not implicate the Takings Clause because Warner abandoned his money in the court registry under section 116.21. The parties agree that the Clerk complied with the requirements of section 116.21. And section 116.21 provides that unclaimed registry funds are abandoned when the statutory requirements are met. The legal question is whether a state violates the Takings Clause when it appropriates abandoned property under a facially valid escheat statute. The Supreme Court has answered that question no.

In *Texaco, Inc. v. Short*, the Supreme Court upheld a state statute that terminated without notice mineral rights not used or affirmatively renewed for twenty years. 454 U.S. 516, 525–31 (1982). In doing so, the Supreme Court clarified that "[s]tates have the power to permit unused or abandoned interests in property to

revert to another after the passage of time." *Id.* at 526. As the Supreme Court explained, the Takings Clause does not define property rights. *Id.* at 525. Rather, property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). And "just as a [s]tate may create a property interest that is entitled to constitutional protection, the [s]tate has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Id.* at 526; *see also United States v. Locke*, 471 U.S. 84, 104 (1985) ("[A] legislature generally has the power to impose new regulatory constraints on the way in which . . . rights are used, or to condition their continued retention on performance of certain affirmative duties.").

One such condition is continued use of the property. After an extended period of nonuse, "private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law . . . ." *Short*, 454 U.S. at 530. "[I]t follows that, after abandonment, the former owner retains no interest for which he may claim compensation." *Id.* That's because "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right[.]" *Id.* And because abandoned property is no longer the property of the original owner, a state may take custody of the abandoned property through an escheat statute without violating the Takings Clause. *See id.*; *see also Delaware v. New York*, 507 U.S.

490, 497 (1993) ("States as sovereigns may take custody of or assume title to abandoned personal property as bona vacantia, a process commonly (though somewhat erroneously) called escheat.").

Section 116.21 is a valid escheat statute. It clearly defines conditions under which property is abandoned, and there is no dispute that those conditions were met here. Nor does Warner claim that the statute is facially unconstitutional as a taking. The only question is whether the Clerk unlawfully "took" Warner's registry funds. Where, as here, property had been abandoned under a state escheat statute, the Supreme Court has told us no.

The majority opinion nevertheless attempts to distinguish this case from *Short* for two reasons: first, section 116.21 is a forfeiture statute that divests ownership by nonuse, whereas abandonment requires affirmative evidence of intent to relinquish ownership; and second, the Clerk did not provide any notice before taking the money. Both reasons are unavailing.

First, the majority opinion contends that a lawful taking under a valid escheat statute requires the property holder to abandon the property, which requires an affirmative relinquishment. Because there is no evidence that Warner affirmatively relinquished the money in the court registry, the Clerk's taking it under section 116.21 violated the Fifth Amendment.

There's two problems with this contention. One is that Warner all but acknowledges he intentionally left the money in the court registry for an indefinite period of time.

Another problem is that the majority opinion is inconsistent with *Short*'s holding that an extended period of nonuse suffices to demonstrate abandonment. *Short* did not draw a distinction between property interests lost through an affirmative act of relinquishment and property interests presumed lost through nonuse. *See* 454 U.S. at 525–31. Indeed, the statute in *Short*, Indiana's Mineral Lapse Act, "put[] an end to interests in coal, oil, gas or other minerals which *have not been used* for twenty years." *Id.* at 518 (emphasis added). The failure to use the property for an extended period of time showed that the property holder lacked a "present intention to retain the interest" and had therefore abandoned the property. *Id.* at 526. Section 116.21 works the same way.

So, contrary to the majority opinion's conclusion, it cannot be the case that section 116.21 violates the Takings Clause because it conditions abandonment on nonuse rather than some affirmative act of relinquishment. Otherwise, *Short* would have come out the other way. *Cf. id.* at 530 ("In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect."). I'm afraid the majority opinion's misreading of *Short* will put other state escheat statutes in jeopardy—not just section 116.21.

Second, the majority opinion maintains that the Clerk's actions were unlawful because the Clerk did not provide notice before appropriating the registry funds. But notice is not an element

of a takings claim. *See Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1334 (11th Cir. 2025) (stating that the elements of a takings claims are (1) that the plaintiff owns the property; (2) the government directly appropriated the property for its own use; and (3) the state failed to provide just compensation). And, in any event, the statute itself provides sufficient notice of the escheatment. *See Short*, 454 U.S. at 532 (finding that, in promulgating an escheatment statute, "[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply"); *cf. Grayden v. Rhodes*, 345 F.3d 1225, 1239 (11th Cir. 2003) ("For one hundred years, the Supreme Court has declared that a publicly available statute may be sufficient to provide such notice because individuals are presumptively charged with knowledge of such a statute."); *Mixon v. One Newco, Inc.*, 863 F.2d 846, 849 (11th Cir. 1989) (finding that "statutory notice to the [property] owner that he will lose his rights through nonuse or nonpayment of taxes" was "sufficient notice" of a "self-executing" escheatment).

I agree with the majority opinion that "the Clerk's determination that Warner abandoned his funds was a factual adjudication concerning property rights that was subject to the Due Process Clause." I also agree that the Clerk failed to give sufficient notice for the reasons explained in the majority opinion. But, for the Takings Clause claim, notice was not required, and if it was, section 116.21 notified Warner that money he abandoned to the court registry could escheat to the Clerk.